Brent O. Hatch (5715)
  bhatch@hjdlaw.com
Mark F. James (5295)
  mjames@hjdlaw.com
HATCH, JAMES & DODGE, PC
10 West Broadway, Suite 400
Salt Lake City, Utah  84101
Telephone:  (801) 363-6363
Facsimile:  (801) 363-6666

*Attorneys for Plaintiff N8 Medical, Inc.*

---

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH
### CENTRAL DIVISION

---

| | |
|---|---|
| N8 MEDICAL, INC. ) | **COMPLAINT** |
| ) | **(Jury Trial Demanded)** |
| Plaintiff, ) | |
| ) | **Case No. 2:13-cv-01017** |
| vs. ) | |
| ) | **Magistrate Judge Paul M. Warner** |
| COLGATE-PALMOLIVE COMPANY, ) | |
| ) | |
| Defendant. ) | |

---

This is an action brought by N8 Medical, Inc. ("N8 Medical") against Colgate-Palmolive

Company ("Colgate") for breach of certain Material Transfer Agreements covering proprietary

materials and intellectual property rights in a novel class of compounds invented at Brigham

Young University ("BYU") and licensed by BYU to N8 Medical for commercial development.

This complaint alleges claims for breach of contract, breach of the implied covenant of good faith

and fair dealing, violation of Utah's Uniform Trade Secret Act, unjust enrichment, and conversion

arising out of Colgate's tortious conduct and its willful and substantial breaches of the Material Transfer

Agreements.   N8 Medical is entitled to preliminary and permanent injunctive relief, as well as

monetary damages, against Colgate as a result of Colgate's actions.

## THE PARTIES

1.        Plaintiffs, N8 Medical, Inc. and N8 Medical, LLC are companies organized and

existing under the laws of the State of Nevada with headquarters and principal places of business

located in Columbus, Ohio.

2.        N8 Medical is a biopharmaceutical company focused on research and commercial

development of a novel class of compounds known as either ceragenins, cationic steroid

antibiotics, or CSAs (referred to herein as "ceragenins"), which have broad spectrum antimicrobial

activity, as well as numerous other therapeutic activities and attributes of value in healthcare

applications.

3.        N8 Medical holds a license from BYU and economic interests for the commercial

development of ceragenins in certain specified fields of use, including those relevant to this case.

4.        Defendant Colgate is a corporation organized and existing under the laws of the

State of Delaware with its headquarters and principal place of business located in New York City,

New York.  Colgate is one of the leading global companies in oral health.  Publicly available

records and information indicate that Colgate has annual revenues in excess of $17 billion of

which over $8 billion is from sales of its oral healthcare products including toothpaste and

mouthwash.  Colgate claims in excess of a 22% share of the ex-U.S. market for mouthwash

products.  Colgate has been pursuing the potential use of ceragenins in oral health care

applications with N8 Medical since December 2010 pursuant to a series of Material Transfer

Agreements between Colgate and N8 Medical and its wholly owned subsidiary N8 Medical, LLC

in anticipation of those parties entering into a commercial license agreement that contemplated payment by Colgate to N8 Medical of royalty rates of up to 10% of net sales of the relevant products. N8 Medical is the successor in interest to all rights previously held by N8 Medical, LLC relating to this dispute, and references below to "N8 Medical" shall specifically include N8 Medical, LLC.

<u>**JURISDICTION AND VENUE**</u>

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332, as there is complete diversity of citizenship between Colgate, on the one hand, and N8 Medical, on the other hand, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

6.      The Court has personal jurisdiction over Colgate because Colgate is a foreign corporation authorized to do business in the State of Utah that derives millions of dollars annually from the sale of its toothpaste, mouthwash, and others products in the State of Utah.

7.      Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(1) and (b)(2), as Colgate "resides" in this District within the meaning of 28 U.S.C. §1391(c)(2).  Further, a substantial part of the events giving rise to this action occurred within this District as the relevant ceragenins were discovered, invented, and developed within this District and the compounds were shipped from this District to Colgate for its testing and evaluation.  Further, N8 Medical and its licensor BYU conduct substantial activity in this District regarding the licenses, property, and agreements at issue.

**RELEVANT BACKGROUND**

8.      In late 2010, N8 Medical approached Colgate about a potential business relationship related to the incorporation of N8 Medical's ceragenins into Colgate mouthwashes, mouth rinses, toothpastes, and other uses.

9.      Colgate expressed its interest in reviewing N8 Medical's ceragenins and pursuing a possible business relationship and so N8 Medical and Colgate entered into a Confidential Disclosure Agreement on October 11, 2010.

10.     Shortly thereafter, N8 Medical and Colgate negotiated and eventually entered into a Material Transfer Agreement ("First MTA") dated as of December 7, 2010.  N8 Medical and Colgate amended the First MTA on May 23, 2011 and again on December 7, 2011.  (A true and correct copy of the First MTA, including its amendments, is attached hereto as "Exhibit A" and expressly incorporated hereunder by reference.)

11.     N8 Medical and Colgate entered into the First MTA and the Second MTA (set forth below) in order to allow N8 Medical to make a confidential and limited transfer of ceragenins (CSA-13 and CSA-44) to Colgate for limited testing purposes, as well as to provide Colgate access to N8 Medical's information and confidential information regarding all ceragenins, while at the same time protecting and safeguarding N8 Medical's extremely valuable proprietary information and ceragenin compounds.  Colgate desired access to the ceragenin compounds and to N8 Medical's information for the purpose of researching and evaluating the potential use and benefit of using the ceragenins as a key ingredient in oral care mouthwash formulations and potentially other oral care formulations and products, such as toothpaste.  At all times material to this Complaint, Colgate was aware that the use of ceragenin compounds for oral healthcare

applications was just one of many potential applications of the ceragenin technology and that N8 Medical was actively pursuing use of these compounds for other high value healthcare applications.

12.     The ceragenins and materials provided to Colgate were invented and developed by BYU in Utah, and certain CSA-13 and CSA-44 ceragenin compounds were shipped on behalf of N8 Medical from BYU in Utah to Colgate for testing and evaluating pursuant to the Agreements.

13.     Under the terms of the First MTA, N8 Medical initially shipped to Colgate ceragenins CSA-13 and CSA-44 around approximately the year end of 2010, and Colgate began to test and examine them.  N8 Medical shipped several additional shipments of CSA-13 and CSA-44 over the term of the Agreements (as defined below).

14.     On several occasions, Colgate reported to N8 Medical that the results of its studies and experiments were positive and Colgate wanted to proceed towards a business relationship between the companies.

15.     Although unknown to N8 Medical at the time, Colgate secretly pursued its interest in N8 Medical's ceragenins by filing an International Patent Application.  That patent filing was in contravention of Colgate's contractual obligations to N8 Medical, and to the detriment of N8 Medical, as discussed below in this Complaint.

16.     While secretly pursuing a patent based on N8 Medical's ceragenins, Colgate entered into a second Material Transfer Agreement (the "Second MTA"), effective December 6, 2012.  (A true and correct copy of the Second MTA, including its amendments, is attached hereto as "Exhibit B" and expressly incorporated hereunder by reference.)

17.     Colgate further agreed to keep N8 Medical's Confidential Information confidential under a Mutual Confidential Disclosure Agreement dated October 11, 2010 , and incorporated by reference in the First MTA and Second MTA at Paragraph 8.

18.     The terms of the First MTA and the Second MTA are materially identical insofar as they relate to this lawsuit. (First MTA and Second MTA are collectively referred to as the "Agreements").

19.     At no time during the negotiations of the Second MTA, or at any time prior to the publication of the patent on July 25, 2013, did Colgate inform N8 Medical that it had breached the First MTA by filing for a patent based on N8 Medical's ceragenins.

20.     At an in-person meeting between Colgate and N8 Medical on December 11, 2012, in the personal conference room of Ian Cook, Colgate's CEO, in New York City, and attended by the Colgate technical team, Colgate's Chief Technology Officer, the heads of Colgate's Oral Health Technology Division, Consumer Products Technology Division, Licensing, Regulatory, and other Colgate business people, Colgate presented data to N8 Medical showing that Colgate's testing of ceragenins had produced very impressive results, with CSA-13 showing superior performance to all other Colgate tested antimicrobials and formulations in the three primary areas of importance for a mouthwash: antimicrobial efficacy, anti-inflammatory activity, and anti-malodor (bad breath). Colgate indicated that it had never obtained such promising results in a compound that appeared to be safe, and the ceragenin compounds showed fast time-kill, longevity of kill, and efficacy in mouthwash formulations that they tested that were over a year old. Colgate was also positive about the initial human testing that they completed in Thailand, and the Colgate CTO stated that Colgate was ready to go "all in" on the ceragenin technology, and that they were

prepared to finalize the terms of a license agreement by the end of January 2013.

21.     Consistent with Colgate's representations that the evaluation of the ceragenins was positive, Colgate provided N8 Medical with a template license term sheet for the license of ceragenins (A true and correct copy of the license term sheet is attached hereto as "Exhibit C" and expressly incorporated hereunder by reference) with terms of a royalty agreement with N8 Medical up to 10% on net sales of Colgate's mouthwash products alone. The parties agreed that they would work to memorialize the terms of the license agreement in January 2013.

22.     Colgate informed N8 Medical that it would aggressively pursue the launch of a ceragenin (CSA-13)-containing mouthwash and gave an initial estimate of CSA-13 for initial launch, primarily outside the United States.  N8 Medical indicated that it would begin making preparations to meet Colgate's desired volume.

23.     Prior to mid-2013, Colgate's reports and communications to N8 Medical concerning the efficacy, characteristics and stability of ceragenins to be used in Colgate product applications were positive.

24.     In 2013, N8 Medical contacted Colgate on several occasions to inquire as to the status of the ceragenins project and to further pursue the royalty bearing licensing agreement that the parties were contemplating.

25.     Rather than negotiate in good faith concerning a licensing agreement or other acceptable business relationship, Colgate ultimately told N8 Medical that its ceragenins were not efficacious, were too expensive, too timely and costly to pursue regulatory approval, and inherently shelf life unstable.  That Colgate representation was completely opposite of prior Colgate communications, statements and representations, and completely inconsistent with all of

the Colgate information that had been shared with N8 Medical previously.  Colgate previously

indicated a willingness to pay significantly more than its current antimicrobials for the ceragenin

technology, stability of aged ceragenin material, and a strategy for entering territories outside the

United States quickly where the ceragenin compounds would be regulated as a cosmetic ingredient

and allow a more expedited path to market.

26.    When N8 Medical pressed Colgate during the period of the Agreements for

reasonable access to copies of the studies, protocols, methods and data, including the last study to

which Colgate referenced in claiming that N8 Medical's ceragenins were not sufficiently

efficacious or stable, Colgate was unwilling, or unable, to produce such studies, protocols,

methods and data and indicated that they had already provided all information that they were

willing to provide; and frequently eluded or did not respond to requests for reasonable access to

data.

27.    N8 Medical has requested the materials tested by Colgate, and the protocol and

method of testing, so that N8 Medical could retest the materials to determine if Colgate's tests

were accurate or flawed.  Colgate has refused to cooperate in providing reasonable access to the

protocol and testing method for confirmatory testing.

28.    On information and belief, Colgate misrepresented the intent, nature, and precise

methods and results of its testing, or skewed or directed the design or nature of the relevant

testing, in order to discourage N8 Medical from pursuing its rights under the Agreements and

disparage the perceived value of ceragenins.

29.    On information and belief, Colgate hid, misrepresented or skewed the methods or

results of its testing, the fact that it had secretly filed for a patent based on N8 Medical's

8

ceragenins, in order to avoid having to pay N8 Medical any compensation, including a reasonable royalty or share of the profits for use of N8 Medical's ceragenins and other confidential and trade secret information, or compensation owed under the Agreements.

30.     Based on the licensing term sheet Colgate provided to N8 Medical, the proposed range of royalty it was prepared to pay N8 Medical, Colgate's representations to N8 Medical, and publicly disclosed information of Colgate that its mouthwash products represent in excess of a 21% market share of worldwide (ex-US) mouthwash products, and that ceragenins would be incorporated into its products.  Based on Colgate's representations, N8 Medical could expect royalties in the range of $30 million per year and increasing thereafter as sales of Colgate products increased, and increasing dramatically as Colgate incorporated N8 Medical's ceragenins into other oral care products, including toothpaste.

31.     Therefore, in addition to the other damages to N8 Medical as a result of the Agreements breach and patent filing and publication by Colgate, just the lost royalties from Colgate that would have been paid to N8 Medical in a commercial arrangement likely exceed $500 million.

32.     Colgate was also aware that N8 Medical, under any scenario, would be the supplier of ceragenins to Colgate.  N8 Medical has been damaged by the loss of ceragenin sales.

33.     Because Colgate's actions have been intentional and malicious, N8 Medical is entitled to exemplary damages on certain of its claims.

### Terms of the Relevant Agreements

34.     The Agreements provide (among other things) that:

      a.      The ceragenins were being supplied to Colgate solely "for the purpose of permitting Colgate to evaluate the [ceragenins] and to determine Colgate's interest in entering into a commercial agreement" with N8.

      b.      Specifically Colgate was to conduct specific "research" and testing "to evaluate efficacies of the [ceragenins]" related to "antimicrobial and anti-inflammatory activities" for eventual use in mouthwash and mouth rise, and potentially tooth paste, products, for the purpose of evaluating a commercial agreement;

      c.      Colgate was not granted the rights to use or test ceragenins for any purpose beyond those specifically and expressly set forth in the Agreements, and Colgate was expressly prohibited from using the ceragenins and related confidential information for any commercial purpose or other purpose beyond those allowed by the Agreements; and

      d.      Colgate was required to inform N8 Medical at least quarterly regarding the status of its research and testing of the ceragenins provided by N8 Medical, and provide reasonable access to its information and data to N8 medical.  Further, Colgate was required to (1) "provide N8 Medical with prompt written periodic reports attesting to Colgate's […] [r]esearch and its use of the [ceragenins]," (2) promptly and accurately inform N8 Medical of any and all final results or conclusions of its research testing, and (3) provide N8 Medical with "reasonable access" to all data generated by Colgate.

35.     Section 7 of the Agreements provides that Colgate "shall acquire no rights of any kind whatsoever with respect to any patents, copyrights, trademarks, trade secrets or other

proprietary rights of N8 [Medical] or BYU as a result of [Colgate's] performance under [the Agreements] or otherwise, and that N8 [Medical] and BYU are, and shall remain at all times, the sole owners of the [ceragenins] and related know-how provided to [Colgate] by N8 [Medical]."

36.    Section 7 of the Agreements also provides that any inventions, processes, know-how, trade secrets, improvements, other intellectual properties and other assets developed by Colgate (whether developed before or after Colgate received any CSAs under the Agreements) that incorporate or include the ceragenins are treated as "Joint Inventions" of Colgate and N8 Medical as defined in the Agreements, provided that any of the foregoing that result from unauthorized use or actions of Colgate are the sole property of N8 Medical and BYU pursuant to the Agreements.

a.    "Inventions" are any ideas, inventions, techniques, methods and other technology, whether or not patentable, developed as a result of or using or incorporating ceragenins.

b.    Inventions generated solely by either N8 Medical or Colgate are the sole and exclusive property of the inventing party, unless any relevant Invention by Colgate incorporates or includes ceragenin compounds.  If any Invention by Colgate incorporates, uses, was derived from the use or testing of, or includes ceragenins in any fashion, such Invention is a "Joint Invention", unless it was unauthorized.  That is, even if Colgate develops an invention regarding or including ceragenins without any assistance or input from N8 Medical, such invention is still a Joint Invention of Colgate and N8 Medical, or is the sole property of N8 Medical if such invention resulted from unauthorized activities of Colgate.

c.      Joint Inventions as defined in the Agreements also include any and all Inventions invented jointly by employees of both of N8 Medical and Colgate.

37.      Joint Inventions are jointly owned by N8 Medical and Colgate.  However, if any invention, discovery, or innovation by Colgate arises out of an unauthorized use, then the invention, discovery, or innovation shall be solely owned by N8 Medical.

38.      With respect to any Joint Invention developed by Colgate, Colgate is required to "promptly report in writing to [N8 Medical] [the] Inventions it has developed."

39.      After Colgate "reports in writing" to N8 Medical any Joint Invention, N8 Medical has ninety (90) days from receipt of the written notice of the invention to provide Colgate with either (1) written notice of its intent to jointly develop and/or market the Joint Invention with Colgate or (2) decline to jointly develop the Joint Invention and enter into a license agreement with Colgate on commercially mutually agreed upon reasonable terms to develop the Joint Invention.

40.      The Agreements also make clear with respect to Joint Inventions that:

a.      Title to all issued patents are jointly held and the property of N8 Medical and Colgate;

b.      The parties must cooperate for the purpose of filing and prosecuting all patent applications;

c.      That if either N8 or Colgate elects not to file a patent application in any country for the Joint Invention, an agreement will be reached for assignment of the party's rights for agreed upon consideration.

     d.     Colgate is required "to refrain from any and all acts that may jeopardize the patentability of any Joint Inventions", or that would disclose or jeopardize confidential information or trade secrets.

     e.     Pursuant to multiple provisions of the Agreements, N8 Medical is expressly entitled to compensation in the event that Colgate asserts sole title of ownership to any patent filing, or solely pursues a patent with respect to any Invention involving ceragenins.

41.     The Agreements prohibit Colgate from using the ceragenins for any purpose outside the express terms of the Agreements.  Colgate agreed to refrain from any unauthorized use of the ceragenins, information and Confidential Information containing ceragenins, and that with respect to any inventions, discoveries, or innovations, whether patentable or not, arising out of any unauthorized use by Colgate would be the exclusive property of N8 Medical.

     a.     With respect to any unauthorized use, Colgate agreed to "promptly notify N8 [Medical] in writing of any" inventions, discoveries or innovations, whether patentable or not, arising out of any unauthorized use of ceragenins and that such items will be "assigned to N8."

     b.     The Agreements expressly state that Colgate is liable to N8 Medical for any claims, damages or liability of any kind due Colgate's unauthorized use of the ceragenins and related information and Confidential Information.

42.     Despite the clear, express provisions of the Agreements, Colgate, in violation of the Agreements, has on several occasions refused to cooperate with N8 Medical and has repeatedly refused to provide reasonable access to N8 Medical of the data, studies and findings as required by the Agreements.

43.     N8 Medical has recently learned that Colgate, on or about December 21, 2011, improperly and unlawfully and in direct violation of the Agreements and of the rights and interests of N8 Medical and BYU, filed an international patent application claiming certain mouthwash formulations containing ceragenins (the "Patent").

44.     The Patent, which was published on July 23, 2013, is solely in the name of Colgate, and the filing and publication of the Patent has jeopardized and had an adverse impact on N8 Medical's pending and planned patent filings that are of significant commercial value. N8 was never notified by Colgate of the Invention claimed in the Patent, in violation of the express requirements of the Agreements.

45.     Despite the clear requirements of the Agreements, and in violation of the Agreements, Colgate never informed N8 Medical of Colgate's filing or of the publication of the Patent.  Rather, Colgate had over the course of the Agreements taken systematic and continuous efforts to conceal from N8 Medical the fact that Colgate had filed the Patent and that the Patent published.

46.     The Agreements provide that with respect to any inventions, discoveries, ideas, techniques, products, methods or other technology developed as a result of the ceragenins and Confidential Information of N8 Medical associated with unauthorized use are the exclusive property of N8 Medical and considered N8 Medical-owned inventions.

47.     Colgate's use of the ceragenins and Confidential Information in violation of the Agreements, including its unauthorized obtaining of the Patent, constitutes an unauthorized use of N8 Medical's ceragenins and confidential information in breach of the Agreements.

## FIRST CAUSE OF ACTION
(Breach of Contract)

48.     Plaintiffs repeat and allege the foregoing Paragraphs as if fully restated hereunder.

49.     The terms of the Agreements were made by mutual assent and supported by adequate consideration.

50.     N8 Medical performed all of their obligations under the Agreements and have not materially breached any of the terms of the Agreements.

51.     By entering into the Agreements, Colgate and N8 Medical agreed, among other things, that (1) Colgate would comply with all the terms of the Agreements, (2) Colgate would not improperly use ceragenins, information or Confidential Information containing ceragenins, (3) Colgate would keep N8 Medical promptly and accurately informed of its research, testing, innovations, discoveries or inventions related to or derived from the ceragenins provided by N8 Medical pursuant to the Agreements, (4) with respect to any Joint Invention, Colgate would not on its own file any patent and would report any invention in writing to N8 Medical before any patent application was filed, (5) any patent application at a minimum would be filed in the joint name of Colgate and N8 Medical, (6) after Colgate reported the joint invention to N8 Medical under the terms of the Agreement, N8 Medical would have at least ninety (90) days to provide Colgate with written notice of its intent to jointly develop and/or market the joint invention with Colgate or to negotiate a  license agreement with Colgate for the development of the joint invention, (7) that Colgate would compensate N8 Medical for any invention it wished to patent arising from or relating to its testing of ceragenins and N8 Medical decided to assign to Colgate, and/or (8) that if N8 Medical elected not to file a Joint Invention patent, Colgate would pay N8 Medical consideration to be agreed for the assignment of N8 Medical's rights.

52.     While the relevant provisions of the Agreements were in full force and effect, Colgate undertook a series of experiments using the ceragenins that N8 Medical provided to it under the Agreements, and Colgate accessed and reviewed a variety of N8 Medical Confidential Information relating to ceragenins.

53.     As a result of those experiments, Colgate observed attributes of the CSA-13 and CSA-44 ceragenins that caused them to be prime candidates for the use in mouthwash or mouth rinse products and other personal care products for the reduction of malodor, anti-microbial activity and anti-inflammatory responses.

54.     Rather than complying with the provisions of the Agreements discussed above, however, Colgate secretly proceeded to file a patent application under the Patent Cooperation Treaty ("PCT") - without N8 Medical's or BYU's knowledge or consent; without making any compensation to N8 Medical as required by the parties' Agreements; and without negotiating (or even attempting to negotiate) a commercially reasonable agreement with N8 Medical. (A true and correct copy of the Patent application is attached as "Exhibit D" and is expressly incorporated herein by reference.)

55.     Colgate's PCT Patent filing was unknown to N8 Medical for 18 months, and N8 Medical did not learn about the Patent filing until well after it was published in late July of 2013.

56.     Colgate's Patent filing falsely claims sole ownership in Colgate of certain inventions regarding ceragenins set forth in the Patents, in direct breach of the parties' Agreements.

57.     Colgate breached the Agreements, including, without limitation, by: (1) not providing N8 prompt written notice(s) of inventions claimed by the Patent, (2) depriving N8 Medical of its rights regarding the inventions claimed by the Patent under Section 7 of the

Agreements, (4) filing the Patent, (5) by not being forthcoming with N8 Medical regarding reasonable access to its protocols, procedures, testing and discoveries with respect to ceragenins, (6) failing to negotiate a commercial agreement with N8 Medical and/or paying N8 Medical compensation prior to filing the Patent, (7) improperly using the ceragenin materials, information and Confidential Information, (8) failing to pay reasonable consideration for the sole patent filing, and (9) causing and/or allowing the publication of the Patent.

58.     As a direct and proximate result of Colgate's actions and breach of contract, N8 Medical has suffered and continues to suffer damages and economic losses, including negative business consequences, which include monetary damages for the compensation and benefits N8 Medical would have earned had Colgate complied with its obligations under the Agreements, monetary damages for any and all harm caused to N8 Medical's patent portfolio and intellectual property as a result of Colgate's unauthorized disclosure of Confidential Information and filing of the Patent and the resultant publication of the Patent, as well as substantial time, direct cost, delay and opportunity cost as a result of the circumstances and issues caused by Colgate's breaches.

59.     As a direct and proximate result of Colgate's actions in breach of the Agreements, N8 Medical is entitled to recover from Colgate monetary damages in excess of $500 million.  In addition, Colgate should be ordered to assign and otherwise correct the ownership of the Patent Application and any resultant Patent that was, and consists of, Colgate's unauthorized use of ceragenins and Confidential Information.

## SECOND CAUSE OF ACTION
### (Breach of the Implied Duty of Good Faith and Fair Dealing)

60.     Plaintiffs repeat and allege the foregoing Paragraphs as if fully restated hereunder.

61.     Implied in the Agreements is a covenant of good faith and fair dealing, which requires the parties to the Agreement to act in a manner consistent with the intentions of the parties to the Agreements and to not act such as to deprive the other of the benefits of the parties' Agreements.

62.     Colgate breached the covenant of good faith and fair dealing implied in the Agreements, including in the following manner:  (1) not providing N8 prompt written notice of the inventions claimed by the Patent, (2) depriving N8 Medical of its rights regarding the inventions claimed by the Patent under Section 7 of the Agreements, (4) filing the Patent, (5) by not being forthcoming with N8 Medical regarding its protocols, procedures, testing and discoveries with respect to ceragenins, (6) failing to negotiate a commercial agreement with N8 Medical and/or paying N8 Medical compensation prior to filing the Patent, (7) improperly using the ceragenin materials, information and Confidential Information, (8) failing to pay reasonable consideration for the sole patent filing, and (9) causing and/or allowing the publication of the Patent, causing substantial damage to N8 Medicals pending patent portfolio and trade secrets.

63.     As a direct and proximate result of Colgate's actions in breach of the covenant of good faith and fair dealing implied in the Agreements, N8 Medical is entitled to recover from Colgate monetary damages of at least $500 million.  In addition, Colgate should be ordered to assign and otherwise correct the ownership of the Patent that was, and consists of, Colgate's unauthorized uses of ceragenins and Confidential Information.

## THIRD CAUSE OF ACTION
(Violation of the Uniform Trade Secret Act, Utah Code Ann. § 13-24-2, et seq.)

64.     Plaintiffs repeat and allege the foregoing Paragraphs as if fully restated hereunder.

65.     N8 Medical, during the course of its dealings with Colgate has maintained "trade secrets" related to the ceragenin materials and other Confidential Information.

66.     Each "trade secret" held by N8 Medical derived independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who could obtain economic value from its disclosure or use, and by obtaining substantial value from patenting such trade secrets.

67.     N8 Medical took reasonable efforts to maintain the secrecy of the "trade secrets." In fact, N8 Medical and Colgate expressly agreed that Colgate would maintain the confidentiality of the materials and information N8 Medical provided to Colgate.

68.     Colgate willfully and maliciously and in bad faith misappropriated N8 Medical's "trade secrets" by disclosing, using and causing and allowing publication of them without express or implied consent despite the fact that Colgate acquired the "trade secrets" under circumstances giving rise to a duty to maintain their secrecy and limit their use, and disclosing them in a manner that limited and diminished material value in such trade secrets.

69.     N8 Medical should be awarded attorney fees, injunctive relief, damages comprising actual loss, unjust enrichment, and/or a reasonable royalty for Colgate's unauthorized use of the "trade secrets."

70.     Additionally, due to the malicious and willful character of Colgate's misappropriation, N8 Medical should be awarded punitive/exemplary damages pursuant to Utah Code Ann. § 13-24-4.

19

## FOURTH CAUSE OF ACTION
(Unjust Enrichment)

71.     Plaintiffs repeat and allege the foregoing Paragraphs as if fully restated hereunder.

72.     N8 Medical conferred a great benefit upon Colgate by, among other things, providing Colgate with, knowledge, information, and actual ceragenins, which Colgate has used in obtaining substantial know how and confidential knowledge, and including in filing the Patent it improperly filed and caused to publish.

73.     Colgate was fully aware of the benefit conferred upon it by N8 Medical.

74.     Colgate accepted and retained the benefit from N8 Medical and has reaped, and in the future is able to reap, substantial benefits.  As set forth previously in this Complaint, Colgate has been unjustly enriched by its acceptance of the benefit conferred upon it by N8 Medical. Under the circumstances, it would be inequitable for Colgate to retain those benefits.

75.     N8 Medical is entitled to restitution in the amount of Colgate's gain, including the value it has derived from the use and knowledge of N8 Medical's Confidential Information and ceragenins.

## FIFTH CAUSE OF ACTION
(Conversion)

76.     Plaintiffs repeat and allege the foregoing Paragraphs as if fully restated hereunder.

77.     BYU is the underlying owner of the ceragenins information, materials and compounds, and proprietary rights thereto, which have been licensed to N8 Medical.

78.     BYU lawfully licensed the rights to ceragenins for particular fields of use to N8 Medical, who in turn, lawfully provided limited rights to test and evaluate ceragenins to Colgate for specific research related to oral care, as described in the Agreements.

79.    The ceragenins and related information N8 Medical provided to Colgate are tangible property having substantial intellectual property and trade secret rights associated with them, including patent applications and other proprietary rights, which are also a form of chattel protectable under applicable law.

80.    By filing the Patent and the Patent Application being published, Colgate willfully interfered and wrongfully converted Plaintiffs' patent, trade secret and information rights related to oral care uses and certain unique use and applications of ceragenins to its own use while depriving N8 Medical of its rightful ownership rights, as well as converted Plaintiffs' rights and ability to file other patents critical to its business and development of other fields of use of ceragenins and other ceragenin compounds.

81.    N8 Medical has demanded that Colgate return all of N8 Medical's confidential information, but Colgate has not fully complied.

82.    Colgate's conversion of Plaintiffs' property was without lawful justification.

83.    As a direct and proximate result of Colgate's wrongful conduct, Plaintiffs have and will continue to suffered significant financial harm, irreparable harm to their patent portfolio and patentability of trade secrets and confidential information, loss of opportunities, delay, direct cost, and use of resources, and thus are entitled to the fair market value of the converted property as of the date of conversion in addition to consequential damages.

84.    In addition to recovering the amount of damages is has sustained and will in the future sustain as a result of Colgate's wrongful conversion, N8 Medical also is entitled to recover from Colgate punitive damages based on the willful conduct of Colgate undertaken in knowing violation of the rights of N8 Medical.

**WHEREFORE**, Plaintiffs demand that judgment be entered in Plaintiffs' favor under each of the Causes of Actions herein pleaded and against Defendant as follows:

(i)     Monetary relief and damages in an amount exceeding $1 billion dollars;

(ii)    Punitive damages pursuant to Plaintiffs' trade secret and conversion claims;

(iii)   Preliminary and Permanent Injunctive relief maintaining the patent estate to avoid further loss of patent rights, prohibiting Colgate from continuing to claim the Patent as its own; prohibiting Colgate from continuing to use Plaintiffs Confidential Information and other information; requiring Colgate to return all information and materials received from N8 Medical back to N8 Medical; and ordering Colgate to immediately assign the Patent, including any and all rights and interests thereunder of relating thereto, to N8 Medical.

(iv)    If appropriate, attorneys' fees and costs to prosecute this action;

(v)     Pre- and post-judgment interest; and

(vi)    All other equitable and monetary relief this Court may deem just and proper.

### JURY TRIAL DEMAND

**Plaintiffs hereby request a trial by jury as to all matters properly triable thereto.**

DATED this 12th day of November, 2013.

HATCH, JAMES & DODGE, PC

By:     /s/ Brent O. Hatch
        Brent O. Hatch
        Mark F. James

        *Attorneys for N8 Medical, Inc.*

22