Brent O. Hatch (5715)
  bhatch@hjdlaw.com
Mark F. James (5295)
  mjames@hjdlaw.com
HATCH, JAMES & DODGE, PC
10 West Broadway, Suite 400
Salt Lake City, Utah  84101
Telephone:     (801) 363-6363
Facsimile:     (801) 363-6666

Paul J. Dobrowski (pro hac vice)
  pjd@doblaw.com
Frederick T. Johnson (pro hac vice)
  fjohnson@doblaw.com
C. Gerard Harrison (pro hac vice)
  gharrison@doblaw.com
Cody Stafford (pro hac vice)
  cstafford@doblaw.com
DOBROWSKI, LARKIN & JOHNSON L.L.P.
4601 Washington Avenue, Suite 300
Houston, Texas 77007
Telephone:     (713) 659-2900
Facsimile:     (713) 659-2908

*Attorneys for Plaintiff N8 Medical, Inc.*

---

| | |
|---|---|
| N8 MEDICAL, INC. | **OPPOSITION TO MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)** |
| Plaintiff, | Case No. 2:13-cv-01017 |
| vs. | Judge Clark Waddoups |
| COLGATE-PALMOLIVE COMPANY, | Magistrate Dustin B. Pead |
| Defendant. | |

---

        Plaintiff N8 Medical, Inc. ("N8 Medical"), submits this Response to Defendant Colgate-

Palmolive Company's ("Colgate) Motion to Transfer Venue Pursuant to 28 U.S.C.  § 1404(a)

("Colgate's Motion" or the "Motion") and respectfully requests the Court deny Colgate's request to transfer this case to the United States District Court for the Southern District of New York.

## INTRODUCTION

Plaintiff N8 Medical properly filed this case in the District of Utah.  Utah has a direct connection to the facts of the case, and Utah witnesses will provide material testimony.  Indeed, Colgate does business in Utah.  Colgate's request to transfer this case to the Southern District of New York—a district that happens to include Colgate's headquarters—is nothing more than an attempt to disrupt N8 Medical's forum choice, shift any inconvenience to N8 Medical, delay this case, and drive up the costs of litigation for N8 Medical.

N8 Medical holds an exclusive license from Brigham Young University ("BYU") to compounds known as "Cationic Selective Antimicrobials" ("CSAs"), also called "ceragenins," for various fields of use.  The CSAs were invented by Dr. Paul Savage at BYU, and BYU owns the CSAs and the patent to them, along with related patents, patent applications, and other intellectual property.[1]  BYU, of course, is located in this District.

## FACTUAL BACKGROUND

On January 7, 2014, N8 Medical filed a motion to add BYU as a necessary party to this suit.  On January 17, 2014, BYU attempted to file a Notice of Non-Opposition to N8 Medical, Inc.'s Motion to Join Brigham Young University Pursuant to FRCP 19 (the "Notice") and acknowledged that it would be appropriate for the Court to add BYU as a necessary party plaintiff. [DKT 38].  The District Clerk has declined to accept BYU's Notice, however, because BYU is not currently a party. [DKT 40].   Because the contents of BYU's Notice are directly pertinent to

---

[1] Ex. A, Savage Dec. ¶ 3.

Colgate's motion to transfer venue, a copy of BYU's Notice is attached hereto as Exhibit C.  In its Notice, BYU asserts rights and interests that require its presence in this proceeding to adequately protect.  BYU further indicates that it is evaluating the potential to assert additional claims for damages, separate from N8 Medical, against Colgate.[2]

In 2010, N8 Medical and Colgate entered into a Mutual Confidentiality Disclosure Agreement ("MCDA") and a Materials Transfer and Evaluation Agreement ("MTA"), consistent with N8 Medical's license with BYU.[3]  Pursuant to the MCDA and MTA, N8 Medical provided confidential information, trade secrets and CSAs to Defendant Colgate for research and testing. The goal was to commercialize the use of CSAs in Colgate's lines of oral care products (e.g., in its mouthwash or toothpaste).  The MTA, and a later renewal of the MTA (the "Second MTA") both expressly named BYU as beneficiary under the MTAs.[4]

Both N8 Medical—through Dr. Savage at BYU—and Colgate conducted testing on the CSAs directed towards creating oral care products that Colgate would commercialize under the MTAs.  When technical issues arose during testing, Dr. Savage was a point of contact and source of information for both Colgate and N8 Medical.

In violation of the MTAs, Colgate filed an application for foreign patent protection under the Patent Cooperation Treaty (the "PCT Application") claiming sole ownership of certain uses and combinations of the CSAs.  As N8 Medical explains in detail in its Complaint, this action, taken in secret and without informing N8 Medical, directly violated the terms of the MTAs.

---

[2] BYU has authorized N8 Medical to represent to the Court that the attached Exhibit C accurately reflects BYU's position regarding its inclusion in this case as a necessary party plaintiff.

[3] Ex. B, Richards Dec.

[4] Exs. B-3 and B-7, ¶ 27.

Colgate's unlawful actions in filing the PCT Application, and in allowing the PCT Application to publish, caused damage to N8 Medical as an exclusive licensee of BYU and causes significant and irreparable damage to BYU's patent portfolio.  Thus, the relationships that form the basis for the breach of contractual and legal duties set forth in Plaintiff's complaint are rooted in Utah, and the ultimate, and potentially most serious harm resulting from Colgate's misconduct is centered in Utah.  These facts, coupled with BYU's acknowledgement that it is appropriate for the Court to add BYU as a necessary party plaintiff, requires retention of venue in this District.

## LEGAL ISSUES

Under Tenth Circuit law, when suit is filed in a plaintiff's home district, the Court must honor the plaintiff's choice of forum unless the balance in the defendant's favor is shown by clear and convincing evidence.[5]

Colgate's motion under 28 U.S.C. § 1404 presumes that venue in this case is properly laid under 28 U.S.C. § 1391, but that this case should be transferred to the Southern District of New York for the "convenience of the parties and the witnesses."  Section 1404(a) provides "[t]hat for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  Section 1404(a) is intended to "[p]lace discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'"[6]  To prevail, Colgate must prove that (1) this action could have been brought in the alternate forum, (2) venue in this

---

[5] *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1168 n.13 (10th Cir.2010).

[6] *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)).

forum is inconvenient, and (3) the interests of justice are better served in the alternate forum.[7]  A movant may not merely to show that these factors tip in its favor.  Under law that has been settled in the Tenth Circuit for half a century.  "[U]nless the balance is **strongly in favor of the movant**[,] the plaintiff's choice of forum should rarely be disturbed."[8]

Colgate has not carried this burden.  It does not explain how witnesses situated in Utah or in N8 Medical's home states of Ohio and Nevada, will find venue in New York convenient.  Further, Colgate does not explain how any party or witness other than Colgate—a multinational corporation with a visible presence in every city and town in the United States—will benefit from a trial down the street from Colgate's corporate headquarters.  Equally important, Colgate fails to identify how transfer to its home court will decrease any level of inconvenience to the parties throughout the long, expensive, pre-trial process, a process that is likely to entail travel to Utah, Ohio, Nevada and New York, regardless of which court ultimately tries the case.  Colgate's Motion shows, at most, that it will enjoy a cost and home court advantage from which only it will benefit.  That is not the showing required under Section 1404 for transfer.

---

[7] *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir.1991) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)).

[8] *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.,* 618 F.3d 1153, 1167-68 and n.13 (10th Cir. 2010) ("*Employers Mutual*") (emphasis added) (movant's burden to prove balance strongly favors transfer goes back five decades) (following *Scheidt v. Klein,* 956 F.2d 963, 965 (10th Cir.1992)(internal quotation marks omitted)).

## LEGAL AUTHORITIES

**A.    Plaintiff N8 Medical's Choice of Forum Should Not be Disturbed**

**1.    A Multinational Corporation With Pervasive Business Interests in Every Corner of the United States is Not Inconvenienced by Trial In Utah**

Colgate Cannot show that suit in this District is inconvenient.[9]    To determine inconvenience, the Court considers the following factors:

- plaintiff's choice of forum
- accessibility of witnesses and other sources of proof
- cost of making necessary proof
- questions as to enforceability of judgment
- relative advantages and obstacles to fair trial
- difficulties that may arise from congested dockets
- possibility of existence of questions arising in area of conflicts of laws
- advantage of having local court determine questions of local law
- and all other considerations of a practical nature that make a trial easy, expeditious, and economical.[10]

Colgate's motion focuses on a few of these factors that it asserts favor transfer and ignores others. Under controlling law, none of the balancing factors support transfer.

**a.    Plaintiff's Choice of Forum Should Be Given Effect**

Merely shifting the inconvenience from the defendant to the plaintiff, is insufficient to justify transfer under Section 1404.[11]    Moreover, "[u]nless the defendant "is truly regional in character"—that is, it operates essentially exclusively in a region that does not include [the chosen venue]—transfer is almost always inappropriate.[12]    Though the plaintiff's choice of forum may

---

[9] *Id.*

[10] *Id.* at 1516.

[11] *Scheidt v. Klein*, 956 F.2d 963, 966 (10th Cir.1992).

[12] *See Intellectual Ventures I LLC v. Checkpoint Software Technologies Ltd.,* 797 F. Supp. 2d 472, 477 (D. Del. 2011).

receive less deference when the plaintiff does not reside in the district, that factor is outweighed when the lawsuit has a strong relationship to the forum.[13]  With BYU's acknowledgement that it would be appropriate for the Court to join BYU as a necessary party plaintiff, the issue should be resolved.  Even were it not, the close ties to Utah mandate retention of venue in this district.

The Tenth Circuit's decision in *Employers Mutual* is illustrative.  In that case, an Iowa-based insurer brought a declaratory judgment action in Wyoming against a Utah contractor seeking a declaration that it was not obligated to indemnify or defend the contractor.[14]  The lawsuit arose from negligent construction of a hotel roof in Wyoming.  Though *neither* party was a resident of Wyoming, the Tenth Circuit affirmed the District Court's denial of the defendant's motion to transfer venue to Utah, the defendant's home state, because substantial events material to the claims occurred in the forum state.[15]  "When engaging in the substantiality analysis, courts **"ought not focus solely on the matters that gave rise to the filing of the action, but rather should look at the entire progression of the underlying claim**".[16]

In this case, the long progression of events among Colgate, BYU, and N8 Medical, under which Colgate was entrusted with BYU's intellectual property establishes a substantial relationship supporting venue in Utah.  Indeed, Colgate acknowledged BYU's importance to its business relationship with N8 Medical by twice agreeing that BYU is a direct beneficiary of both MTAs.[17]  Therefore, Plaintiff's choice of forum should be upheld.

---

[13] *See Employers Mut.,* 618 F.3d at 1167-68.

[14] *Id.* at 1157.

[15] *Id.* at 1166.

[16] *Id.* citing 17 James Wm. *Moore et al., Moore's Federal* Practice § 110.04[1] (3d ed.2010) (emphasis added).

[17] Exs. B-4 and B-7, ¶ 27.

2

### b.      The Progression of Events Underlying this Suit are Centered in Utah

It is "the entire sequence of events underlying the claim" that establishes the substantial relationship to the forum, not just a triggering event.[18]  The patented technology and intellectual property that are central to this case have their genesis in Utah and remain here today.  Professor Paul B. Savage is the inventor of the CSAs at issue.[19]  Dr. Savage, who is the Reed M Izatt Professor of Chemistry and Biochemistry in the BYU Department of Chemistry and Biochemistry, conducted the vast majority of the research and development resulting in the CSA's in Utah.[20] As a Utah resident, Dr. Savage regularly assisted and communicated with Colgate—over a period of nearly 6 years—in an effort to develop a product line based on the CSAs.  Those efforts, if successful, would have benefitted BYU, a named third-party beneficiary to the contracts between Colgate and N8 Medical.[21]  The intellectual property at the heart of this dispute—the CSAs—was invented in Utah by a Utah resident, tested in Utah, and licensed in Utah from BYU, a Utah university.  Utah is no stranger to this dispute; it is the epicenter.

### i.      Colgate's Communications with Dr. Savage

When Colgate became interested in using CSAs in their oral care products in 2007, they contacted Dr. Savage and BYU.[22]  At Colgate's invitation, Dr. Savage visited Colgate's offices in September 2007 and gave a presentation to a number of Colgate representatives regarding the

---

[18] *See Employers Mutual,* 618 F.3d at 1167-68.

[19] Ex. A, ¶ 3 and Exs. A1-A4.

[20] Ex. A, at ¶¶ 2-3.

[21] Ex. A, ¶ 3.

[22] Ex. A, ¶ 5.

ceragenins.[23]   The communications between Colgate and Dr. Savage in Utah arranging this presentation are reflected in Dr. Savage's Declaration.[24]   Colgate's relationship and communications directly with Dr. Savage in Utah continued through 2008.  Colgate sought and obtained preliminary toxicity studies related to CSA-13 from Dr. Savage, as well as actual ceragenin compounds for Colgate's own testing.[25]  On June 2, 2008, Ceragenix Pharmaceuticals, Inc. ("Ceragenix") and Colgate executed a Materials Transfer and Evaluation Agreement (the "Ceragenix MTA").[26]  At paragraph 7(a) of the Ceragenix MTA, Colgate acknowledged BYU's proprietary rights as sole owner of ceragenins, trade secrets and patents.[27]

The relationship continued through 2009 and 2010.  On August 11, 2010, Colgate again communicated directly with Dr. Savage, in Utah, to continue the previous research and product development program.[28]   Dr. Savage passed this inquiry on to Mike Alder, Director of the Technology Transfer Office of BYU, and to N8 Medical, BYU's licensee.[29]   Laurence Du-Thumm, a manager at Colgate, contacted Dr. Savage on August 12, 2010, reiterating Colgate's interest in the ceragenins and indicating that Colgate "would like to re-establish [its] relationship **with BYU** and other parties to continue the work."[30]  Dr. Savage responded to Mr. Du-Thumm, providing him with an update on the ceragenins and with information related to a new compound,

---

[23] *Id.*

[24] *See, e.g.*, Exs. A-5 – A-8.

[25] *Id.* and Exs. A-9 – A-10.

[26] Ex. B-2.  Ceragenix was the BYU licensee prior to N8 Medical.

[27] *Id*. at p. 2.

[28] Ex. A, ¶ 7.

[29] Ex. A-11.

[30] Ex. 12 (emphasis added).

CSA-44, that he believed would interest Colgate.[31]  These communications in August 2010 led to numerous interactions between Dr. Savage and Colgate over the next three years.[32]

On November 18, 2010, Dr. Savage entered into a consulting agreement with Plaintiff N8 Medical.[33]  Thereafter, as the inventor of the ceragenins and a consultant to N8 Medical, Dr. Savage provided technical information and data from Utah regarding the ceragenins to both N8 Medical and Colgate.  Between 2010 and 2013, Dr. Savage had numerous communications and interactions with Colgate employees Laurence Du-Thumm, Kenneth Klimpel, and Dandan Chen, among others regarding safety in pharmacology testing, stability of compounds, testing results, and other issues related to the ceragenins.[34]  From Utah, Dr. Savage also participated in conference calls with Colgate and N8 Medical representatives related to many of those same topics.

Further, between December 2011 and October 2012, BYU sponsored three separate safety studies conducted on the ceragenins, specifically CSA-13.  Dr. Savage served as BYU's representative for those studies.[35]  Dr. Savage provided BYU-sponsored studies to Colgate for its benefit and to help with their own clinical and in-house evaluations of the ceragenins.[36]

The sequence of events from 2007 to the present day – and during all of Dr. Savage's interactions with Colgate-establish Utah's central connection to this case.  Dr. Savage, the inventor of the CSA's was and is an employee of BYU.  From November 2010, he was a technical consultant to Plaintiff N8 Medical in their dealings with Colgate.  In the course of his work as a

---

[31] Ex. A, ¶ 6.

[32] *See id.* and Exs. A-14 – A-24.

[33] Ex. A, ¶ 7 and Ex. A-25.

[34] *Id.; see generally* Exs. A-14 – A-24.

[35] *See* Ex. A, ¶ 8 and Exs. A-26 – A-28.

[36] Ex. A, ¶ 9.

BYU employee and N8 Medical consultant, Dr. Savage generated information on the ceragenins through testing and research, frequently responded to communications sent to him by Colgate, and provided information gleaned from his testing and research to Colgate for its benefit all in Utah.

### ii.    Colgate's Agreements with N8 Medical

BYU's central relationship to this suit is all the more evident from the terms of the agreements Colgate signed with N8 Medical.  The Mutual Confidential Disclosure Agreement ("MCDA"), which set the ground rules under which N8 Medical shared BYU's confidential information with Colgate, expressly provided that it was undertaken for the benefit of BYU:

> The Parties agree that they are voluntarily entering into this Agreement for the express benefit of third party BYU.  N8 has licensed certain of the proprietary Confidential Information from BYU, the underlying owner of the Confidential Information, and is obligated to protect the confidentiality of such Confidential Information for the benefit of BYU.[37]

Finally, Colgate reaffirmed its understanding that the MTA's were for the express benefit of BYU.  By declaring and agreeing that BYU is a third party beneficiary under the MTAs, Colgate confirmed that BYU was the underlying owner of the confidential materials and information being supplied to Colgate, and that Colgate undertook an obligation to protect BYU's rights.  Colgate cannot complain that Utah is an inappropriate forum for this dispute.[38]

### c.    New York Law Questions Will Not Handicap an Experienced Federal Court

The possibility that the court might have to apply the law of New York, does not weigh heavily in favor of a transfer.  Federal courts sitting in diversity regularly apply the law of sister states.  New York contract law is not an exotic and unfamiliar. An experienced federal judge in

---

[37] Ex. B-3, ¶ 12.

[38] Ex. B-3 and B-7, ¶ 27.

Utah is no less qualified than one in New York to properly adjudicate this case.[39]  In addition, N8 Medical asserts claims other than those arising under the contract, including the Utah Trade Secret Act, and a Utah court will certainly be more familiar with that substantive law than a New York court.  At most, then, this issue is a tossup and cannot favor Colgate's position.  Finally, this factor receives less weight when it involves "relative[ly] simpl[e]" legal issues such as here.[40]

### d.     Colgate Does Not Demonstrate Inconvenience

Colgate fails to demonstrate that the accessibility of witnesses and sources of proof supports transfer. To demonstrate the requisite inconvenience, the movant must (1) identify the witnesses and their locations; (2) "indicate the quality or materiality of the[ir] testimony"; and (3) "show[ ] that any such witnesses were unwilling to come to trial ... [,] that deposition testimony would be unsatisfactory[,] or that the use of compulsory process would be necessary."[41]

Rather than specifics, Colgate generally asserts it would "be far more convenient to litigate and try this action in New York, where the majority of witnesses and other proof are located . . ,"[42] It fails to provide the Court with a list of witnesses, the materiality of their testimony, or the

---

[39] *See Employers Mut. Cas. Co.*, 618 F.3d at 1169-70.

[40] *Id*. (citing *Scheidt*, 956 F.2d at 966 (noting that "the applicability of Florida law is not a significant concern in light of the relative simplicity of the legal issues involved in the common law fraud and breach of contract claims")).

[41] *Scheidt*, 956 F.2d at 966 (brackets omitted) (internal quotation marks omitted); *see* 15 Wright, Miller & Cooper, § 3851, at 227-28 ("If the moving party merely has made a general allegation that necessary witnesses are located in the transferee forum, . . . the application for transferring the case should be denied . . . .").

[42] Colgate's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) ("Colgate's Mot.") (12/20/13) [DKT 29] at pp. 6-7.

potential costs of litigating in Utah rather than New York.[43]   Nor does Colgate even attempt to argue that deposition testimony would be insufficient or that compulsory process would be required.   Colgate simply claims that "[t]here can be no question . . . that most of the witnesses with material information reside in New York or in nearby New Jersey."[44]   Colgate admits, however, "[t]he parties have yet to exchange any discovery" and all of the material witnesses have yet to be identified.[45]   In other words, Colgate does not know the material facts, witnesses, or evidence, but somehow is absolutely sure none of them have anything to do with Utah.

The only witnesses Colgate claims will be inconvenienced are its own employees and the employees of N8 Medical.   Absent compelling proof of "unique or unusual burden on its operations" transfer is improper for a "defendant with operations on a national or international scale."[46]   Colgate does not claim that its employees will not—or cannot—testify in Utah if needed.[47]   Colgate fails to explain why justice is served by shifting its relatively minor inconvenience to Utah-based witnesses like Dr. Savage.[48]   Colgate's failure to identify specific witnesses, describe the materiality of their testimony, or show that any of those witnesses will be

---

[43] The affidavit of Kenneth Klimpel in support of Colgate's arguments is required to, but does not, provide the "...substance of [witness] evidence..." *See Chicago, R.I. & P.R. Co. v. Hugh Breeding, Inc.*, 232 F.2d 584, 588 (10th Cir.1956).

[44] Colgate's Mot. at p. 6, n.19.

[45] *Id*.

[46] *Intellectual Ventures,* 797 F. Supp. 2d at 477.

[47] *See, e.g.*, *Wolf v. Gerhard Interiors, Ltd.*, 399 F. Supp. 2d 1164, 1166-68 (D. Colo. 2005).

[48] The vast majority of expense and travel in litigation like this occurs pre-trial.   Venue has little to do with that expense.   Nowadays, electronic communications and document exchange can mitigate much of that expense and inconvenience.   For example, Colgate and N8 Medical recently agreed to use an electronic document server to provide numerous documents to produce to N8 documents related to Colgate's work with the CSAs and its filing of the PCT Application.

unwilling to come to Utah deprives its motion of the weight needed to swing the balance "strongly" in its favor.[49]

### e.    Colgate's "Docket Congestion" Argument is Inconsequential

Lastly, potential difficulties of court congestion are afforded little weight and do not favor transfer.  "[T]he speed of a district's docket is not decisive, and a comparison of docket conditions yields only slight weight for or against transfer in a § 1404(a) analysis."[50]

Here, the difference between the dockets of Utah and the Southern District of New York are minimal.[51]  At best this factor is a draw and does not favor a transfer.  More importantly, Colgate does not claim that any "congestion" in this Court's docket will be an obstacle to a fair trial or otherwise prevent justice from being served.

### 2.    The Interests of Justice Do Not Favor a Transfer for Venue.

Colgate has failed to raise any contention that an interest of justice favors transfer to the Southern District of New York.  As shown above, this District can be fair, expeditious, and convenient to the witnesses and parties.  Venue should remain here.

---

[49] See Scheidt, 956 F.2d at 966.

[50] comScore, Inc. v. Integral Ad Science, Inc., 924 F. Supp. 2d 677, 690 (E.D. Va. 2013).  Indeed, "courts have refused to accord this concern controlling weight and have deemed it only 'a minor consideration.'" Jaffe v. LSI Corp., 874 F. Supp. 2d 499, 506 (E.D. Va. 2012); see also Arete Power, Inc. v. Beacon Power Corp., 2008 WL 508477, *12 (N.D. Cal. 2008) (stating factor "usually is not a major consideration."); Andrews v. Norfolk Southern Corp., 2008 WL 687255, *4 (D.N.J. 2008) (stating consideration of congestion is not of "great importance.").

[51] The difference in median disposition time for cases in the two districts is within three months of one another.  Judges in the District of Utah have fewer cases and conduct more trials than their counterparts in the Southern District of New York.  For instance, a judge in New York has 670 pending cases and completes 14 trials.  In Utah, the judges have 443 pending cases and complete 23 trials.                  See        http://www.uscourts.gov/Statistics/FederalCourtManagement Statistics/FederalCourtManagmentStatistics/2013/district-courts-september-2013.aspx.

9

**CONCLUSION**

A defendant like Colgate that has operations on an international scale must demonstrate that the chosen form would create a unique or unusual burden on its operations before a transfer of venue under Section 1404 is granted.   Colgate has failed to do so.   N8 Medical respectfully requests the Court deny Colgate's Motion and maintain venue in the District of Utah.

DATED this 21st day of January, 2014,

Respectfully submitted,


By:      /s/ Brent O. Hatch
          HATCH, JAMES & DODGE, PC
          Brent O. Hatch
          Mark F. James

          DOBROWSKI, LARKIN & JOHNSON L.L.P.
          Paul J. Dobrowski
          Frederick T. Johnson
          C. Gerard Harrison
          Cody Stafford

          *Attorneys for N8 Medical, Inc.*