Kenneth B. Black (#5588)
  Email: *kbblack@stoel.com*
Jill M. Pohlman (#7602)
  Email: *jmpohlman@stoel.com*
David L. Mortensen (#8242)
  Email: *dlmortensen@stoel.com*
STOEL RIVES LLP
201 S Main Street, Suite 1100
Salt Lake City, UT  84111
Telephone:  (801) 328-3131
Facsimile: (801) 578-6999

Attorneys for Defendant
Colgate-Palmolive Company

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DISTRICT

| | |
|---|---|
| N8 MEDICAL, INC.,<br><br>       Plaintiff,<br><br>v.<br><br>COLGATE-PALMOLIVE COMPANY,<br><br>       Defendant. | **REPLY MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**<br><br>2:13-cv-01017-CW-DBP<br><br>The Honorable Bruce S. Jenkins |

Defendant Colgate-Palmolive Company ("Colgate") respectfully submits this reply memorandum in support of its Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a).

### INTRODUCTION

The question presented by Colgate's motion -- i.e., whether this case belongs in Utah -- is not a close one.  Neither party is a Utah resident, and the dispute centers around an agreement governed by New York law that was negotiated, executed, performed, and terminated in New

York.  Plaintiff N8 Medical, Inc. ("N8") contends that the Court should ignore all of the factors weighing heavily in favor of transferring this case to the Southern District of New York merely because the ceragenin technology licensed to N8 was conceived in Utah.  While the ceragenin technology may have its origins in this state, that fact is irrelevant to the venue analysis.  This litigation is not about when, where, how, or why ceragenins were invented.  Rather, the dispute is about whether Colgate (a New York corporation) has complied with its agreements with N8 (an Ohio corporation).  The parties' witnesses with information relevant to that dispute work and reside in New York, New Jersey, and Ohio.  The documents and other evidence relevant to Colgate's compliance with the parties' agreements are centered in the New York area.  And, of course, the dispute is governed by New York law.  It would serve no one (including this Court) to require the parties to expend time and resources traveling thousands of miles to Utah to litigate a dispute that so clearly belongs in New York.

## ARGUMENT

**The Interests of Justice Will Be Served if this Case Is Transferred to the Southern District of New York.**

Section 1404(a) vests this Court with broad discretion to transfer a civil action to any other district where the case may have been brought for the convenience of the parties and witnesses and to further the interests of justice.[1]  N8 does not deny that this action could have been brought in the Southern District of New York.[2]  Instead, N8 suggests that "***none*** of the balancing factors" relevant to the Court's determination of whether the convenience of the

---

[1] *See* 28 U.S.C. § 1404(a).

[2] *See generally* Opp'n to Mot. to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (01/21/14) ("N8 Opp'n") [D.E. 43].

parties and the interests of justice would be served by transferring this action to New York "support transfer."[3] N8 is mistaken. A transfer to New York is not only appropriate under 28 U.S.C. § 1404(a), but the factors relevant to the change of venue analysis weigh overwhelmingly in favor of transfer.

1. *Residence of the Parties*: Favors Transfer

N8 cannot dispute that the residence of the parties weighs against maintaining this action in Utah. Neither party resides in Utah, or even nearby. Colgate is headquartered more than 2,100 miles away in New York. N8 is headquartered nearly 1,700 miles away in Columbus, Ohio.

2. *Choice of Law Issues*: Favors Transfer

The fact that New York law governs this dispute weighs in favor of transferring this action to New York. While Colgate recognizes this Court's ability to apply the law of another jurisdiction, cases from this Court repeatedly observe that, when there is a choice, it is preferable to have local courts determine questions of local law.[4]

N8 attempts to minimize this factor by arguing that this Court is better equipped than a New York court to consider its claim pled under the Utah Trade Secrets Act.[5] N8 puts the proverbial cart before the horse. Indeed, N8 has no claim under the Utah Trade Secrets Act. N8

---

[3] *Id.* at 1 (emphasis added).

[4] *See* Alpha Real Estate Holdings, LP v. Jabbes 6, Inc., No. 2:10-cv-1210, 2011 WL 1326932, at *2 (D. Utah Apr. 7, 2011) (unpublished) (finding Ohio court "better suited than a Utah court to handle issues dealing with the application of Ohio law"); *see also* Dorfman, Inc. v. Melaleuca, Inc., No. 2:10-cv-1213, 2012 WL 919109, at *3 (D. Utah Mar. 16, 2012) (finding factor favored transfer from Utah to Idaho because Idaho law governed the case).

[5] *See* N8 Opp'n [D.E. 43] at 7.

is not a resident of Utah, it does not claim to have maintained trade secrets in Utah, it does not claim that Colgate acquired or misappropriated trade secrets in Utah, and it does not claim to have suffered any harm in Utah. This Court need not decide at this time what law governs a trade secrets claim, but it is clear that, under any choice of law analysis, N8 has no claim against Colgate arising under Utah law. This factor clearly weighs in favor of transfer to New York.

   3. <u>*Accessibility of Witnesses and Costs of Making Necessary Proof*</u>: *Favors Transfer*

N8 does not dispute that the great majority of witnesses and other proof relevant to its claims is centered in New York. After all, this case focuses on what Colgate did or did not do, and Colgate, its multiple witnesses, its documents, and its evidence are all squarely centered in the New York area. There can be no question that it will be far more convenient to try this case in New York, rather than require Colgate to transport its employees and relevant proof to Utah.

N8 seeks to deflect this reality by arguing that, by moving to transfer venue to New York, Colgate is simply attempting to "shift any inconvenience to N8" and "drive up [N8's] costs of litigation."[6] There is no substance to N8's claim. Columbus, Ohio (where N8 is headquartered) is three-times further away from Salt Lake City than it is from Manhattan.[7] There are no direct flights from Columbus to Salt Lake City, while there are multiple direct flights from Columbus to New York.[8] It makes little sense for *either* party to trek all of their witnesses, documents, and other proof across the country to Utah, when New York provides a much more convenient and

---

[6] *See id.* at ii.

[7] Columbus, Ohio is approximately 1680 miles from Salt Lake City, and only 540 miles from Manhattan.

[8] *See http://flycolumbus.com/airline-info/non-stop-destinations/.*

accessible forum for *both* sides.  N8 has no roots, no employees, and no documents in Utah.  As such, litigating this case in Utah would be a greater financial burden on both parties and makes sense for no one.[9]

N8 is aware of this reality and thus attempts to shift the focus from the parties to "Utah-based witnesses like Dr. [Paul] Savage," a BYU professor who was paid $2,000 a month to work as an independent contractor for N8.[10]  But Dr. Savage is the *only* Utah-based witness N8 identifies who supposedly has information relevant to this litigation.  N8 has identified no other individuals with ties to this state.  Moreover, BYU concedes that it "does not have first-hand knowledge of many of the facts alleged in . . . the Complaint,"[11] making it unlikely that any other Utah witnesses will be called.  And, while Dr. Savage might be deposed in this case as a third-party witness, N8 does not explain what information he may have that would prove relevant and important at trial.  Even if Dr. Savage participated in the development of ceragenins, he certainly did not negotiate the Agreements between N8 and Colgate, was not involved in

---

[9] N8 cites a case from the District of Delaware to argue that, because Colgate is a sizeable corporation, transfer is inappropriate absent a "unique or unusual burden" on its operations.  N8 Opp'n at 8; *see also id.* at 1.  This Court should reject N8's invitation to find, as a matter of law, that a large corporation cannot be inconvenienced by litigating in a distant forum with no material connection to the dispute.  The Tenth Circuit identifies a handful of factors relevant to a motion to transfer under 28 U.S.C. § 1404(a), and size of the defendant is not one of them.  *See Chrysler Credit Corp. v. Country Chrysler Inc., 928 F.2d 1509, 1516 (10th Cir. 1991)*; *see also Island View Residential Treatment Ctr. v. Kaiser Permanente, No. 1:09-cv-3, 2009 WL 2614682, at \*2 (D. Utah Aug. 21, 2009)* (unpublished).  Instead, the Tenth Circuit favors transfer where it will make the trial easy, expeditious, and economical.  *See Chrysler Credit Corp.*, 928 F.2d at 1516.

[10] *See* N8 Opp'n [D.E. 43] at 8.

[11] Brigham Young University's Notice of Non-Opposition to N8 Medical, Inc.'s Mot. to Join Brigham Young University Pursuant to FRCP 19 at 2, attached to N8 Opp'n [D.E. 43] as Exhibit C.

Colgate's compliance with the Agreements, and was not involved in Colgate's decision not to pursue a commercial relationship with N8. It makes little sense to require all of N8's and Colgate's witnesses to travel considerable distances so that Dr. Savage (who may not be called at trial) can be close to home.

In the end, New York is a far more convenient forum for all of Colgate's anticipated witnesses, and is a far more convenient forum for N8's Ohio-based witnesses. This factor clearly weighs heavily in favor of transfer to the Southern District of New York.[12]

### 4. *Docket Congestion: Favors Transfer*

N8 does not dispute that this litigation is likely to be resolved more quickly if transferred to the Southern District of New York. In fact, the median time from filing to trial in the Southern District of New York is just over two years, while the median time from filing to trial in this District is more than three years.[13] While conceding that Utah courts are more congested than New York courts, N8 argues that the factor is a "draw."[14] While Colgate does not contend

---

[12] N8 questions Colgate's claim that its witnesses and evidence have no connection to Utah, given that Colgate has not identified every witness it intends to call along with the substance and materiality of their expected testimony. *See* N8 Opp'n at 8. While this case is in its infancy, and the parties have yet to exchange initial disclosures, Colgate is confident that all of its witnesses and evidence are in New York or nearby New Jersey. This is not a case where witnesses and evidence are spread across the country and the Court must resort to counting heads. Colgate negotiated, executed, performed, and terminated the Agreements from its offices in New York or New Jersey. N8 negotiated, executed, and performed the Agreements from its offices in Columbus, Ohio. Utah is not part of the equation.

[13] *See* http://www.uscourts.gov/Statistics/FederalCourtManagementStatistics/district-courts-june-2013.aspx.

[14] N8 Opp'n [D.E. 43] at 9.

that this factor is the most important in the Court's analysis, there can be no question that it favors transfer to New York.

   5.  *Enforceability of Judgment*: *Favors Transfer*

The issue of the enforceability of any judgment N8 may obtain in this case plainly favors transfer to New York because that is where Colgate resides.[15]

   6.  *N8's Choice of Forum*: *Carries Little Weight*.

N8 argues that "when suit is filed in a plaintiff's home district," the Court should honor the plaintiff's choice of forum.[16] In this case, N8 did not file in its home district in Ohio. Instead, N8 filed its lawsuit in Utah -- nearly 1700 miles away from where it does business. While N8's choice of forum is relevant to the Court's analysis under § 1404(a), the factor is given significantly less weight when the plaintiff -- like N8 here -- does not reside in this District.[17]

N8 invites the Court to overlook this fact by arguing that this "lawsuit has a strong relationship to the forum."[18] In support of its claim, N8 embarks on a history lesson regarding the origins of ceragenins, and argues that this Court should consider "the entire sequence of events underlying the claim" to determine whether or not this dispute has a "material relation or significant connection to [Utah]."[19] N8's argument is entirely misplaced.

---

[15] *See Dorfman*, 2012 WL 919109, at *3 ("[E]nforceability favors Idaho as that is where defendants reside.").

[16] *Id.* at iv.

[17] *See* Employers Mut. Cas. Co. v. Bartile Roofs, Inc., 618 F.3d 1153, 1168 (10th Cir. 2010).

[18] N8 Opp'n [D.E. 43] at 2.

[19] *Id.* at 2-6.

First, N8 misstates the analysis relevant to a motion to transfer under § 1404(a). The language N8 quotes from *Employers Mutual Casualty Company v. Bartile Roofs* regarding examining the "***entire progression of the underlying claim***" is taken from the Court's analysis of a challenge to venue under § 1391(a)(2), not the Court's analysis of the motion to transfer under § 1404(a).[20] In considering a motion to transfer under § 1404(a), the Tenth Circuit states that "[c]ourts accord little weight to a plaintiff's choice of forum 'where the facts giving rise to the lawsuit have no material relation or significant connection to the plaintiff's chosen forum."[21] The Tenth Circuit goes on to state that, in determining whether a particular forum has a significant connection to a contract-based claim, courts have considered whether the contract was executed in that forum, whether actions giving rise to the claim were taken in that forum, and whether the plaintiff was damaged in that forum.[22]

In this case, N8's claims against Colgate have no material relation to Utah. While the ceragenin technology may have been invented in this state, N8's claims originated elsewhere. The Agreements were not negotiated, executed, performed, terminated, or allegedly breached in Utah, and N8 was not harmed in Utah. This is not a case where just a "triggering event"

---

[20] *Id.* at 2 (quoting *Employers Mut. Cas. Co.*, 618 F.3d at 1166) (emphasis added by N8). If the Court is to borrow the standard from challenges under § 1391(a)(2), it must also recognize that for venue purposes, "in determining what events or omissions give rise to a claim, the focus is on relevant activities of the defendant, not of the plaintiff." Goff v. Hackett Stone Co., 185 F.3d 874 (10th Cir. 1999) (citation omitted). Here, Colgate's relevant activities are centered in and around New York.

[21] *Employers Mut. Cas. Co.*, 618 F.3d at 1168 (quoting Cook v. Atchison, Topeka & Santa Fe Ry. Co., 816 F. Supp. 667, 669 (D. Kan. 1993)).

[22] *See id.*

occurred outside of Utah.[23]  ***None*** of the events relevant to N8's claims occurred in Utah.  Where the ceragenin technology was originally developed is irrelevant to N8's claims and to the venue analysis.

> 7. <u>All Other Practical Considerations that Make a Trial Easy, Expeditious, and Economical</u>:  *Favor Transfer*

Trying this case in New York will be easier, more expeditious, and more economical for both parties.  Colgate's witnesses will travel from New Jersey and New York; N8's witnesses will travel from Ohio.  Requiring both parties to travel to Utah will unnecessarily inconvenience the parties and increase expenses.  Section 1404(a) was designed "to prevent waste of time, energy, and money, and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense."[24]  This Court should exercise its discretion under § 1404(a) to prevent such waste and transfer this case to New York.

## **CONCLUSION**

For these reasons, Colgate respectfully requests that the Court transfer this action to the United States District Court for the Southern District of New York.

---

[23] *See* N8 Opp'n at 3.

[24] *Van Dusen v. Barrack,* 376 U.S. 612, 616, 84 S. Ct. 805, 809 (1964).

DATED:  February 7, 2014

STOEL RIVES LLP

/s/ *Kenneth B. Black*
Kenneth B. Black
Jill M. Pohlman
David L. Mortensen

Attorneys for Defendant
Colgate-Palmolive Company

## CERTIFICATE SERVICE

I hereby certify that on the 7th day of January, 2014, I caused a true and correct copy of the foregoing **REPLY MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)** to be served via CM/ECF on the following:

Brent O. Hatch
bhatch@hjdlaw.com
Mark F. James
mjames@hjdlaw.com
HATCH, JAMES & DODGE, PC
10 West Broadway, Suite 400
Salt Lake City, UT  84101

Paul J. Dobrowski
pjd@doblaw.com
Frederick T. Johnson
fjohnson@doblaw.com
C.Gerard Harrison
gharrison@doblaw.com
Cody Stafford
cstafford@doblaw.com
Dobrowski, Larkin & Johnson L.L.P.
4601 Washington Avenue, Suite 300
Houston, Texas 77007

*/s/ Kenneth B. Black*