Robert S. Clark (4015) rclark@parrbrown.com
Gregory M. Hess (5611) ghess@parrbrown.com
Sara M. Nielson (13824) snielson@parrbrown.com
PARR BROWN GEE & LOVELESS
185 South State Street, Suite 800
Salt Lake City, Utah 84111
Telephone:    (801) 532-7840
Facsimile:     (801) 532-7750

Stephen M. Craig (12066) stephen_craig@byu.edu
Office of the General Counsel
BRIGHAM YOUNG UNIVERSITY
A-350 ASB
Provo, UT 84602
Telephone: (801) 422-3013
Facsimile: (801) 422-0265

*Attorneys for Plaintiff-Intervenor*
*Brigham Young University*

**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| N8 MEDICAL, INC.,<br><br>Plaintiff,<br><br>and<br><br>BRIGHAM YOUNG UNIVERSITY,<br><br>Plaintiff-Intervenor,<br><br>v.<br><br>COLGATE-PALMOLIVE COMPANY,<br><br>Defendant. | **PLAINTIFF-INTERVENOR BRIGHAM YOUNG UNIVERSITY'S JOINDER IN PLAINTIFF N8 MEDICAL, INC.'S FIRST AMENDED COMPLAINT AGAINST DEFENDANT COLGATE-PALMOLIVE COMPANY AND COMPLAINT ASSERTING INDEPENDENT CLAIMS (JURY TRIAL DEMANDED)**<br><br>Case No. 2:13-cv-01017<br><br>Judge Bruce S. Jenkins |

Pursuant to the Court's April 4, 2014 Order on (1) BYU's Motion to Intervene, (2) N8 Medical's Motion to Join BYU as a Party, and (3) Colgate-Palmolive's Motion to Transfer

Venue, Dkt. No. 64, Plaintiff-Intervenor Brigham Young University ("BYU") hereby submits this pleading to assert its claims against Defendant Colgate-Palmolive Company ("Colgate").

## BYU'S JOINDER IN CLAIMS OF N8 MEDICAL, INC.

Plaintiff N8-Medical, Inc. ("N8 Medical"), for itself and as assignee of N8 Medical, LLC, has filed a First Amended Complaint (the "Amended Complaint"), Dkt. No. 66, making various allegations and asserting various causes of action against Colgate.  Currently N8 Medical has more knowledge and information about the facts, circumstances, and causes of action alleged in the Amended Complaint than BYU.  Therefore, based on BYU's information and belief, BYU hereby joins the allegations and causes of action asserted in the Amended Complaint by N8 Medical against Colgate, insofar as they relate to (1) BYU's intellectual property, licensing, and other rights and interests in the cationic steroid antibiotics ("CSAs" or "ceragenins") and related technologies that are the subject of N8 Medical's allegations and causes of action; (2) BYU's rights and interests as a third-party beneficiary of the Materials Transfer and Evaluation Agreement between N8 Medical and Colgate dated December 7, 2010, as amended on May 23, 2011 and December 7, 2011 (the "First MTA") and of the Materials Transfer and Evaluation Agreement between N8 Medical and Colgate effective December 6, 2012 (the "Second MTA," and together with the First MTA, the "MTAs"); and (3) all damages that BYU has incurred as a result of the acts and/or omissions of Colgate as alleged in the Amended Complaint.  BYU hereby reserves the right to amend and/or withdraw, in whole or in part, its joinder in any of the allegations and/or causes of action set forth in the Amended Complaint, as discovery proceeds in this case.

## BYU'S ADDITIONAL SEPARATE CAUSES OF ACTION AGAINST COLGATE

In addition to joining N8 Medical's allegations and causes of action against Colgate in the Amended Complaint, as set forth above, BYU alleges against Colgate as follows:

## PARTIES

1. Plaintiff-Intervenor BYU is Utah non-profit corporation and institution of higher education. Its principal campus and place of business is located in Provo, Utah.

2. On information and belief, Defendant Colgate is a Delaware corporation having its headquarters and principal place of business located in New York City, New York.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction under 28 U.S.C. § 1332, because there is complete diversity of citizenship between Colgate, on the one hand, and BYU and N8 Medical, on the other hand, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

4. The Court has personal jurisdiction over Colgate, because Colgate is a foreign corporation authorized to do business in the State of Utah.

5. Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(1) and (b)(2), as Colgate "resides" in this District within the meaning of 28 U.S.C. §1391(c)(2), and a substantial part of the events giving rise to this action occurred within this District.

## FACTUAL BACKGROUND

6. This case concerns a novel class of compounds that were invented at BYU and are known as ceragenins or CSAs, which have broad spectrum antimicrobial activity as well as numerous other therapeutic attributes of value in a broad range of commercial applications.

7. BYU owns various patents and patent applications relating to its groundbreaking research on ceragenins (the "Ceragenin Patents"). In addition to the Ceragenin Patents, BYU also owns valuable intellectual property and trade secrets that, together with the Ceragenin Patents, have significant commercial value. The patents, trade secrets, and other intellectual property relating to ceragenins are collectively referred to herein as the "Ceragenin IP."

8. BYU has actively sought to protect its Ceragenin IP through a coordinated strategy that includes, in part, (a) maintaining the confidentiality of trade secrets associated with Ceragenin IP; and (b) a series of past, present, and contemplated or potential future patent applications that would maintain and continue patent protection in multiple fields of use.

9. Premature filing of patent applications outside that coordinated effort jeopardizes the ability of BYU to maximize patent protection of the Ceragenin IP, because such applications are sometimes considered "prior art" that interferes with the ability to obtain a patent on related subject matters. The acts and omissions of Colgate, as alleged herein, have interfered with the efforts of BYU in connection with protecting its Ceragenin IP.

10. N8 Medical, through its wholly-owned subsidiary, N8 Medical, LLC, entered into an Exclusive License Agreement with BYU in September 2010 ("N8 License"). The N8 License includes confidentiality obligations intended to protect BYU's trade secrets. Subject to the terms and conditions set forth in the N8 License, BYU licensed to N8 Medical, LLC, within certain specified fields of use, rights to the ceragenins developed at BYU, including the Ceragenin Patents. The N8 License was amended in August 2012, with N8 Medical as licensee.

11. On information and belief, Colgate pursued the potential use of ceragenins in oral care applications with N8 Medical since December 2010, pursuant to various agreements.

12. Specifically, on information and belief, N8 Medical and Colgate entered into a Confidential Disclosure Agreement dated October 11, 2010 and the MTAs (the "Agreements"), which included confidentiality obligations and covenants strictly limiting the use and disclosure of materials and information shared with Colgate relating to BYU's intellectual property licensed to N8 Medical. BYU is a specifically-named third party beneficiary of the Agreements.

13. The use of ceragenin compounds for oral care applications (as discussed between N8 Medical and Colgate) is just one of many potential commercial applications of the Ceragenin IP.  BYU is actively pursuing use of these compounds for other commercial applications through other licensees in addition to N8 Medical, as well as other potential licensees.

14. On information and belief, Colgate pursued its interest in BYU's Ceragenin IP by conducting various tests, developing and testing various derivative compounds, collecting valuable data and other information relating to the tests and compounds, and secretly filing an international patent application under the Patent Cooperation Treaty in contravention of its contractual obligations to BYU under the MTAs, to the significant detriment of BYU.

15. Specifically, on or about December 21, 2011, without notice to or coordination with BYU (and, on information and belief, without notice to or coordination with N8 Medical) that could have prevented damage to BYU's ability to protect its Ceragenin IP, Colgate filed an international patent application, Application Number PCT/US201l/066482, claiming certain oral care formulations containing ceragenins (the "Colgate PCT Application").

16. Also, without notice to or coordination with BYU (and, on information and belief, without notice to or coordination with N8 Medical) that could have prevented damage to BYU's ability to protect its Ceragenin IP, Colgate filed similar patent applications in Taiwan, Application Number TW201332581; in Argentina, Application Number P12 01 04872; and in Venezuela, Application Number 1637-12 (the "Colgate Foreign Applications").

17. The Colgate PCT Application and the Colgate Foreign Applications violated Colgate's covenants and obligations under its Agreements with N8 Medical and thereby also breached Colgate's duties to BYU as a third-party beneficiary of such Agreements.

18. The Colgate PCT Application, which was published on July 23, 2013, was solely in the name of Colgate, and BYU and, on information and belief, N8 Medical were not notified by Colgate of the full extent of its activities with respect to the Ceragenin IP or of Colgate's intent to file the Colgate PCT Application.

19. The filing and publication of the Colgate PCT Application in violation of the Agreements has damaged and/or will damage BYU in three distinct ways:

    a. The filing and publication of the Colgate PCT Application has impaired the present value of the Ceragenin IP and BYU's opportunity to license it for additional fields of use, by disclosing various BYU trade secrets and by casting a cloud of uncertainty over one or more of BYU's present Ceragenin Patents and planned patent applications relating to the Ceragenin IP.

    b. The filing and publication of the Colgate PCT Application has increased and will in the future increase BYU's costs of prosecuting, maintaining, and defending one or more of BYU's present Ceragenin Patents and planned patent applications relating to the Ceragenin IP.

    c. On information and belief, BYU's patenting options and opportunities have been limited by the filing and publication of the Colgate PCT Application, to a degree as yet undetermined, and BYU therefore has suffered damages and will suffer damages.

20. Similarly, the Colgate Foreign Applications were solely in the name of Colgate, and BYU and, on information and belief, N8 Medical were not notified by Colgate of its intention to file the Colgate Foreign Applications.

21. The filing of the Colgate Foreign Applications in violation of the Agreements has damaged and/or will damage BYU in three distinct ways:

    a. The filing of the Colgate Foreign Applications has impaired the present value of the Ceragenin IP and BYU's opportunity to license it for additional fields of use, by disclosing

various BYU trade secrets and by casting a cloud of uncertainty over one or more of BYU's present Ceragenin Patents and future patent applications relating to the Ceragenin IP;

b. The filing of the Colgate Foreign Applications has increased and will in the future increase BYU's costs of prosecuting, maintaining, and defending one or more of BYU's present Ceragenin Patents and future patent applications relating to the Ceragenin IP; and

c. On information and belief, BYU's patenting options and opportunities have been limited by the filing of the Colgate Foreign Applications, to a degree as yet undetermined, and BYU therefore has suffered damages and will suffer damages.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

22. BYU incorporates by reference all preceding paragraphs as if fully set forth herein.

23. BYU is a specifically-named beneficiary of the Agreements between N8 Medical and Colgate and therefore has a protectable interest in those Agreements.

24. Colgate has breached the Agreements by, among other things, filing the Colgate PCT Application, causing the Colgate PCT Application to be published, filing the Colgate Foreign Applications, and claiming ownership of the inventions set forth in those applications.

25. As a result of Colgate's breach of the Agreements, BYU has been damaged, and Colgate has reaped benefits to which it was not entitled.

26. BYU is therefore entitled to a monetary judgment against Colgate for breach of the Agreements in amounts to be determined at trial.

## SECOND CAUSE OF ACTION
### (Breach of the Implied Duty of Good Faith and Fair Dealing)

27. BYU incorporates by reference all preceding paragraphs as if fully set forth herein.

28. An implied covenant of good faith and fair dealing inheres in every contract, including the Agreements, of which BYU is a specifically-named beneficiary.

29. Colgate has breached the implied covenant of good faith and fair dealing through various acts and omissions that contravened the purposes and intent of the Agreements.

30. As a result of Colgate's breaches of the implied covenant of good faith and fair dealing, BYU has suffered damage, and Colgate has reaped benefits to which it was not entitled.

31. BYU is therefore entitled to a monetary judgment against Colgate for breach of the Agreements in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
### (Misappropriation of Trade Secrets)

32. BYU incorporates by reference all preceding paragraphs as if fully set forth herein.

33. Colgate possessed non-public information belonging to BYU relating to BYU's ceragenins, including, among other things, the types of ceragenins most likely to have positive therapeutic effects in treating and preventing various health-related conditions, one or more additional therapeutic properties of the ceragenins, and methods for stabilizing the ceragenins. Colgate possessed such non-public information under obligations of confidentiality.

34. The non-public BYU information possessed by Colgate derived independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who could obtain economic value from its disclosure or use.

35. The non-public BYU information possessed by Colgate was the subject of efforts that were reasonable under the circumstances to maintain its secrecy.

36. The non-public BYU information constituted "trade secrets" within the meaning of the Utah Uniform Trade Secrets Act, Utah Code Ann. §§ 13-24-1 through 13-24-9 (the "UTSA").

37. Colgate misappropriated BYU's trade secrets within the meaning of the UTSA by, among other things, using them to prepare and file the Colgate PCT Application and the Colgate Foreign Applications and by allowing the publication of the Colgate PCT Application.

38. As a result of Colgate's misappropriation of BYU's trade secrets, BYU has suffered damage, and Colgate has reaped benefits to which it was not entitled.

39. BYU is therefore entitled to injunctive relief and to an award of damages and costs and attorneys' fees against Colgate pursuant to the UTSA.

### FOURTH CAUSE OF ACTION
(Unjust Enrichment)

40. BYU incorporates by reference all preceding paragraphs as if fully set forth herein.

41. Colgate has benefitted from its conduct in violation of BYU's rights and interests.

42. Colgate fully appreciates and has knowledge of the benefits it has received.

43. Colgate would be unjustly enriched if it were permitted to retain those benefits.

44. Equity and good conscience dictate that Colgate be required to account for and disgorge to BYU a sum equal to the value of the benefit involuntarily conferred upon Colgate.

### FIFTH CAUSE OF ACTION
(Declaratory Judgment)

45. BYU incorporates by reference all preceding paragraphs as if fully set forth herein.

46. Colgate's acts and omissions in violation of BYU's rights has raised an actual controversy between Colgate and BYU about (a) ownership of certain data and other information relating to BYU's ceragenins and the intellectual property rights therein, (b) Colgate's responsibility for the additional costs that BYU will incur in prosecuting, maintaining, and defending the Ceragenin Patents and future patent applications relating to the Ceragenin IP as a result of Colgate's conduct; and/or (c) Colgate's responsibility for the damages that BYU has

incurred and will incur because Colgate's conduct has limited BYU's patenting options and opportunities with respect to the Ceragenin IP.

47. BYU is therefore entitled to a declaration of its rights against Colgate with respect to those subject matters, pursuant to 28 U.S.C. Section 2201.

48. BYU is also entitled to any and all further and proper relief based on such declaration, as may appear on the facts and circumstances of this case, pursuant to 28 U.S.C. Section 2202.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff-Intervenor BYU demands that judgment be entered in BYU's favor under its causes of actions against Defendant Colgate as follows:

(i) A declaration under 28 U.S.C. Sections 2201 and 2202 that BYU is entitled to exclusively own, protect, and manage all of the Ceragenin IP and related inventions and other improvements, subject only to valid and enforceable license agreements whereby legitimate licensees (including without limitation N8 Medical) are entitled to utilize the Ceragenin IP as specified in such license agreements;

(ii) A declaration under 28 U.S.C. Sections 2201 and 2202 that Colgate breached the Agreements and that BYU, as a named third-party beneficiary, is and will be entitled to recover from Colgate all costs incurred in protecting BYU's Ceragenin IP that were necessitated by Colgate's conduct, including increased costs of prosecuting, maintaining, and defending BYU's Ceragenin Patents and BYU's contemplated and potential future patent applications relating to the Ceragenin IP, resulting from the Colgate PCT Application and the Colgate Foreign Applications;

(iii)   A declaration under 28 U.S.C. Sections 2201 and 2202 that Colgate breached the Agreements and that BYU, as a named third-party beneficiary, is and will be entitled to recover from Colgate all monetary damages that BYU has incurred and will incur, because Colgate's conduct has limited BYU's patenting options and opportunities with respect to the Ceragenin IP;

(iv)   An accounting and disgorgement of all unjust benefits reaped by Colgate;

(v)   Any additional equitable relief based on the evidence as it is discovered in the course of this proceeding;

(vi)   An award of compensatory damages in an amount to be proven at trial;

(vii)   An award of punitive damages in an amount to be determined at trial;

(viii)   An award of pre- and post-judgment interest, as applicable;

(ix)   An award of BYU's costs and attorneys' fees, if appropriate; and

(x)   Such further or additional relief as this Court may deem just and proper.

## JURY DEMAND

BYU hereby demands a jury for all issues so triable.

Respectfully submitted,

PARR BROWN GEE & LOVELESS

By:   */s/ Robert S. Clark*
       Robert S. Clark

*Attorneys for Brigham Young University*

## **CERTIFICATE OF SERVICE**

I certify that on May 5, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

Brent O. Hatch
Mark F. James
HATCH, JAMES & DODGE, PC
10 West Broadway, Suite 400
Salt Lake City, Utah  84101

Paul J. Dobrowski
Frederick T. Johnson
C. Gerard Harrison
Cody Stafford (pro hac vice)
DOBROWSKI, LARKIN & JOHNSON L.L.P.
4601 Washington Avenue, Suite 300
Houston, Texas 77007

Kenneth B. Black
Jill M. Pohlman
David L. Mortensen
STOEL RIVES (UT)
201 S. Main Street, Suite 1100
Salt Lake City, Utah 84111-4904

   */s/Robert S. Clark*
   Robert S. Clark