Kenneth B. Black (#5588)
   Email: *kbblack@stoel.com*
Jill M. Pohlman (#7602)
   Email: *jmpohlman@stoel.com*
David L. Mortensen (#8242)
   Email: *dlmortensen@stoel.com*
STOEL RIVES LLP
201 S Main Street, Suite 1100
Salt Lake City, UT  84111
Telephone:  (801) 328-3131
Facsimile: (801) 578-6999

Attorneys for Defendant
Colgate-Palmolive Company

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DISTRICT

| | |
|---|---|
| N8 MEDICAL, INC.,<br><br>                    Plaintiff,<br>       and<br><br>BRIGHAM YOUNG UNIVERSITY,<br><br>                    Plaintiff-Intervenor,<br><br>       v.<br><br>COLGATE-PALMOLIVE COMPANY,<br><br>                    Defendant. | **DEFENDANT COLGATE-PALMOLIVE COMPANY'S PARTIAL MOTION TO DISMISS N8 MEDICAL INC.'S FIRST AMENDED COMPLAINT**<br><br>2:13-cv-01017-BSJ<br><br>The Honorable Bruce S. Jenkins |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................... ii

RELIEF SOUGHT ................................................................................................... v

INTRODUCTION ................................................................................................... v

BACKGROUND FACTS ....................................................................................... vii

    A.    The Parties ........................................................................................ viii

    B.    Ceragenix Supplies Colgate with Ceragenins ...................................... ix

    C.    Colgate and N8 Enter Into Agreements ............................................... ix

    D.    Colgate Receives Ceragenins and Files Patent Applications ................ xi

    E.    Colgate Decides Not to Pursue Use of Ceragenins and Transfers Its
        Interests in the Patent Applications to N8 ........................................... xi

    F.    N8 Sues Colgate ................................................................................ xii

LEGAL STANDARD ............................................................................................ xiii

CHOICE OF LAW ............................................................................................... xiv

ARGUMENT ......................................................................................................... 1

I.    N8's Claims for Conversion, Negligence, Gross Negligence, and Fraudulent
     Concealment Fail Under New York Law ........................................................ 1

    A.    No Independent Legal Duty ................................................................. 2

        1.    Conversion (5th Cause of Action) ........................................... 2

        2.    Negligence and Gross Negligence (Seventh Cause of Action) ......... 3

        3.    Fraudulent Concealment (Ninth Cause of Action) ................... 3

    B.    Economic Loss .................................................................................... 4

II.    N8 Cannot State Claims Against Colgate for Misappropriation of Trade Secrets or
     Unfair Competition ...................................................................................... 5

    A.    The MTAs Do Not Prohibit the Filing of the Patent Applications ......... 6

    B.    N8's Claims for Misappropriation and Unfair Competition Should Be
        Dismissed as Duplicative of N8's Breach of Contract Claim ............... 8

III.    N8's Claim for Breach of the Implied Duty of Good Faith and Fair Dealing
     Should Be Dismissed as Redundant ............................................................. 9

IV.    N8's Claim for Declaratory Judgment Should Be Dismissed as Moot ............ 12

CONCLUSION ..................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**

*433 Main St. Realty, LLC v. Darwin Nat'l Assurance Co.*, No. 14-cv-587 (NGG), 2014 WL 1622103 (E.D.N.Y. Apr. 22, 2014) ...................................................................................... 11

*A.J. Sheepskin Leather & Outerwear, Inc. v. USF Ins. Co.*, No. 03cv2382-LAP, 2004 WL 503727 (S.D.N.Y. Mar. 12, 2004) ........................................................................................ 10

*ARI & Co., Inc. v. Regent Int'l Corp.*, 273 F. Supp. 2d 518 (S.D.N.Y. 2003) ............................ 10

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009) ........................ xiii, xiv

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007) ......... xiii, xiv

*Bell v. Countrywide Bank, N.A.*, 860 F. Supp. 2d 1290 (D. Utah 2012)...................................... xiii

*BNP Paribas Mortgage Corp. v. Bank of Am., N.A.*, 949 F. Supp. 2d 486 (S.D.N.Y. 2013)......... 1

*Brigham Young Univ. v. Pfizer, Inc.*, 2:06cv890-TS, 2012 WL 918744 (D. Utah Mar. 16, 2012) ........................................................................................................................................... xv

*Cargill, Inc. v. Sears Petroleum & Transp. Corp.*, 388 F. Supp. 2d 37 (N.D.N.Y. 2005) ............. 9

*Carmania Corp. v. Hambrecht Terrell Int'l*, 705 F. Supp. 936 (S.D.N.Y. 1989) ......................... 1

*Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 516 N.E.2d 190 (N.Y. 1987) ............................. 1

*Commonwealth Prop. Advocates, LLC v. Mortgage Elec. Registration Sys., Inc.*, 680 F.3d 1194 (10th Cir. 2001).......................................................................................................................... x

*Comprehensive Habilitation Servs., Inc. v. Commerce Funding Corp.*, No. 05cv9640-PKL, 2009 WL 935665 (S.D.N.Y. Apr. 7, 2009) ...................................................................................... 9

*County of Los Angeles v. Davis*, 440 U.S. 625, 99 S. Ct. 1379, 59 L.Ed.2d 642 (1979).............. 13

*County of Orange v. Travelers Indem. Co.*, No. 13cv06790-NSR, 2014 WL 1998240 (S.D.N.Y. May 14, 2014)........................................................................................................................... 10

*Cox v. Phelps Dodge Corp.*, 43 F.3d 1345 (10th Cir. 1994) ....................................................... 13

*Doc. Sec. Sys., Inc. v. Coupons.com*, No. 11cv6528-CJS, 2013 WL 1945954 (W.D.N.Y. May 9, 2013) ......................................................................................................................................... 8

76255690.2 0081966-00001

*Fasolino Foods Co. v. Banca Nazionale del Lavoro*, 961 F.2d 1052 (2d Cir. 1992) ................... 10

*Funk v. Allstate Ins. Co.*, No. 13cv5933-JS, 2013 WL 6537031 (E.D.N.Y. Dec. 13, 2013)........ 10

*Geler v. Nat'l Westminster Bank USA*, 770 F. Supp. 210 (S.D.N.Y. 1991) ................................ 10

*Hafen v. Strebeck*, 338 F. Supp. 2d 1257 (D. Utah 2004) ............................................................. 5

*Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73 (2d Cir. 2002) ............................. 9, 10

*Hermansen v. Tasulis*, 48 P.3d 235 (Utah 2002)) ........................................................................... 5

*Hewitt v. Helms*, 482 U.S. 755, 107 S. Ct. 2672, 96 L.Ed.2d 654 (1987) .................................... 13

*Integrated Cash Mgmt. Servs., Inc. v. Digital Trans., Inc.*, 920 F.2d 171 (2d Cir. 1990).............. 6

*Kalimantano GmbH v. Motion in Time, Inc.*, 939 F. Supp. 2d 392 (S.D.N.Y. 2013) ............ 2, 3, 4

*Kalter v. Hartford Ins. Co. of the Midwest*, No. 14cv1115-ADS, 2014 WL 1515657 (E.D.N.Y. Apr. 17, 2014) ........................................................................................................................ 12

*King Cnty., Wash. v. IKB Deutsche Industriebank AG*, 863 F. Supp. 2d 288 (S.D.N.Y. 2012)..... 2

*MacArthur v. San Juan County*, 416 F. Supp. 2d 1098 (D. Utah 2005) ....................................... 13

*Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*, 244 F.R.D. 204 (S.D.N.Y. 2007) .......................................................................................................................................... 1, 4

*Mayer v. Mylod*, 988 F.2d 635 (6th Cir. 1993) ......................................................................... xiii

*Medinol Ltd. v. Boston Scientific Corp.*, 346 F. Supp. 2d 575 (S.D.N.Y. 2004) ........................... 9

*Palmer Kane LLC v. Scholastic Corp*, No. 12cv3890-TPG, 2014 WL 1303135 (S.D.N.Y. Mar. 31, 2014) ............................................................................................................................... 10

*Robbins v. Okla.*, 519 F.3d 1242 (10th Cir. 2008) ...................................................................... xiv

*Robehr Films, Inc. v. Am. Airlines, Inc.*, No. 85cv1072-RPP, 1989 WL 111079 (S.D.N.Y. Sept. 19, 1989) ............................................................................................................................. 1, 3

*Smith v. U.S.*, 561 F.3d 1090 (10th Cir. 2009) ......................................................................... viii

*Soren v. Equable Ascent Fin., LLC*, 2:12cv00038-CW, 2012 WL 2317362 (D. Utah June 18, 2012) ...................................................................................................................................... xiv

*Toone v. Wells Fargo Bank*, 716 F.3d 516 (10th Cir. 2013)........................................................ xii

*Unibase Sys., Inc. v. Prof'l Key Punch*, No. C86-213G, 1987 WL 41873 (D. Utah July 15, 1987) ................................................................................................................ xv

*Waddoups v. Amalgamated Sugar Co.*, 2002 UT 69 ................................................ xv

*Wash. v. Kellwood Co.*, No. 05cv10034-DAB, 2009 WL 855652 (S.D.N.Y. Mar. 24, 2009) ....... 9

*Wills v. Regence BlueCross BlueShield of Utah*, No. 2:07cv616-BSJ, 2008 WL 4693581 (D. Utah Oct. 23, 2008) ..................................................................................... xiii, xiv

**Statutes**

28 U.S.C. § 2201 ..................................................................................................... 12

**RELIEF SOUGHT**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and DUCivR 7-1(a),
defendant Colgate-Palmolive Company ("Colgate") hereby moves to dismiss the Second, Third,
Fifth, Sixth, Seventh, Ninth, and Tenth causes of action in plaintiff N8 Medical, Inc.'s ("N8")
First Amended Complaint [D.E. 66] (the "Amended Complaint") for failure to state claims upon
which relief can be granted.

**INTRODUCTION**

Colgate produces, markets, and distributes a variety of household and health products,
including oral hygiene products such as toothpaste and mouthwash.  To serve its customers,
Colgate often evaluates third-party technologies for potential use in its products.   This case
arises out of Colgate's evaluation of one such technology – anti-bacterial compounds known as
ceragenins.

Colgate learned of ceragenins in 2007 following a presentation given by a BYU
professor, Dr. Paul Savage.  Dr. Savage, in turn, referred Colgate to a Colorado-based company,
Ceragenix Pharmaceuticals, Inc. ("Ceragenix"), to which BYU had licensed certain rights in
ceragenins.  Colgate and Ceragenix entered into a Materials Transfer and Evaluation Agreement
(the "Ceragenix MTA"), and Ceragenix supplied Colgate with small quantities of certain
ceragenins for evaluation.  In 2009, Colgate developed an invention of its own, using the
ceragenins supplied by Ceragenix.  However, before Colgate completed its evaluation of
ceragenins in oral care products, Ceragenix declared bankruptcy.

In September 2010, N8 entered into a license agreement with BYU and thus obtained
certain license rights in the ceragenins.  Subsequently, Colgate and N8 negotiated and executed

agreements (including the 2010 and 2012 Materials Transfer and Evaluation Agreements (the "MTAs")) by which N8 supplied Colgate with ceragenins for Colgate's evaluation. Over the next three years, Colgate invested considerable resources in evaluating ceragenins. Ultimately, Colgate determined not to incorporate ceragenins into its products. Colgate reached this conclusion due to prohibitive costs, limited efficacy, and concerns over the stability of the ceragenin compounds. In the fall of 2013, Colgate advised N8 that it would exercise its clear right to terminate the MTA. Colgate also offered to assign to N8 all rights in a patent application Colgate filed in 2011 regarding an invention Colgate developed using ceragenins supplied by Ceragenix under the Ceragenix MTA, not by N8.

N8 responded to Colgate's termination of the MTA by filing this lawsuit and originally claiming more than $1 billion in damages. Now, in its amended complaint, N8 seeks to convert this breach of contract case into a tort case, with new claims for conversion, negligence, and fraud. Colgate is confident it will ultimately defeat N8's breach of contract claim. After all, under the Ceragenix MTA, Colgate was entitled to file patent applications on the invention it alone developed using materials supplied by Ceragenix.

However, this motion is not about N8's breach of contract claim. Instead, this motion targets the other extraneous and deficient claims N8 has asserted in its amended complaint. Specifically, Colgate seeks dismissal of the following N8 claims:

- **Conversion (Claim 5), Negligence/Gross Negligence (Claim 7), and Fraudulent Concealment (Claim 9).** These claims are nothing more than contract claims masquerading as torts. To survive dismissal, N8 must allege sufficient facts to demonstrate that (1) Colgate violated a legal duty to N8 separate and apart from its contractual obligations, and (2) N8

suffered damages different from those sought for Colgate's alleged breach of contract.  N8 satisfies neither requirement.

- **Misappropriation of Trade Secrets (Claim 3) and Unfair Competition (Claim 6)**. These claims fail for two reasons.  First, these claims require a breach of the MTA, and N8's claim that Colgate breached the MTA (assuming it even applies) by filing the patent applications is unsupported by the plain language of the agreement.  Second, like N8's claims for conversion, negligence, and fraud, these tort claims are also impermissibly duplicative of N8's claim for breach of contract.

- **Breach of the Implied Duty of Good Faith and Fair Dealing (Claim 2)**.  This claim should be dismissed as redundant.  New York law (which clearly applies) recognizes the implied duty of good faith and fair dealing, but it does not allow a party to assert a separate claim for breach of the implied covenant based on the same set of facts as the party's claim for breach of contract.

- **Declaratory Judgment (Claim 10)**.  Contrary to N8's contention, there is no ongoing controversy surrounding ownership of any invention in a patent application.  When it terminated the MTA, Colgate offered to assign its interests in the patent application to N8, and Colgate has now done so.  N8's claim for declaratory judgment is moot.

## BACKGROUND FACTS

Unless otherwise noted, the following background facts are taken from N8's Amended Complaint and documents integral to it.  Colgate steadfastly denies many of the Amended Complaint's material allegations and will, in due course, disprove them.  But for purposes solely of this motion, the Court may accept the following facts as true:

A.      **The Parties**

1.      N8 is a Nevada corporation with its principal place of business in Columbus, Ohio.[1] N8 is a biopharmaceutical company focused on research and development of a novel class of compounds with a broad spectrum of antimicrobial activity.  The compounds are known as ceragenins, cationic steroid antibiotics, or CSAs.  They are referred to by N8 in this litigation as "ceragenins."  *See* Am. Compl. [D.E. 66] ¶¶ 1-2; *see also* First Am. Exclusive License Agr. (08/03/12) ("N8 License Agreement"), Am. Compl. Ex. A at Recital A.[2]

2.      BYU is a Utah non-profit corporation and institution of higher education located principally in Provo, Utah.  BYU is the sole owner of certain intellectual property rights in the ceragenins.  While BYU is not in the business of commercially developing its inventions or other intellectual property, it desires to have ceragenins available to the public and granted a license to N8 to commercially develop ceragenins in certain fields of use.  *See* Am. Compl. [D.E. 66] ¶¶ 3 & 5; *see also* N8 License Agreement, Am. Compl. Ex. A at Recital B.

3.      Colgate is a Delaware corporation with its principal place of business in New York, New York.  Colgate is one of the leading global companies in oral health.  At one time, Colgate evaluated the potential use of ceragenins as an ingredient in oral care mouthwash formulations and potentially other oral care products.  *See* Am. Compl. [D.E. 66] ¶¶ 4 & 13.

---

[1] N8 claims to be the successor-in-interest to the contracts and claims of its subsidiary, N8 Medical, LLC.  *See* First Am. Compl. (04/23/14) [D.E. 66] ¶ 12 n.2.  Unless otherwise indicated in this memorandum, Colgate will refer to N8 and N8 Medical, LLC together as "N8."

[2]  In deciding a Rule 12(b)(6) motion, this Court "may consider not only the complaint itself, but also attached exhibits."  *Smith v. U.S.*, 561 F.3d 1090, 1098 (10th Cir. 2009).

**B.**      **Ceragenix Supplies Colgate with Ceragenins.**[3]

4.      Prior to giving N8 a license to commercially develop ceragenins, BYU granted a similar license to Ceragenix, a now-defunct company formerly located in Denver, Colorado.

5.      In 2007, Colgate expressed an interest in BYU's ceragenin technology, and Colgate subsequently entered into a Confidential Disclosure Agreement and a Materials Transfer and Evaluation Agreement with BYU's licensee, Ceragenix (the "Ceragenix MTA").  *See* Ceragenix MTA (06/02/08), attached as Ex. A.

6.      Pursuant to the Ceragenix MTA, Ceragenix supplied Colgate with certain quantities of ceragenin compounds.

7.      In 2009, using the ceragenin compounds supplied by Ceragenix, Colgate developed inventions for use in oral care and submitted those inventions to its Patent Department.

8.      On June 2, 2010, Ceragenix filed for Chapter 11 bankruptcy protection.

**C.**      **Colgate and N8 Enter Into Agreements.**

9.      After Ceragenix declared bankruptcy, BYU referred Colgate to its new licensee, N8.  *See* Am. Compl. [D.E. 66] ¶ 10.

10.      On October 11, 2010, N8 and Colgate entered into a Mutual Confidential Disclosure Agreement (the "**MCDA**") "to facilitate an exchange of technical information between N8 . . . and Colgate, while protecting [their] confidential and trade secret information."

---

[3] The facts in this Section B are provided to the Court for background only and to fill in some gaps in N8's Amended Complaint. Colgate does not rely on these facts to argue for the dismissal of N8's claims, and they need not be considered in deciding the merits of Colgate's motion to dismiss.

*Id.* ¶ 11.  The MCDA was designed to allow Colgate and N8 "to explore a business relationship involving possible testing of new ceragenins."  MCDA at p.1, attached as Exhibit B.[4]

11.     Approximately two months later, N8 and Colgate entered into a Materials Transfer and Evaluation Agreement (the "**First MTA**") in which N8 agreed to provide Colgate with certain ceragenin compounds for testing and evaluation.  *See* Am. Compl. [D.E. 66] ¶¶ 12-13; *see also* First MTA at p.1, attached as Exhibit C.

12.     The parties twice amended the First MTA -- once on May 23, 2011, and then again on July 1, 2011.  *See* Am. Compl. [D.E. 66] ¶ 12; *see also* First Amendment to Materials Transfer and Evaluation Agreement (05/23/11) & Second Amendment to Materials Transfer and Evaluation Agreement (07/01/11), attached as Exhibit C (without attachments).

13.     As the First MTA was set to expire, the parties entered into a second Materials Transfer and Evaluation Agreement on December 6, 2012 (the "**Second MTA**").  *See* Second MTA, attached as Exhibit D.  The First and Second MTAs are referred to together herein as the "**MTAs**."  Insofar as they relate to this motion, the terms of the First and Second MTA are essentially identical.[5]  *See* Am. Compl. [D.E. 66] ¶ 15 & 22.

---

[4] Colgate attaches a copy of the MCDA to this motion for the Court's convenience.  The MCDA is also attached to N8's amended complaint as Exhibit C, and thus may be considered by the Court in evaluating Colgate's motion to dismiss.  *See Commonwealth Prop. Advocates, LLC v. Mortgage Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1201 (10th Cir. 2001) ("In evaluating a motion to dismiss, we may consider not only the complaint, but also the attached exhibits and documents incorporated into the complaint by reference.").

[5] Colgate attaches a copy of the MTAs and the Amendments to the First MTA for the Court's convenience.  These documents may be considered by the Court in evaluating Colgate's motion to dismiss because they are attached as Exhibit D to N8's amended complaint.  *See Commonwealth Prop. Advocates*, 680 F.3d at 1201.

**D.**   **Colgate Receives Ceragenins and Files Patent Applications.**

14.   On December 21, 2011, Colgate filed International Patent Application PCT/US2011/066482 for an oral care composition using ceragenins in combination with quaternary ammonium compounds (the "PCT Application").  *See id.* ¶ 20; *see also* PCT Publication (07/25/13), attached as Exhibit E.

15.   The PCT Application was based on and referred to an invention Colgate developed in or about 2009 using the ceragenin compounds supplied by Ceragenix pursuant to the Ceragenix MTA.  Colgate's invention was not created using the ceragenin compounds supplied by N8 pursuant to either the First or Second MTAs on or after late 2010.[6]

16.   In December 2012, Colgate filed applications for the same invention in Taiwan, Argentina, and Venezuela (the "2012 Applications").  *See* Am. Compl. [D.E. 66] ¶ 28.  The PCT Application and the 2012 Applications are referred to collectively herein as the "Patent Applications."

17.   The PCT Application published on July 23, 2013.  *See id.* ¶ 35.

**E.**   **Colgate Decides Not to Pursue Use of Ceragenins and Transfers Its Interests in the Patent Applications to N8.**

18.   Colgate ultimately decided not to pursue the use of ceragenins in its products.  Colgate told N8 that the ceragenins were not efficacious, were too expensive, had an inherently unstable shelf life, and that pursuing the necessary regulatory approval would be unduly costly and time-consuming.  *See id.* ¶ 31.

---

[6] N8 omits these facts from its Amended Complaint.  While they are facts important to this dispute, the arguments made in this motion to dismiss do not rest upon them.

19.     On February 6, 2014, Colgate assigned to N8 all of its rights under the Patent

Applications.  *See id.* ¶ 52.  Specifically, Colgate transferred and assigned to N8 its "entire right,

title, and interest throughout the world in, to, and under the Patent Applications and any and all

Patents that may be granted thereon . . . ."  Assignment (02/06/14) at p.1, attached as Exhibit F.[7]

### F.     N8 Sues Colgate.

20.     N8 filed suit against Colgate in November 2013, asserting claims for breach of

contract, breach of the implied covenant of good faith and fair dealing, violation of Utah's

Uniform Trade Secret Act, unjust enrichment, and conversion.  In its original complaint, N8

claimed damages in excess of $1 billion.  *See* Compl. [D.E. 2] ¶¶ 48-84 & p.22.

21.     On April 23, 2014, N8 amended its complaint to plead its claims under New York

law and to assert new claims for unfair competition, negligence and gross negligence, fraud,

fraudulent concealment, and declaratory judgment.  *See* Am. Compl. [D.E. 66] ¶¶ 53-118.

22.      As with its original complaint, N8's claims arise from its contention that Colgate

breached the MCDA and the MTAs by filing the Patent Applications.  *See, e.g., id.* ¶¶ 59, 62, 73,

88, 94, 100, 105, 111, 116.  Without explanation, N8 has now reduced its claimed damages from

$1 billion to "in excess of $100 million."  *See, e.g., id.* ¶ 64.

23.     While Colgate accepts as true, for purposes of this motion, N8's allegation that

the MCDA and MTAs apply, Colgate disputes and will ultimately disprove the allegation.  The

MTAs provide that inventions shall be considered "joint inventions" under the MTAs "if the

---

[7] This Court may consider the Assignment in deciding this motion to dismiss because it is
referred to in the Amended Complaint, it is central to N8's declaratory judgment claim relating
to the current ownership of all rights and interests in the PCT Application, and there is no basis
upon which to dispute its authenticity.  *See Toone v. Wells Fargo Bank, N.A., 716 F.3d, 516, 521
(10th Cir. 2013).*

relevant Invention incorporates or includes the Materials," *i.e.*, ceragenin compounds provided by N8 pursuant to either the First or Second MTA.  *See* First MTA, Ex. C at p.1, § 7.b.(1) & (3), and Ex. A; *see* Second MTA, Ex. D at p.1, § 7.b(1) & (3), and Ex. A.

24.    Here, the invention that is the subject of the Patent Applications does not incorporate or include ceragenin compounds provided by N8 pursuant to either the First or Second MTA.  Rather, the invention was based upon materials supplied by Ceragenix.

25.    And, unlike Colgate's MTAs with N8, the Ceragenix MTA does not designate such an invention as a "joint invention."  Instead, under the Ceragenix MTA, only that which is "invented jointly by employees of both parties under this Agreement shall be jointly owned by the parties . . . and shall be considered Confidential Information under Section 7."  Ceragenix MTA, Ex. A at § 7.b.(4).

## LEGAL STANDARD

"'The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true.'"  *Wills v. Regence BlueCross BlueShield of Utah*, No. 2:07cv616-BSJ, 2008 WL 4693581, at *3 (D. Utah Oct. 23, 2008) (unpublished) (quoting *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993)).  To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547, 127 S. Ct. 1955, 1965, 167 L.Ed.2d 929 (2007)).  While this pleading standard "does not require detailed factual allegations, . . . it demands more than the unadorned, the-defendant-unlawfully-harmed me accusation.'"  *Bell v. Countrywide Bank, N.A.*, 860 F. Supp. 2d 1290, 1294 (D. Utah 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)).

Indeed, "there must be facts showing more than a 'sheer possibility' of wrongdoing," and there must be enough factual support to "raise a right to relief above a speculative level.'" *Soren v. Equable Ascent Fin., LLC*, 2:12cv00038-CW, 2012 WL 2317362, at *1 (D. Utah June 18, 2012) (unpublished) (quoting *Iqbal*, 556 U.S. at 678); *Wills*, 2008 WL 4693581, at *3 (quoting *Twombly*, 550 U.S. at 555). The "'requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them.'" *Id.* (quoting *Robbins v. Okla.*, 519 F.3d 1242, 1248 (10th Cir. 2008)).

## CHOICE OF LAW

Although N8 purports to assert some of its claims under New York *and* Utah law, it is clear that New York law applies to N8's claims.

*First*, the MCDA states that "any interpretation, dispute, or controversy arising out of this Agreement, shall be governed by and construed in accordance ***with the laws of the State of New York***." MCDA, Ex. B at § 10 (emphasis added). And, in the two MTAs and both amendments to the First MTA, Colgate and N8 repeatedly designated New York as their law of choice. *See* First MTA, Ex. C at § 19 ("This Agreement shall be interpreted and construed in accordance with the laws of the State of New York."); Second MTA, Ex. D at § 19 (same); First Amendment to First MTA, Ex. C at § 7 ("This Amendment, and any interpretation, dispute or controversy arising out of this Amendment, shall be governed by and construed in accordance with the laws of the State of New York without regard to the conflicts of law principles thereof."); Second Amendment to First MTA, Am. Compl. Ex. C at § 5 (emphasis added).

**Second**, this Court has found that, where tort claims are closely related to contract claims (as they clearly are here), "in the absence of compelling reasons to the contrary, those closely related claims ought to be governed by the same law [expressly designated in the contract]." *Unibase Sys., Inc. v. Prof'l Key Punch*, No. C86-213G, 1987 WL 41873, at *5 (D. Utah July 15, 1987) (unpublished); *see also Brigham Young Univ. v. Pfizer, Inc.*, 2:06cv890-TS, 2012 WL 918744, at **1-2 (D. Utah Mar. 16, 2012) (unpublished) (where BYU's tort claims rested heavily on duties allegedly imposed by written agreement, that agreement's choice of law provision also governed tort claims).

**Third**, even if the Court were to determine choice of law by applying the "most significant relationship" test, as described in the Restatement (Second) of Conflict of Laws, it is clear that the result would **not** yield Utah law.  *See Waddoups v. Amalgamated Sugar Co.*, 2002 UT 69, ¶¶ 12-19 (applying most significant relationship approach where no choice of law provision).  After all, neither N8 nor Colgate resides or is incorporated here.  N8 is a Nevada corporation with its principal place of business in Ohio; Colgate is a Delaware corporation with its principal place of business in New York.  Similarly, the alleged injury to Ohio-based N8 did not occur here; Colgate did not engage in any conduct allegedly causing injury here; the relationship between N8 and Colgate is not centered here; and, the Agreements were not negotiated here.  The only connection this dispute has to Utah is that the ceragenins were allegedly invented here by BYU.  It would turn Utah's conflicts of law analysis on its head if that singular connection resulted in Utah having the "most significant relationship" to this dispute.

# <u>ARGUMENT</u>

## I.   <u>N8's Claims for Conversion, Negligence, Gross Negligence, and Fraudulent Concealment Fail Under New York Law.</u>

N8's claims for conversion, negligence, gross negligence, and fraudulent concealment are nothing more than breach of contract claims dressed up as torts.  In *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 516 N.E.2d 190, 194 (N.Y. 1987), the New York Court of Appeals warned that "[m]erely charging a breach of a 'duty of due care,' employing language familiar to tort law, does not, without more, transform a simple breach of contract into a tort claim."  Otherwise, "contract law [would] drown[] in a sea of tort." *Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*, 244 F.R.D. 204, 220 (S.D.N.Y. 2007) (internal quotations omitted).

With these principles in mind, New York courts require a plaintiff purporting to state tort claims to satisfy two related but separate requirements: (1) "that the defendant violated a legal duty separate from its contractual obligations," and (2) that the damages the plaintiff "suffered do not constitute mere 'economic loss.'" *Robehr Films, Inc. v. Am. Airlines, Inc.*, No. 85cv1072-RPP, 1989 WL 111079, at *2 (S.D.N.Y. Sept. 19, 1989) (unpublished) (quoting *Carmania Corp. v. Hambrecht Terrell Int'l*, 705 F. Supp. 936 (S.D.N.Y. 1989); *see also BNP Paribas Mortgage Corp. v. Bank of Am., N.A.*, 949 F. Supp. 2d 486, 504-05 (S.D.N.Y. 2013) (dismissing negligence claim where plaintiff failed to (1) identify duty independent from those contracted for, and (2) sought same damages as those sought for breach of contract).  N8's claims for conversion, negligence, gross negligence, and fraudulent concealment fail because N8 has not pled (and cannot plead) facts sufficient to satisfy either requirement.

### A.     No Independent Legal Duty

It is well-established under New York law that a breach of contract is not to be considered a tort "unless a legal duty independent of the contract itself has been violated." *Kalimantano GmbH v. Motion in Time, Inc.*, 939 F. Supp. 2d 392, 415-16 (S.D.N.Y. 2013). Plaintiffs who enter into contracts are limited to the benefit of their bargain unless they can plead (and ultimately prove) "a legal duty separate and apart from obligations bargained for and subsumed within the transaction." *King Cnty., Wash. v. IKB Deutsche Industriebank AG*, 863 F. Supp. 2d 288, 302-03 (S.D.N.Y. 2012). Here, N8's tort claims are predicated on a breach of contract. Indeed, N8's tort allegations arise out of the same alleged contractual duties giving rise to N8's breach of contract claim.

### 1.     Conversion (5th Cause of Action)

In support of its breach of contract claim, N8 alleges that Colgate breached the Agreements by filing the Patent Applications, improperly using the ceragenins and other confidential information, and depriving N8 of its ownership rights. *See* Am. Compl. [D.E. 66] ¶ 62. N8's conversion claim is premised on the very same allegation. There, N8 alleges that Colgate wrongfully converted N8's materials and information provided pursuant to the Agreements by filing the Patent Applications, by improperly using the ceragenins and confidential information, and by interfering with N8's ownership rights. *See id.* ¶¶ 86-88. N8's claim for conversion is entirely dependent on the Agreements. N8 contends that Colgate was given the ceragenins and other information pursuant to the Agreements, and that Colgate's obligations relative to those materials are defined by the Agreements. Without the Agreements, there is no basis upon which N8 may claim Colgate's actions were unlawful. And, unless a

conversion claim stems from a wrong independent of the alleged breach of contract, it should be dismissed.  *See, e.g., Kalimantano*, 939 F. Supp. 2d at 416 (dismissing conversion claim where it "does no more than recite a breach of contract").  N8's conversion claim is fatally defective.

### 2.    *Negligence and Gross Negligence (Seventh Cause of Action)*

N8's claim for negligence and gross negligence should suffer the same fate.  In support of its negligence theory, N8 alleges that Colgate "owed N8 Medical a duty of reasonable care to protect the confidential information and materials entrusted to it," and not to "take actions that harmed N8 Medical's intellectual property rights."  Am. Compl. [D.E. 66] ¶ 99.  However, N8's Amended Complaint makes clear that those duties arose -- if at all -- from the Agreements pursuant to which N8 claims it provided confidential information and materials.  N8 pleads no factual basis upon which the Court could find that Colgate owed N8 a legal duty separate from obligations bargained for and subsumed within the Agreements.  And, absent a separate duty, N8 cannot transmute its breach of contract claim into a negligence claim.  N8's claim for negligence and gross negligence claim should be dismissed.  *See Robehr Films*, 1989 WL 111079, at *3 (dismissing negligence claim where acts alleged were not extraneous to the contract).

### 3.    *Fraudulent Concealment (Ninth Cause of Action)*

N8's fraudulent concealment claim is premised on the allegation that "Colgate had a duty to disclose the material fact of its continuing breaches of the Agreements with N8 Medical."  Am. Compl. [D.E. 66] ¶ 110.  N8 alleges that Colgate's duty arises (1) "from its contractual duties of confidentiality and trust under the terms of the First MTA," (2) "out of Colgate's legal duties to not to [sic] misappropriate or misuse the confidential and trade secret information entrusted to [sic] by N8," and (3) from "a legal duty to disclose its intention to continue to

misappropriate and misuse N8 Medical's intellectual property in breach of the Second MTA."
*Id.*

Once again, to the extent Colgate owed any duty to N8, that duty arose from the Agreements.  While N8 alleges that Colgate owed various legal duties to N8, N8 alleges no facts independent of the Agreements upon which those alleged duties could arise.  N8 contends that whatever trade secret or confidential information it provided to Colgate was provided pursuant to the Agreements.  As a result, whatever duty Colgate had regarding that information necessarily arose from the Agreements.  To the extent Colgate breached any such duty, N8 may pursue a contractual remedy.  N8 may not, however, manufacture a fraud claim out of a simple claim for breach of contract.  *See Kalimantano*, 939 F. Supp. 2d at 417-18 ("Breaching a contract does not constitute fraud unless some legal duty to the plaintiff that is independent of the contract is violated.  Any such independent duty must spring from circumstances extraneous to, and not constituting, elements of the contract itself.").

### B.    Economic Loss

N8 has not only failed to allege any duty independent of the Agreements, it has not alleged the type of damages that could be recovered it if otherwise could state a claim for conversion, negligence/gross negligence, or fraudulent concealment.  "New York courts restrict plaintiffs who have suffered economic loss, but not personal or property injury, to an action for the benefits of their bargains.  Thus, [i]f the damages suffered are of the type remediable in contract, a plaintiff may not recover in tort."  *Manhattan Motorcars*, 244 F.R.D. at 220.

With regard to each of N8's claims for conversion, negligence/gross negligence, and fraudulent concealment, N8 seeks to recover the same damages it seeks to recover for Colgate's

alleged breach of the Agreements.  As a result of Colgate's alleged breach of contract, N8 claims

it has suffered harm to its patent portfolio, lost opportunities, experienced delay, used resources,

and incurred direct costs.  *See* Am. Compl. [D.E. 66] ¶¶ 56-57, 62-63.  Similarly, as a result of

Colgate's alleged conversion, N8 alleges that it has suffered financial harm to its patent portfolio,

lost opportunities, experienced delay, used resources, and incurred direct costs.  *See id.* ¶ 91.

And, as a result of Colgate's alleged negligence and fraudulent concealment, N8 contends it has

suffered harm to its intellectual property rights.  *See id.* ¶¶ 99-101, 112.  Given that N8 seeks the

very same economic damages for its breach of contract and tort claims, N8's tort claims run

afoul of New York's economic loss doctrine.[8]  The tort claims should be dismissed.

## II.     N8 Cannot State Claims Against Colgate for Misappropriation of Trade Secrets or Unfair Competition.

N8's third cause of action is for Colgate's alleged misappropriation of N8's "trade

secrets," and its sixth cause of action is for unfair competition based on that alleged

misappropriation.  *See id.* ¶¶ 68-77, 93-96.  Both claims fail on their face for two reasons.  First,

N8 cannot state claims for unfair competition and misappropriation of trade secrets based on

Colgate's filing of the Patent Applications because the First MTA (even assuming it applies,

which it does not) did not prohibit such a filing.  And second, even if N8 could allege facts

---

[8] As explained above, New York law governs N8's tort claims.  *See supra* at xiv-xv. However, even if Utah law applied to N8's claims (as N8 inexplicably contends), N8's tort claims would run squarely into Utah's economic loss rule.  Consistent with New York law, Utah's economic loss rule provides that a "'party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim from such a breach absent an independent duty of care under tort law.'"  *Hafen v. Strebeck*, 338 F. Supp. 2d 1257, 1266 (D. Utah 2004) (quoting *Hermansen v. Tasulis*, 48 P.3d 235, 240 (Utah 2002)).

sufficient to state claims for misappropriation of trade secrets and unfair competition, N8's

claims must be dismissed as improperly duplicative of its claim for breach of contract.

**A.     The MTAs Do Not Prohibit the Filing of the Patent Applications.**

N8 alleges that Colgate misappropriated its trade secrets and unfairly competed by

disclosing the trade secrets in the Patent Applications, despite having acquired N8's "trade

secrets" pursuant to Agreements that required Colgate to maintain their secrecy. *See id.* ¶¶ 73,

94.  Assuming for purposes of this motion only that N8 owned any relevant trade secrets, that the

trade secrets were, in fact, "secret," and that Colgate published the trade secrets in the Patent

Applications, N8's claim still fails because the MTAs do not prohibit Colgate from filing the

Patent Applications.[9]  In fact, the MTAs expressly contemplate that patent protection may be

sought for inventions like the one at issue here, and the MTAs afford N8 no right to prevent the

pursuit of patent rights.

A party claiming misappropriation of trade secrets must allege (and ultimately prove)

that: "(1) it possessed a trade secret, and (2) defendant is using that trade secret in breach of an

agreement, confidence, or duty, or as a result of discovery by improper means."  *Integrated Cash

Mgmt. Servs., Inc. v. Digital Trans., Inc.*, 920 F.2d 171, 173 (2d Cir. 1990) (internal quotation

omitted).  N8 contends that, by filing the Patent Applications, Colgate misappropriated and

unfairly competed with N8 because those filings breached the parties' Agreements.  *See* Am.

Compl. [D.E. 66] ¶¶ 76, 94.  Specifically, N8 contends that "[b]y entering into the Agreements,"

---

[9] N8 has alleged ownership of trade secrets, claims that it maintained the secrecy of the trade
secrets, and claims that Colgate published the trade secrets in the Patent Applications.  *See* Am.
Compl. [D.E. 66] ¶¶ 69-73.  Colgate disputes each and every one of these allegations, and will, if
necessary, disprove them.  For purposes of this motion to dismiss, however, the Court may
accept the allegations as true.

N8 and Colgate agreed that "Colgate would not on its own file for any patent."  *See id.* ¶ 56(d).

A review of the plain language of the MTAs demonstrates that N8 is mistaken.

Section 7.b.(5) of the First and Second MTAs sets forth the parties' obligations regarding

the filing of patent applications for joint inventions.[10]  It provides that "[t]he parties will

cooperate for the purpose of filing and prosecuting patent applications," and it requires the

parties to "refrain from any and all acts that may jeopardize the patentability of any Joint

Invention in any jurisdiction."  First MTA, Ex. C at § 7.b.(5); *see also* Second MTA, Ex. D at

§ 7.b.(5) (same).  And, while parties are to provide notice of joint inventions, the MTAs give

neither party any right to prevent the other's filing of a patent application.  Indeed, upon

receiving notice of a joint invention under the MTAs, N8 can choose to jointly develop and

market the invention, but N8 has no right to object to the seeking of patent protection.  *See* First

MTA, Ex. C at § 7.b.(5); Second MTA, Ex. D at § 7.b.(5).

Even if the N8 MTAs applied here (and they do not),[11] Colgate was entitled to seek

patent protection under the MTAs.  N8 thus cannot plausibly contend that Colgate's filing of the

Patent Applications breached the Agreements and thereby constituted a misappropriation of N8's

---

[10] The MTAs defines a "joint invention" as one that "incorporates or includes the Materials [*i.e.* the ceragenins provided under the MTA]," even if the invention was invented solely by one party.  *See* First MTA, Ex. C at § 7.b.(3); *see also* Second MTA, Ex. D at § 7.b.(3) (same).  Colgate was the sole inventor of the invention described in the Patent Applications.  Colgate disputes that the invention was a "joint invention" under the MTA because Colgate did not use ceragenins provided by N8 in creating its invention.  For purposes of this motion only, however, the Court may accept as true N8's allegation that the invention described in the Patent Applications is a joint invention under the N8 MTAs.

[11] Again, the evidence will show that Colgate's invention reflected in the Patent Applications is governed by the prior-in-time Ceragenix MTA.

trade secrets.  N8 cannot sustain its claims for misappropriation and unfair competition based on the filing of the Patent Applications.

> **B.** **N8's Claims for Misappropriation and Unfair Competition Should Be Dismissed as Duplicative of N8's Breach of Contract Claim.**

In support of its claim for misappropriation of N8's "trade secrets," N8 alleges that "Colgate willfully and maliciously and in bad faith misappropriated N8 Medical's 'trade secrets' by disclosing, using and causing and allowing publication of them without express or implied consent despite that Colgate acquired the 'trade secrets' under circumstances giving rise to a duty to maintain their secrecy."  *See* Am. Compl. [D.E. 66] ¶ 73.  Similarly, in support of its sixth cause of action for unfair competition, N8 contends that Colgate "misappropriated N8 Medical's . . . labor, creativity, skill, and investment" by allegedly "misusing the trade secret, Confidential Information and Materials" N8 provided under the parties' Agreements, by "ignoring N8 Medical's rights" and "claiming sole ownership of inventions to which N8 Medical possessed joint title."  *Id.* ¶ 94.

As these allegations make plain, N8's claims for misappropriation of trade secrets and unfair competition simply duplicate N8's claim for breach of contract.  N8 alleges that Colgate received N8's trade secrets and confidential information pursuant to the Agreements, and that those Agreements dictated what Colgate could do with the materials.  Where N8's claims for misappropriation and unfair competition are based on the same conduct allegedly proscribed by the Agreements, New York courts dismiss those claims as duplicative.  *See, e.g., Doc. Sec. Sys., Inc. v. Coupons.com*, No. 11cv6528-CJS, 2013 WL 1945954, at \*\*3-4 (W.D.N.Y. May 9, 2013) (unpublished) (dismissing misappropriation of trade secrets claim where agreement governed subject matter of dispute, claims arising from dispute were contractual, and no independent tort

duty existed); *Wash. v. Kellwood Co.*, No. 05cv10034-DAB, 2009 WL 855652, at *8 (S.D.N.Y. Mar. 24, 2009) (unpublished) (dismissing unfair competition claim as duplicative of breach of contract claim because it was based entirely on same conduct proscribed by express terms of contract); *Cargill, Inc. v. Sears Petroleum & Transp. Corp.*, 388 F. Supp. 2d 37, 64 (N.D.N.Y. 2005) ("[B]reach of contract and misappropriation of trade secret claims that are truly identical causes of action, though asserted under two different labels, cannot co-exist."); *Medinol Ltd. v. Boston Scientific Corp.*, 346 F. Supp. 2d 575, 606 (S.D.N.Y. 2004) (finding misappropriation of trade secrets claim must be dismissed where "comprehensive coverage of the parties' Supply Agreement appears to be inconsistent with an independent tort theory of misappropriation of trade secrets").  The misappropriation and unfair competition claims should be dismissed as duplicative of N8's breach of contract claim.

### III.   N8's Claim for Breach of the Implied Duty of Good Faith and Fair Dealing Should Be Dismissed as Redundant.

N8's second cause of action purports to state a claim for breach of the implied duty of good faith and fair dealing.  *See* Am. Compl. [D.E. 66] ¶¶ 65-67.  While New York law implies a duty of good faith and fair dealing in every express contract, "'breach of that duty is merely a breach of the underlying contract.'"[12] *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 80 (2d Cir. 2002) (quoting *Fasolino Foods Co. v. Banca Nazionale del Lavoro*, 961 F.2d 1052,

---

[12] New York law governs this issue because the Agreements are governed by New York law.  *See supra* at xiv-xv; *see also Comprehensive Habilitation Servs., Inc. v. Commerce Funding Corp.*, No. 05cv9640-PKL, 2009 WL 935651, at *10 n.14 (S.D.N.Y. Apr. 7, 2009) (unpublished) ("Because breach of the implied covenant of good faith and fair dealing is a contractual cause of action, and the choice of law provision applies to the interpretation and enforcement of the contract, [the law designated in the contract] applies to [plaintiff's] implied covenant claim arising out of the terms of the . . . Agreement.").

1056 (2d Cir. 1992)).  "'New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same set of facts, is also pled.'"  *County of Orange v. Travelers Indem. Co.*, No. 13cv06790-NSR, 2014 WL 1998240, at *2 (S.D.N.Y. May 14, 2014) (unpublished) (quoting *Harris*, 310 F.3d at 81); *see also Geler v. Nat'l Westminster Bank USA*, 770 F. Supp. 210, 215 (S.D.N.Y. 1991) ("Under New York law, a duty of good faith and fair dealing is implicit in every contract, but breach of that duty is merely a breach of the underlying contract.").  Consequently, a separate claim that a defendant has breached the duty of good faith can survive a motion to dismiss only "'if it is based on allegations that differ from those underlying an accompanying breach of contract claim.'"  *Id.* (quoting *Palmer Kane LLC v. Scholastic Corp*, No. 12cv3890-TPG, 2014 WL 1303135, at *6 (S.D.N.Y. Mar. 31, 2014)); *see also Funk v. Allstate Ins. Co.*, No. 13cv5933-JS, 2013 WL 6537031, at *4 (E.D.N.Y. Dec. 13, 2013) (holding breach of good faith and fair dealing "must be premised on a different set of facts from those underlying a claim for breach of contract") (internal quotation omitted).

A claim for breach of the implied covenant of good faith and fair dealing must also be dismissed where it seeks to recover damages that are "intrinsically tied to the damages allegedly resulting from the breach of contact."  *ARI & Co., Inc. v. Regent Int'l Corp.*, 273 F. Supp. 2d 518, 523 (S.D.N.Y. 2003) (internal quotation omitted); *see also A.J. Sheepskin Leather & Outerwear, Inc. v. USF Ins. Co.*, No. 03cv2382-LAP, 2004 WL 503727, at *2 (S.D.N.Y. Mar. 12, 2004) (unpublished) ("[T]he relief sought by a plaintiff on an implied covenant of good faith and fair dealing claim is intrinsically tied to the damages allegedly resulting from the breach of

contract, and thus, there is no separate and distinct wrong that would give rise to an independent claim.") (internal citations and quotations omitted).

N8's claim for breach of the implied duty of good faith and fair dealing fails for both of these reasons.  First, N8's claim is not based on allegations that differ from those underlying its accompanying breach of contract claim.  In fact, N8 alleges **no** unique facts in support of its claim for breach of the implied duty of good faith and fair dealing.  *See* Am. Compl. [D.E. 66] ¶¶ 65-67.  N8 simply re-alleges by reference the same facts stated in support of its claim for breach of contract.  *See id.* ¶ 65.

Second, through its good faith/fair dealing claim, N8 seeks to recover damages intrinsically tied to the damages allegedly resulting from breach of contract.  Indeed, at the conclusion of its claim for breach of the implied covenant of good faith and fair dealing, N8 repeats the same demand for $100 million that it makes at the conclusion of its breach of contract claim.  *Compare id.* ¶ 64 ("As a direct and proximate result of Colgate's actions in breach of the Agreements, N8 Medical is entitled to recover from Colgate monetary damages in excess of $100 million.") *with* ¶ 67 ("As a direct and proximate result of Colgate's actions in breach of the covenant of good faith and fair dealing implied in the Agreements, N8 Medical is entitled to recover from Colgate monetary damages of at least $100 million.").

N8's claim for breach of the implied duty of good faith and fair dealing is redundant of its breach of contract claim and should be dismissed.  *See 433 Main St. Realty, LLC v. Darwin Nat'l Assurance Co.*, No. 14-cv-587 (NGG), 2014 WL 1622103, at *2 (E.D.N.Y. Apr. 22, 2014) (unpublished) (dismissing plaintiffs' claim for breach of covenant of good faith and fair dealing as redundant of breach of contract claim because plaintiffs alleged no independent factual

predicate for good faith/fair dealing claim); *Kalter v. Hartford Ins. Co. of the Midwest*, No. 14cv1115-ADS, 2014 WL 1515657, at *3 (E.D.N.Y. Apr. 17, 2014) (unpublished) (dismissing good faith/fair dealing claim as duplicative because it was based on same underlying facts as breach of contract claim).

**IV.** **N8's Claim for Declaratory Judgment Should Be Dismissed as Moot.**

N8's Tenth Cause of Action is for a declaration of rights under 28 U.S.C. § 2201. *See* Am. Compl. [D.E. 66] ¶¶ 114-18. Specifically, N8 alleges that "a controversy has arisen over the ownership of all patents, inventions, improvements, information, and materials, including records of all testing and development related to ceragenins." *Id.* ¶ 116. In light of that alleged controversy, N8 "seeks a declaration that, pursuant to the terms of the Confidential Disclosure Agreement, the First MTA and the Second MTA, that they are the owners of all such patents, inventions, materials, information, and records." *Id.* ¶ 117.

Contrary to N8's claim, there is no existing controversy between N8 and Colgate regarding the ownership of patents or patent applications related to ceragenins. In fact, as N8 alleges in its Amended Complaint, "[o]n February 6, 2014, Colgate assigned the PCT Application," along with all other patent applications containing the same disclosures (including those filed in Taiwan, Venezuela, and Argentina) to N8. *Id.* ¶ 52. The February 6, 2014 Assignment provides unequivocally that Colgate has transferred and assigned to N8 its "entire right, title, and interest throughout the world in, to, and under the Patent Applications and any and all Patents that may be granted thereon . . . ." Assignment, Ex. F at p.1. Thus, N8 is now the owner of the patent applications at issue in this litigation, and Colgate makes no claim to any patent or application that identifies ceragenins as a component.

"What makes a declaratory judgment action 'a proper judicial resolution of a "case or controversy" rather than an advisory opinion is the settling of some dispute . . ..'" *Cox v. Phelps Dodge Corp.*, 43 F.3d 1345, 1348 (10th Cir. 1994) (quoting *Hewitt v. Helms*, 482 U.S. 755, 761, 107 S. Ct. 2672, 96 L.Ed.2d 654 (1987)).  When the issue presented is "no longer live," the claim is moot.  *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S. Ct. 1379, 59 L.Ed.2d 642 (1979).  N8's request for a declaration of ownership of patents related to ceragenins as between N8 and Colgate is entirely moot.  When it conveyed all rights in the Patent Applications to N8, Colgate resolved any "existing controversy" between N8 and Colgate concerning ownership rights.  Thus, N8's claim for declaratory relief is moot and should be dismissed.  *See MacArthur v. San Juan County*, 416 F. Supp. 2d 1098, 1175 (D. Utah 2005).

## CONCLUSION

For the reasons set forth above, Colgate respectfully requests that the Court dismiss the Second, Third, Fifth, Sixth, Seventh, Ninth, and Tenth causes of action in the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

DATED:  June 4, 2014

STOEL RIVES LLP


/s/ *Kenneth B. Black*
Kenneth B. Black
Jill M. Pohlman
David L. Mortensen

Attorneys for Defendant
Colgate-Palmolive Company

**CERTIFICATE SERVICE**

I hereby certify that on the 4th day of June, 2014, I caused a true and correct copy of the

foregoing **DEFENDANT COLGATE-PALMOLIVE COMPANY'S PARTIAL MOTION**

**TO DISMISS N8 MEDICAL INC.'S FIRST AMENDED COMPLAINT** to be served via

CM/ECF on the following:

Brent O. Hatch
bhatch@hjdlaw.com
Mark F. James
mjames@hjdlaw.com
HATCH, JAMES & DODGE, PC
10 West Broadway, Suite 400
Salt Lake City, UT  84101

Paul J. Dobrowski
pjd@doblaw.com
Frederick T. Johnson
fjohnson@doblaw.com
C.Gerard Harrison
gharrison@doblaw.com
Cody Stafford
cstafford@doblaw.com
Dobrowski, Larkin & Johnson L.L.P.
4601 Washington Avenue, Suite 300
Houston, Texas 77007

Robert S. Clark
rclark@parrbrown.com
Gregory M. Hess
ghess@parrbrown.com
Parr Brown Gee & Loveless
101 South 200 East, Suite 700
Salt Lake City, UT 84111

*/s/ Kenneth B. Black*