Kenneth B. Black (#5588)
    Email: *kbblack@stoel.com*
Jill M. Pohlman (#7602)
    Email: *jmpohlman@stoel.com*
David L. Mortensen (#8242)
    Email: *dlmortensen@stoel.com*
STOEL RIVES LLP
201 S Main Street, Suite 1100
Salt Lake City, UT  84111
Telephone:  (801) 328-3131
Facsimile: (801) 578-6999

Attorneys for Defendant
Colgate-Palmolive Company

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DISTRICT

| | |
|---|---|
| N8 MEDICAL, INC., <br><br>             Plaintiff, <br><br>     and <br><br> BRIGHAM YOUNG UNIVERSITY, <br><br>             Plaintiff-Intervenor <br><br>     v. <br><br> COLGATE-PALMOLIVE COMPANY, <br><br>             Defendant. | **DEFENDANT COLGATE-PALMOLIVE COMPANY'S MOTION TO DISMISS PLAINTIFF-INTERVENOR BRIGHAM YOUNG UNIVERSITY'S JOINDER IN PLAINTIFF N8 MEDICAL INC.'S FIRST AMENDED COMPLAINT AND COMPLAINT ASSERTING INDEPENDENT CLAIMS** <br><br> 2:13-cv-01017-BSJ <br><br> The Honorable Bruce S. Jenkins |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

RELIEF SOUGHT ............................................................................................................. v

INTRODUCTION .............................................................................................................. v

BACKGROUND FACTS ................................................................................................. viii

    A.    The Parties ................................................................................................... viii

    B.    Ceragenix Supplies Colgate with Ceragenins. ................................................ ix

    C.    Colgate and N8 Enter Into Agreements .......................................................... x

    D.    Colgate Receives Ceragenins and Files Patent Applications ............................. xi

    E.    Colgate Decides Not to Pursue Use of Ceragenins and Transfers Its Interests in the Patent Applications to N8 .......................................................... xii

    F.    N8 Sues Colgate ........................................................................................... xiii

    G.    BYU Seeks to Intervene and Files Claims ...................................................... xiv

LEGAL STANDARD ....................................................................................................... xv

CHOICE OF LAW .......................................................................................................... xvi

ARGUMENT .................................................................................................................... 1

I.    BYU's Contract-Based Claims Fail as a Matter of Law ................................................ 1

    A.    Breach of Contract ......................................................................................... 1

    B.    Breach of the Implied Duty of Good Faith and Fair Dealing ............................... 3

        1.    BYU's Claim Should Be Dismissed as Redundant ................................. 3

        2.    BYU Has Failed to State a Claim ........................................................... 5

    C.    Unjust Enrichment ......................................................................................... 6

II.    BYU Cannot State a Claim Against Colgate for Misappropriation of Trade Secrets ....................................................................................................................... 7

    A.    The MTAs Do Not Prohibit the Filing of the Patent Applications ...................... 7

    B.    In the Alternative, BYU's Claim for Misappropriation Should Be Dismissed as Duplicative of Its Breach of Contract Claim ................................. 8

III.    BYU's Claim for Declaratory Judgment Should Be Dismissed as Moot ........................ 9

IV.    BYU's Joinder in N8's Complaint Should Be Stricken ............................................... 10

CONCLUSION ................................................................................................................ 11

76184804.2 0081966-00001

# **TABLE OF AUTHORITIES**

## Cases

*433 Main St. Realty, LLC v. Darwin Nat'l Assurance Co.*, No. 14-cv-587 (NGG), 2014 WL 1622103 (E.D.N.Y. Apr. 22, 2014) ......................................................................................... 5

*A.J. Sheepskin Leather & Outerwear, Inc. v. USF Ins. Co.*, No. 03cv2382-LAP, 2004 WL 503727 (S.D.N.Y. Mar. 12, 2004) ................................................................................ 4

*Aerospace Energy Sys. v. AlliedSignal, Inc.*, No. 2:99cv709-DAK, 2000 WL 33363301 (D. Utah May 2, 2000) ................................................................................................................. xvi

*ARI & Co., Inc. v. Regent Int'l Corp.*, 273 F. Supp. 518 (S.D.N.Y. 2003) ............................... 4

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009) ................................. xv

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007) .. xv, xvi

*Bell v. Countrywide Bank, N.A.*, 860 F. Supp. 2d 1290 (D. Utah 2012) ....................................... xv

*Brigham Young Univ. v. Pfizer, Inc.*, 2:06cv890-TS, 2012 WL 918744 (D. Utah Mar. 16, 2012) ........................................................................................................................................ xvii

*Cargill, Inc. v. Sears Petroleum & Transp. Corp.*, 388 F. Supp. 2d 37 (N.D.N.Y. 2005) ............. 9

*Comprehensive Habilitation Servs., Inc. v. Commerce Funding Corp.*, No. 05cv9640-PKL, 2009 WL 935665 (S.D.N.Y. Apr. 7, 2009) ......................................................................... 3

*County of Los Angeles v. Davis*, 440 U.S. 625, 99 S. Ct. 1379, 59 L.Ed.2d 642 (1979).............. 10

*County of Orange v. Travelers Indem. Co.*, No. 13cv06790-NSR, 2014 WL 1998240 (S.D.N.Y. May 14, 2014) ................................................................................................................... 3

*Cox v. Phelps Dodge Corp.*, 43 F.3d 1345 (10th Cir. 1994) ....................................................... 10

*Doc. Sec. Sys., Inc. v. Coupons.com*, No. 11cv6528-CJS, 2013 WL 1945954 (W.D.N.Y. May 9, 2013) ................................................................................................................................. 8

*Fasolino Foods Co. v. Banca Nazionale del Lavoro*, 961 F.2d 1052 (2d Cir. 1992) .................... 3

*First Sterling Corp. v. Union Square Retail Trust*, 958 N.Y.S.2d 346 (N.Y. App. Div. 2013) ..... 6

*Funk v. Allstate Ins. Co.*, No. 13cv5933-JS, 2013 WL 6537031 (E.D.N.Y. Dec. 13, 2013).......... 4

ii

*Furia v. Furia*, 116 A.D.2d 694 (N.Y. App. Div. 1986) ................................................................ 1

*Geler v. Nat'l Westminster Bank USA*, 770 F. Supp. 210 (S.D.N.Y. 1991) ................................... 3

*Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73 (2d Cir. 2002) .................................... 3

*Harrison v. Toptani Law Offices*, No. 11cv6801-LTS, 2012 WL 694755 (S.D.N.Y. Mar. 2, 2012) ......................................................................................................................................... 6

*Hewitt v. Helms*, 482 U.S. 755, 107 S. Ct. 2672, 96 L.Ed.2d 654 (1987) .................................... 10

*Integrated Cash Mgmt. Servs., Inc. v. Digital Trans., Inc.*, 920 F.2d 171 (2d Cir. 1990) ............. 7

*Kalter v. Hartford Ins. Co. of the Midwest*, No. 14cv1115-ADS, 2014 WL 1515657 (E.D.N.Y. Apr. 17, 2014) ..................................................................................................................... 5

*MacArthur v. San Juan County*, 416 F. Supp. 2d 1098 (D. Utah 2005) ....................................... 10

*Mayer v. Mylod*, 998 F.2d 635 (6th Cir. 1993) ............................................................................ xv

*Medinol Ltd. v. Boston Scientific Corp.*, 346 F. Supp. 2d 575 (S.D.N.Y. 2004) ............................ 9

*Merit Group, LLC v. Sint Maarten Int'l Telecomms. Servs., NV*, No. 08cv3496-GBD, 2009 WL 3053739 (S.D.N.Y. Sept. 24, 2009) ...................................................................................... 1, 6

*Morris v. 702 E. Fifth St. HDFC*, 46 A.D.3d 478 (N.Y. App. Div. 2007) ..................................... 1

*Murphy v. Am. Home Prods. Corp.*, 448 N.E.2d 86 (N.Y. 1983)................................................... 6

*Reilly v. NatWest Markets Group, Inc.*, 181 F.3d 253 (2d Cir. 1999) ........................................... 6

*Robbins v. Okla.*, 519 F.3d 1242 (10th Cir. 2008)...................................................................... xvi

*Soren v. Equable Ascent Fin., LLC*, 2:12cv00038-CW, 2012 WL 2317362 (D. Utah June 18, 2012) ....................................................................................................................................... xv

*Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516 (10th Cir. 2013) ....................................... passim

*Unibase Sys., Inc. v. Prof'l Key Punch*, No. C86-213G, 1987 WL 41873 (D. Utah July 15, 1987) ..................................................................................................................................... xvii

*Waddoups v. Amalgamated Sugar Co.*, 2002 UT 69 ................................................................. xvii

*Wills v. Regence BlueCross BlueShield of Utah*, No. 2:07cv616-BSJ, 2008 WL 4693581
    (D. Utah Oct. 23, 2008) ............................................................................................. xv, 11

**Statutes**

28 U.S.C. § 2201 ............................................................................................................. 9

**RELIEF SOUGHT**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and DUCivR 7-1(a),
defendant Colgate-Palmolive Company ("Colgate") hereby moves to dismiss plaintiff-intervenor
Brigham Young University's ("BYU") Joinder in Plaintiff N8 Medical, Inc.'s ("N8") First
Amended Complaint and Complaint Asserting Independent Claims [D.E. 71] (the "Complaint"
or "BYU's Complaint") in its entirety.

**INTRODUCTION**

Colgate produces, markets, and distributes a variety of household and health products,
including oral hygiene products such as toothpaste and mouthwash.  To serve its customers,
Colgate often evaluates third-party technologies for potential use in its products.   This case
arises out of Colgate's evaluation of one such technology – anti-bacterial compounds known as
ceragenins.

Colgate learned of ceragenins in 2007 following a presentation given by a BYU
professor, Dr. Paul Savage.  Dr. Savage, in turn, referred Colgate to a Colorado-based company,
Ceragenix Pharmaceuticals, Inc. ("Ceragenix"), to which BYU had licensed certain rights in
ceragenins.  Colgate and Ceragenix entered into a Materials Transfer and Evaluation Agreement
(the "Ceragenix MTA"), and Ceragenix supplied Colgate with small quantities of certain
ceragenins for evaluation.  In 2009, Colgate developed an invention of its own, using the
ceragenins supplied by Ceragenix.  However, before Colgate completed its evaluation of
ceragenins in oral care products, Ceragenix declared bankruptcy.

In September 2010, N8 entered into a license agreement with BYU and thus obtained
certain license rights in ceragenins.  Subsequently, Colgate and N8 negotiated and executed

v

agreements (including the 2010 and 2012 Materials Transfer and Evaluation Agreements (the "MTAs")) by which N8 supplied Colgate with ceragenins for Colgate's evaluation.  Over the next three years, Colgate invested considerable resources in evaluating ceragenins.  Ultimately, Colgate determined not to incorporate ceragenins into its products.  Colgate reached this conclusion due to prohibitive costs, limited efficacy, and concerns over the stability of the ceragenin compounds.  In the fall of 2013, Colgate advised N8 that it would exercise its clear right to terminate the MTA.  Colgate also offered to assign to N8 all rights in a patent application Colgate filed in 2011 regarding an invention Colgate developed using ceragenins supplied by Ceragenix under the Ceragenix MTA, not by N8.

N8 responded to Colgate's termination of the MTA by filing this lawsuit.  While BYU originally chose not to join in the action, BYU subsequently moved to intervene after Colgate filed a motion to transfer this action to New York.  Although BYU struggled to articulate its claims, it speculated that its rights might have been violated by Colgate's alleged actions.  And, after its motion to intervene was granted, BYU filed its complaint purporting to join in some part of N8's amended complaint while asserting its own claims for breach of contract, breach of the implied covenant of good faith and fair dealing, misappropriation of trade secrets, unjust enrichment, and declaratory judgment.  BYU's claims fail and should be dismissed for the following reasons:

- **Breach of Contract (Claim 1).**  This claim fails because BYU's claim that Colgate breached the MTAs by filing the patent applications and N8's claim that Colgate breached the MTAs (assuming they even apply) are unsupported by the plain language of the agreements.

- **Breach of the Implied Duty of Good Faith and Fair Dealing (Claim 2).**  This claim fails for two different reasons.  First, the claim should be dismissed as redundant of BYU's breach of contract claim.  New York law (which clearly applies) recognizes the implied duty of good faith and fair dealing, but it does not allow parties to assert separate claims for breach of the implied covenant based on the same facts as the party's claim for breach of contract.  Second, even if the Court were to consider the good faith / fair dealing allegations to be part of BYU's claim for breach of contract, BYU has failed to state a claim because there are no assertions of breach that are consistent with the express terms of the MTAs.  As such, they cannot provide a basis for BYU's claim.

- **Unjust Enrichment (Claim 4).**  This claim fails because BYU does not dispute the enforceability of the MTAs.  Thus, there is no viable basis for BYU's unjust enrichment claim.

- **Misappropriation of Trade Secrets (Claim 3)**.  BYU's claim for misappropriation of trade secrets fails for two reasons.  First, this claim requires a breach of the MTA, and any contention that Colgate breached the MTA by filing the patent applications is unsupported by the plain language of the agreement.  Second, and in the alternative, BYU's claim is impermissively duplicative of BYU's claim for breach of contract.

- **Declaratory Judgment (Claim 5)**.  Contrary to BYU's contention, there is no ongoing controversy between Colgate and BYU relating to BYU's ceragenin IP.  After it terminated the MTA, Colgate assigned its interests in the patent application to N8.  Thus, N8's claim for declaratory judgment is moot.  Likewise, there is no controversy relating to BYU's claim against Colgate for damages.  Given that BYU's substantive claims fail for the reasons stated above, BYU's request for a declaration regarding harm allegedly caused by Colgate also fails.

• **BYU's Purported Joinder in N8's Claims**.  At the outset of BYU's complaint, it purports to join in N8's claims to a limited extent.  BYU's joinder is unnecessary and ineffective.  Having stated its own claims against Colgate, BYU's claims rise and fall on the merits of those claims and its joinder should be stricken.  In the alternative, to the extent the Court recognizes BYU's joinder, the claims in which BYU purports to join fail for the same reasons stated in Colgate's motion to dismiss N8's First Amended Complaint, filed concurrently herewith.

## BACKGROUND FACTS

Unless otherwise noted, the following background facts are taken from BYU's Complaint and documents integral to it.  Colgate steadfastly denies many of the Complaint's material allegations and will, in due course, disprove them.  But for purposes solely of this motion, the Court may accept the following facts as true.

### A.    The Parties

1.    BYU is a Utah non-profit corporation and institution of higher education located principally in Provo, Utah.  BYU is the owner of certain intellectual property rights in a novel class of compounds with a broad spectrum of antimicrobial activity.  The compounds, referred to in this litigation as ceragenins, were invented at BYU.  *See* BYU Compl. [D.E. 71] ¶¶ 1, 6 & 7.

2.    N8 is a Nevada corporation with its principal place of business in Columbus, Ohio.[1]  *See* First Am. Exclusive License Agr. (08/03/12) ("N8 License Agreement"), N8's First

---

[1] N8 claims to be the successor-in-interest to the contracts and claims of its subsidiary, N8 Medical, LLC.  *See* First Am. Compl. (04/23/14) [D.E. 66] ¶ 12 n.2.  Unless otherwise indicated in this memorandum, Colgate will refer to N8 and N8 Medical, LLC together as "N8."

Am. Compl. (04/23/14) [D.E. 66] Ex. A at p.2.[2]  While BYU is not in the business of commercially developing its inventions or other intellectual property, it desires to have ceragenins available to the public and granted a license to N8 to commercially develop ceragenins in certain fields of use.  *See* BYU Compl. [D.E. 71] ¶ 10; *see also* N8 License Agreement, N8's First Am. Compl. [D.E. 66] Ex. A at Recital B.

3.     Colgate is a Delaware corporation with its principal place of business in New York, New York.  At one time, Colgate evaluated the potential use of ceragenins as an ingredient in oral care mouthwash formulations and potentially other oral care products.  *See* BYU Compl. [D.E. 71] ¶¶ 2, 13-14.

**B.     Ceragenix Supplies Colgate with Ceragenins.[3]**

4.     Prior to giving N8 a license to commercially develop ceragenins, BYU granted a similar license to Ceragenix, a now-defunct company formerly located in Denver, Colorado.

5.     In 2007, Colgate expressed an interest in BYU's ceragenin technology, and Colgate subsequently entered into a Confidential Disclosure Agreement and a Materials Transfer and Evaluation Agreement with BYU's licensee, Ceragenix (the "Ceragenix MTA").  *See* Ceragenix MTA (06/02/08), attached as Ex. A.

---

[2] Although not attached to BYU's complaint, the Court may consider the N8 License Agreement in considering this motion to dismiss.  BYU referred to the N8 License Agreement in its pleading, the license BYU granted to N8 is central to BYU's complaint, and there are no grounds on which to dispute its authenticity.  *See, e.g., Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 521 (10th Cir. 2013) (considering note not attached but referred to in complaint in evaluating plausibility of plaintiff's claims).

[3] The facts in this Section B are provided to the Court for background only and to fill in some gaps in BYU's Complaint. Colgate does not rely on these facts to argue for the dismissal of BYU's claims, and they need not be considered in deciding the merits of Colgate's motion to dismiss.

6.      Pursuant to the Ceragenix MTA, Ceragenix supplied Colgate with certain quantities of ceragenin compounds.

7.      In 2009, using the ceragenin compounds supplied by Ceragenix, Colgate developed inventions for use in oral care and submitted those inventions to its Patent Department.

8.      On June 2, 2010, Ceragenix filed for Chapter 11 bankruptcy protection.

**C.      Colgate and N8 Enter Into Agreements.**

9.      After Ceragenix declared bankruptcy, Colgate pursued the potential use of ceragenins in oral care applications with BYU's new licensee, N8.  *See* BYU Compl. [D.E. 71] ¶ 11.

10.      On October 11, 2010, N8 and Colgate entered into a Mutual Confidential Disclosure Agreement (the "**MCDA**") which included confidentiality obligations and covenants limiting the use and disclosure of certain information relating to BYU's intellectual property licensed to N8.  *See id.* ¶ 11.  The MCDA was designed to allow Colgate and N8 "to explore a business relationship involving possible testing of new ceragenins."  MCDA at p.1, attached as Exhibit B.[4]

11.      Approximately two months later, N8 and Colgate entered into a Materials Transfer and Evaluation Agreement (the "**First MTA**") in which N8 agreed to provide Colgate

---

[4] The Court may consider the MCDA in considering this motion to dismiss.  BYU referred to the MCDA in its pleading, the MCDA is central to BYU's complaint, and there are no grounds on which to dispute its authenticity.  *See, e.g., Toone*, 716 F.3d at 521.

with certain ceragenin compounds for testing and evaluation.  *See* BYU Compl. [D.E. 71] ¶ 12;

*see also* First MTA at p.1, attached as Exhibit C.[5]

12.     The parties twice amended the First MTA -- once on May 23, 2011, and then

again on July 1, 2011.  *See* First Amendment to Materials Transfer and Evaluation Agreement

(05/23/11) & Second Amendment to Materials Transfer and Evaluation Agreement (07/01/11),

attached as Exhibit C (without attachments).

13.     As the First MTA was set to expire, the parties entered into a second Materials

Transfer and Evaluation Agreement on December 6, 2012 (the "**Second MTA**").  *See* Second

MTA, attached as Exhibit D.  The First and Second MTAs are referred to together herein as the

"**MTAs**").  Insofar as they relate to this motion, the terms of the First and Second MTA are

essentially identical.

14.     BYU is a named third-party beneficiary of the MCDA and the MTAs.  *See* BYU

Compl. [D.E. 71] ¶ 12.

**D.     Colgate Receives Ceragenins and Files Patent Applications.**

15.     On December 21, 2011, Colgate filed International Patent Application

PCT/US2011/066482 for an oral care composition using ceragenins in combination with

---

[5] For the same reasons as those stated above, the Court may consider the First and Second MTAs, as well as the amendments to the First MTA, in considering this motion to dismiss.  BYU refers to these agreements in its pleading, the MTAs are central to BYU's complaint, and there are no grounds on which to dispute their authenticity.  *See, e.g., Toone*, 716 F.3d at 521.

quaternary ammonium compounds (the "PCT Application").  *See id.* ¶ 15; *see also* PCT

Publication (07/25/13) at 1, attached as Exhibit E.[6]

16.     The PCT Application was based on and referred to an invention Colgate

developed in or about 2009 using the ceragenin compounds supplied by Ceragenix pursuant to

the Ceragenix MTA.  Colgate's invention was not created using the ceragenin compounds

supplied by N8 pursuant to either the First or Second MTAs on or after late 2010.[7]

17.     In December 2012, Colgate filed applications for the same invention in Taiwan,

Argentina, and Venezuela (the "2012 Applications").  *See* BYU Compl. [D.E. 71] ¶ 16.  The

PCT Application and the 2012 Applications are referred to collectively herein as the "Patent

Applications."

18.     The PCT Application published on July 23, 2013.  *See id.* ¶ 18.

**E.     Colgate Decides Not to Pursue Use of Ceragenins and Transfers Its Interests
in the Patent Applications to N8.**

19.     Colgate ultimately decided not to pursue the use of ceragenins in its products.

Colgate told N8 that the ceragenins were not efficacious, were too expensive, had an inherently

unstable shelf life, and that pursuing the necessary regulatory approval would be unduly costly

and time-consuming.  *See* N8 Am. Compl. [D.E. 66] ¶ 31.

20.     On February 6, 2014, Colgate assigned to N8 all of its rights under the Patent

Applications.  *See id.* ¶ 52.  Specifically, Colgate transferred and assigned to N8 its "entire right,

---

[6] The Court may consider the PCT Publication in considering this motion to dismiss because BYU refers to it in its pleading, the PCT Publication is at the heart of BYU's complaint, and there are no grounds on which to dispute its authenticity.  *See, e.g., Toone*, 716 F.3d at 521.

[7] BYU omits these facts from its Complaint.  While they are facts important to this dispute, the arguments made in this motion to dismiss do not rest upon them.

title, and interest throughout the world in, to, and under the Patent Applications and any and all Patents that may be granted thereon . . . ."  Assignment (02/06/14) at p.1, attached as Exhibit F.[8]

### F.   N8 Sues Colgate.

21.     N8 filed suit against Colgate in November 2013, asserting claims for breach of contract, breach of the implied covenant of good faith and fair dealing, violation of Utah's Uniform Trade Secret Act, unjust enrichment, and conversion.  *See* N8 Compl. [D.E. 2] ¶¶ 48-84 & p.22.

22.     On April 23, 2014, N8 amended its complaint to plead its claims under New York law and to assert new claims for unfair competition, negligence and gross negligence, fraud, fraudulent concealment, and declaratory judgment.  *See* N8 Am. Compl. [D.E. 66] ¶¶ 53-118.

23.      As with its original complaint, N8's claims arise from its contention that Colgate breached the MCDA and the MTAs by filing the Patent Applications.  *See, e.g., id.* ¶¶ 59, 62, 73, 88, 94, 100, 105, 111, 116.

24.     While Colgate accepts as true, for purposes of this motion, N8's allegation that the MCDA and MTAs apply, Colgate disputes and will ultimately disprove the allegation.  The MTAs provide that inventions shall be considered "joint inventions" under the MTAs "if the relevant Invention incorporates or includes the Materials," *i.e.*, ceragenin compounds provided

---

[8] The facts in this Section E are, as noted, alleged in N8's Amended Complaint or are based on the Assignment.  The Court may consider the facts alleged by N8 given BYU's joinder in N8's allegations, as set forth at the outset of BYU's pleading.  *See* BYU Compl. [D.E. 71] at 2. Likewise, the Court may consider the Assignment in deciding this motion to dismiss because it is referred to in N8's Amended Complaint (in which BYU joined), it is central to BYU's declaratory judgment claim relating to the current ownership of rights and interests in the ceragenin IP, and because there is no basis upon which to dispute its authenticity.  *See, e.g., Toone*, 716 F.3d at 521.

by N8 pursuant to either the First or Second MTA.  *See* First MTA, Ex. C at p.1, § 7.b.(1) & (3), and Ex. A; *see* Second MTA, Ex. D at p.1, § 7.b(1) & (3), and Ex. A.

25.     Here, the invention that is the subject of the Patent Applications does not incorporate or include ceragenin compounds provided by N8 pursuant to either the First or Second MTA.  Rather, the invention was based upon materials supplied by Ceragenix.

26.     And, unlike Colgate's MTAs with N8, the Ceragenix MTA does not designate such an invention as a "joint invention."  Instead, under the Ceragenix MTA, only that which is "invented jointly by employees of both parties under this Agreement shall be jointly owned by the parties . . . and shall be considered Confidential Information under Section 7."  Ceragenix MTA, Ex. A at § 7.b.(4).

**G.      BYU Seeks to Intervene and Files Claims.**

27.     BYU did not originally join N8 in its lawsuit against Colgate for breach of the MCDA and MTAs. Rather, it chose not to participate in this action until after Colgate moved to transfer this action to the Southern District of New York.

28.     In response to Colgate's motion to transfer, N8 first sought to join BYU as a party, and BYU subsequently sought to intervene.  After this Court granted BYU's motion, BYU filed what it described as a "Joinder in Plaintiff N8 Medical, Inc.'s First Amended Complaint Against Defendant Colgate-Palmolive Company and Complaint Asserting Independent Claims."  *See generally* BYU Compl. [D.E. 71].

29.     In its Complaint, BYU asserts claims against Colgate for Breach of Contract, Breach of the Implied Covenant of Good Faith and Fair Dealing, Misappropriation of Trade Secrets, Unjust Enrichment, and Declaratory Judgment.  *See id.* ¶¶ 22-48.

30.     BYU also "joins" in the allegations and causes of action asserted by N8 in its First Amended Complaint insofar as they relate to (1) BYU's intellectual property and other rights and interests in the ceragenins; (2) BYU's rights and interests in the MTAs; and (3) damages BYU has allegedly incurred as the result of the acts or omissions of Colgate as alleged by N8.  *See id.* at 2.

31.     In joining N8's claims (or some portion thereof), BYU expressly reserved the right to amend and/or withdraw its joinder as discovery proceeds.  *See id.*

## **LEGAL STANDARD**

"'The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true.'"  *Wills v. Regence BlueCross BlueShield of Utah*, No. 2:07cv616-BSJ, 2008 WL 4693581, at *3 (D. Utah Oct. 23, 2008) (unpublished) (quoting *Mayer v. Mylod*, 998 F.2d 635, 638 (6th Cir. 1993)).  To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547, 127 S. Ct. 1955, 1965, 167 L.Ed.2d 929 (2007)).  While this pleading standard "does not require detailed factual allegations, . . . it demands more than the unadorned, the-defendant-unlawfully-harmed me accusation.'"  *Bell v. Countrywide Bank, N.A.*, 860 F. Supp. 2d 1290, 1294 (D. Utah 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)). Indeed, "there must be facts showing more than a 'sheer possibility' of wrongdoing," and there must be enough factual support to "raise a right to relief above a speculative level.'"  *Soren v. Equable Ascent Fin., LLC*, 2:12cv00038-CW, 2012 WL 2317362, at *1 (D. Utah June 18, 2012) (unpublished) (quoting *Iqbal*, 556 U.S. at 678); *Wills*, 2008 WL 4693581, at *3 (quoting

*Twombly*, 550 U.S. at 555).  The "'requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them.'"  *Id.* (quoting *Robbins v. Okla.*, 519 F.3d 1242, 1248 (10th Cir. 2008)).

## CHOICE OF LAW

BYU does not identify the law applicable to its contract-based claims.  With regard to its claim for misappropriation of trade secrets, BYU claims that Utah law applies.  Although BYU resides in Utah, New York law applies to its claims.

*First*, BYU states claims as a third-party beneficiary under the MCDA and/or the First and Second MTAs.  Each of these agreements contains a New York choice of law provision.  Specifically, the MCDA states that "any interpretation, dispute, or controversy arising out of this Agreement, shall be governed by and construed in accordance **with the laws of the State of New York**."  MCDA, Ex. B at § 10 (emphasis added).  And, in the two MTAs and both amendments to the First MTA, the parties repeatedly designated New York as their law of choice.[9]  As a third-party beneficiary to these agreements, BYU is bound by their New York choice of law provision.  *See, e.g., Aerospace Energy Sys. v. AlliedSignal, Inc.*, No. 2:99cv709-DAK, 2000 WL 33363301, at *1 (D. Utah May 2, 2000)* (holding third-party beneficiary seeking to enforce rights

---

[9] *See* First MTA, Ex. C at § 19 ("This Agreement shall be interpreted and construed in accordance with the laws of the State of New York."); Second MTA, Ex. D at § 19 (same); First Amendment to First MTA, Ex. C at § 7 ("This Amendment, and any interpretation, dispute or controversy arising out of this Amendment, shall be governed by and construed in accordance with the laws of the State of New York without regard to the conflicts of law principles thereof."); Second Amendment to First MTA, Ex. C at § 5 (emphasis added).

under contract was bound by contract's choice of law provision, even where that choice deprived plaintiff of its third-party beneficiary claim).

**Second**, this Court has found that, where tort claims are closely related to contract claims (as they clearly are here), "in the absence of compelling reasons to the contrary, those closely related claims ought to be governed by the same law [expressly designated in the contract]." *Unibase Sys., Inc. v. Prof'l Key Punch*, No. C86-213G, 1987 WL 41873, at *5 (D. Utah July 15, 1987)* (unpublished); *see also Brigham Young Univ. v. Pfizer, Inc.*, 2:06cv890-TS, 2012 WL 918744, at **1-2 (D. Utah Mar. 16, 2012)* (unpublished) (where BYU's tort claims rested heavily on duties allegedly imposed by written agreement, that agreement's choice of law provision also governed tort claims).

**Third**, even if the Court were to determine choice of law by applying the "most significant relationship" test, as described in the Restatement (Second) of Conflict of Laws, it is clear that the result would **not** yield Utah law. *See Waddoups v. Amalgamated Sugar Co.*, 2002 UT 69*, ¶¶ 12-19 (applying most significant relationship approach where no choice of law provision). Although BYU is a Utah resident and was allegedly injured here, BYU's claims arise entirely out of Colgate's relationship with N8 -- a relationship that has no material connection to this forum. After all, neither N8 nor Colgate resides or is incorporated here. N8 is a Nevada corporation with its principal place of business in Ohio; Colgate is a Delaware corporation with its principal place of business in New York. Similarly, Colgate did not engage in any conduct allegedly causing injury here; the relationship between N8 and Colgate is not centered here; and, the Agreements were not negotiated here. Utah clearly does not have the most significant relationship to this dispute. Utah law does not apply.

**ARGUMENT**

I.   **BYU's Contract-Based Claims Fail as a Matter of Law.**

    A.   **Breach of Contract**

BYU's first cause of action is for breach of contract.  *See* BYU Compl. [D.E. 71] ¶¶ 22-

26.  BYU claims that Colgate breached the MTAs by filing the Patent Applications and by

causing the PCT Application to be filed.  *See id.* ¶ 24.  BYU's claim fails for at least one simple

reason: the MTAs do not prohibit the filing of the Patent Applications.  In fact, the MTAs

expressly contemplate that patent protection may be sought for inventions like the one at issue

here, and the MTAs afford BYU no right to prevent the pursuit of patent rights.[10]

"To state a viable breach of contract claim, New York law requires that plaintiff allege

'the terms of the agreement, the consideration, the performance by plaintiff[], and the basis of the

alleged breach of the agreement by defendant."  *Merit Group, LLC v. Sint Maarten Int'l*

*Telecomms. Servs., NV*, No. 08cv3496-GBD, 2009 WL 3053739, at *2 (S.D.N.Y. Sept. 24, 2009)

(unpublished) (quoting *Furia v. Furia*, 116 A.D.2d 694, 695 (N.Y. App. Div. 1986); *Morris v.*

*702 E. Fifth St. HDFC*, 46 A.D.3d 478, 478 (N.Y. App. Div. 2007)).  "The claim cannot

---

[10] Colgate disputes that the MTAs apply here because the invention disclosed in the Patent Applications was created using materials supplied by Ceragenix under the Ceragenix MTA.  The Ceragenix MTA thus governs the propriety of filing the Patent Applications.  However, for purposes of this motion, the Court may accept BYU's assertion that the N8 MTAs govern.  BYU has also alleged that Colgate's filing of the Patent Applications disclosed BYU's trade secrets and impaired the value of the ceragenin IP.  *See* BYU Compl. [D.E. 71] ¶ 19.  Colgate disputes these allegations, and will, if necessary, disprove them.  For purposes of this motion to dismiss, however, the Court may accept the allegations as true.

withstand a motion to dismiss if the express terms of the contract contradict plaintiff's allegations of breach."  *Id.*

Here, BYU's claim fails because the express terms of the MTAs contradict its allegations of breach.  Specifically, Section 7.b.(5) of the First and Second MTAs sets forth the obligations of Colgate and N8 regarding the filing of patent applications for joint inventions.[11]  It provides that "[t]he parties will cooperate for the purpose of filing and prosecuting patent applications," and it requires the parties to "refrain from any and all acts that may jeopardize the patentability of any Joint Invention in any jurisdiction."  First MTA, Ex. C at § 7.b.(5); *see also* Second MTA, Ex. D at § 7.b.(5) (same).  And, while parties are to provide notice of joint inventions, the MTAs give neither party any right to prevent the other's filing of a patent application.  Indeed, upon receiving notice from Colgate of a joint invention under the MTAs, N8 can choose to jointly develop and market the invention, but neither N8 nor third-party beneficiary BYU have a right to object to the seeking of patent protection.  *See* First MTA, Ex. C at § 7.b.(5); Second MTA, Ex. D at § 7.b.(5).

Having no right to object to Colgate seeking patent protection under the MTAs, BYU cannot plausibly contend that Colgate's filing of the Patent Applications breached the MTAs.  BYU's claim for breach of contract should be dismissed.

---

[11] The MTAs defines a "joint invention" as one that "incorporates or includes the Materials [*i.e.* the ceragenins provided under the MTA]," even if the invention was invented solely by one party.  *See* First MTA, Ex. C at § 7.b.(3); *see also* Second MTA, Ex. D at § 7.b.(3) (same).  Colgate was the sole inventor of the invention described in the Patent Applications.  Colgate disputes that the invention was a "joint invention" under the MTA because Colgate did not use ceragenins provided by N8 in creating its invention.  For purposes of this motion only, however, the Court may accept as true N8's allegation that the invention described in the Patent Applications is a joint invention under the N8 MTAs.

**B.**     B**reach of the Implied Duty of Good Faith and Fair Dealing**

BYU's second cause of action purports to state a claim for breach of the implied duty of good faith and fair dealing.  *See* BYU Compl. [D.E. 71] ¶¶ 27-31.  BYU's claim fails for two separate reasons: (1) New York law does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when the claims are based on the same set of facts; and (2) even if BYU could state a separate claim for breach of the implied covenant of good faith and fair dealing, BYU has failed to state a plausible claim.

### *1.     BYU's Claim Should Be Dismissed as Redundant.*

While New York law implies a duty of good faith and fair dealing into every express contract, "'breach of that duty is merely a breach of the underlying contract.'"[12] *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 80 (2d Cir. 2002) (quoting *Fasolino Foods Co. v. Banca Nazionale del Lavoro*, 961 F.2d 1052, 1056 (2d Cir. 1992)).  "'New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same set of facts, is also pled.'"  *County of Orange v. Travelers Indem. Co.*, No. 13cv06790-NSR, 2014 WL 1998240, at *2 (S.D.N.Y. May 14, 2014) (unpublished) (quoting *Harris*, 310 F.3d at 81); *see also Geler v. Nat'l Westminster Bank USA*, 770 F. Supp. 210, 215 (S.D.N.Y. 1991) ("Under New York law, a duty of good faith and fair dealing is implicit in every contract, but breach of that duty is merely a

---

[12] New York law governs this issue because the Agreements are governed by New York law.  *See supra* at xvi-xvii; *see also Comprehensive Habilitation Servs., Inc. v. Commerce Funding Corp.*, No. 05cv9640-PKL, 2009 WL 935615, at *10 n.14 (S.D.N.Y. Apr. 7, 2009) (unpublished) ("Because breach of the implied covenant of good faith and fair dealing is a contractual cause of action, and the choice of law provision applies to the interpretation and enforcement of the contract, [the law designated in the contract] applies to [plaintiff's] implied covenant claim arising out of the terms of the . . . Agreement.").

breach of the underlying contract.").  Consequently, a separate claim that a defendant has breached the duty of good faith can survive a motion to dismiss only "'if it is based on allegations that differ from those underlying an accompanying breach of contract claim.'"  *Id.* (quoting *Palmer Kane LLC v. Scholastic Corp.*, No. 12cv3890-TPG, 2014 WL 1303135, at *6 (S.D.N.Y. Mar. 31, 2014)); *see also Funk v. Allstate Ins. Co.*, No. 13cv5933-JS, 2013 WL 6537031, at *4 (E.D.N.Y. Dec. 13, 2013) (holding breach of good faith and fair dealing "must be premised on a different set of facts from those underlying a claim for breach of contract") (internal quotation omitted).

A claim for breach of the implied covenant of good faith and fair dealing must also be dismissed where it seeks to recover damages that are "intrinsically tied to the damages allegedly resulting from the breach of contact." *ARI & Co., Inc. v. Regent Int'l Corp.*, 273 F. Supp. 2d 518, 523 (S.D.N.Y. 2003) (internal quotation omitted); *see also A.J. Sheepskin Leather & Outerwear, Inc. v. USF Ins. Co.*, No. 03cv2382-LAP, 2004 WL 503727, at *2 (S.D.N.Y. Mar. 12, 2004) (unpublished) ("[T]he relief sought by a plaintiff on an implied covenant of good faith and fair dealing claim is intrinsically tied to the damages allegedly resulting from the breach of contract, and thus, there is no separate and distinct wrong that would give rise to an independent claim.") (internal citations and quotations omitted).

BYU's claim for breach of the implied duty of good faith and fair dealing fails for both of these reasons.  First, BYU's claim is not based on allegations that differ from those underlying its accompanying breach of contract claim.  In fact, BYU alleges ***no*** unique facts in support of its claim for breach of the implied duty of good faith and fair dealing.  *See* BYU Compl. [D.E. 71]

¶¶ 27-31.  BYU simply re-alleges by reference the same facts stated in support of its claim for breach of contract.  *See id.* ¶ 27.

Second, through its good faith/fair dealing claim, BYU seeks to recover the same monetary damages it seeks to recover for breach of contract.  In fact, BYU draws no distinction between the damages it seeks to recover for these claims.  *Compare id.* ¶ 26 (breach of contract claim) ("BYU is therefore entitled to a monetary judgment against Colgate for breach of the Agreements in an amount to be determined at trial.") *with* ¶ 31 (breach of implied covenant claim) ("BYU is therefore entitled to a monetary judgment against Colgate for breach of the Agreements in an amount to be determined at trial.").

BYU's claim for breach of the implied duty of good faith and fair dealing is redundant of its breach of contract claim and should be dismissed.  *See 433 Main St. Realty, LLC v. Darwin Nat'l Assurance Co.*, No. 14-cv-587 (NGG), 2014 WL 1622103, at *2 (E.D.N.Y. Apr. 22, 2014) (unpublished) (dismissing plaintiffs' claim for breach of covenant of good faith and fair dealing as redundant of breach of contract claim because plaintiffs alleged no independent factual predicate for good faith/fair dealing claim); *Kalter v. Hartford Ins. Co. of the Midwest*, No. 14cv1115-ADS, 2014 WL 1515657, at *3 (E.D.N.Y. Apr. 17, 2014) (unpublished) (dismissing good faith/fair dealing claim as duplicative because it was based on same underlying facts as breach of contract claim).

### 2. *BYU Has Failed to State a Claim.*

Even if New York law allowed BYU to state a claim for breach of the implied covenant of good faith and fair dealing separate and apart from its breach of contract claim, BYU has not stated a plausible claim.  "Although New York law may imply an obligation of good faith and

fair dealing into a contract, that obligation can only be 'in aid and furtherance of other terms of the agreement of the parties,' and cannot create rights or obligations that are 'inconsistent with other terms of the contractual relationship.'"  *Merit Group*, 2009 WL 3053739, at *3 (quoting *Murphy v. Am. Home Prods. Corp.*, 448 N.E.2d 86, 91 (N.Y. 1983)) .  As set forth above, the express terms of the MTAs do not give N8 (or BYU) the right to object to Colgate seeking patent protection.  *See supra* at I.A.  Thus, to suggest (as BYU does) that Colgate breached the implied covenant of good faith and fair dealing by filing the Patent Applications is inconsistent with the terms bargained for by the parties and embodied in their agreement.  As such, it is impermissible and cannot provide a basis for BYU's claim.  *See Merit Group*, 2009 WL 3053739, at *3.

### C.    Unjust Enrichment

BYU's fourth cause of action is for unjust enrichment.  *See* BYU Compl. [D.E. 71] ¶¶ 40-44.  Under New York law, a plaintiff may not bring a claim for unjust enrichment when there is a valid contract that governs the subject matter of the plaintiff's claims.  *See First Sterling Corp. v. Union Square Retail Trust*, 958 N.Y.S.2d 346, 347 (N.Y. App. Div. 2013).  A plaintiff may only bring an unjust enrichment claim in addition to a breach of contract claim "'where there is a dispute over the existence, scope, or enforceability of the putative contract.'"  *Harrison v. Toptani Law Offices*, No. 11cv6801-LTS, 2012 WL 694755, at *2 (S.D.N.Y. Mar. 2, 2012) (unpublished) (quoting *Reilly v. NatWest Markets Group, Inc.*, 181 F.3d 253, 263 (2d Cir. 1999)).

Here, BYU alleges no dispute regarding the enforceability of the MTAs.  Thus, there is no viable basis for BYU's unjust enrichment claim.  *See id.* (dismissing plaintiff's unjust

enrichment claim where there was no dispute over the existence, scope, or enforceability of the contract concerning the subject matter of plaintiff's claims).[13]

## II.   BYU Cannot State a Claim Against Colgate for Misappropriation of Trade Secrets.

BYU's third cause of action is for Colgate's alleged misappropriation of BYU's "trade secrets." *See* BYU Compl. [D.E. 71] ¶¶ 32-39.  BYU's claim fails on its face for two reasons. First, BYU cannot state a claim for misappropriation of trade secrets based on Colgate's filing of the Patent Applications for the same reason it cannot state a claim for breach of contract, *i.e.,* because the MTAs (even assuming they apply, which they do not) did not prohibit such a filing. And second, even if BYU could allege facts sufficient to state a claim for breach of contract, BYU's claim for misappropriation must still be dismissed as improperly duplicative of its claim for breach of contract.

### A.   The MTAs Do Not Prohibit the Filing of the Patent Applications.

BYU alleges that Colgate misappropriated its trade secrets by "using them to prepare and file" the Patent Applications "and by allowing the publication of the Colgate PCT Application." *Id.* ¶ 37.  A party claiming misappropriation of trade secrets must allege (and ultimately prove) that: "(1) it possessed a trade secret, and (2) defendant is using that trade secret in breach of an agreement, confidence, or duty, or as a result of discovery by improper means." *Integrated Cash Mgmt. Servs., Inc. v. Digital Trans., Inc.*, 920 F.2d 171, 173 (2d Cir. 1990) (internal quotation omitted).  BYU appears to contend that, by filing the Patent Applications, Colgate

---

[13] Colgate believes that the Ceragenix MTA, not the N8 MTAs govern N8's and BYU's complaints regarding Colgate's filing of the Patent Applications.  Regardless of which Agreement applies to BYU's claims, BYU does not contend that any of the Agreements are unenforceable.  Thus, BYU cannot state a claim against Colgate for unjust enrichment.

misappropriated BYU's trade secrets because those filings breached the MTAs.  *See* BYU Compl. [D.E. 71] ¶¶ 32-39.[14]  Specifically, BYU contends that "[b]y entering into the Agreements," N8 and Colgate agreed that "Colgate would not on its own file for any patent." *See id.* ¶ 56(d).  As demonstrated above, BYU is mistaken.  *See supra* at I.A.  Even if the N8 MTAs applied here (and they do not), Colgate was entitled to pursue patent protection under the MTAs.  *See id.*  BYU thus cannot plausibly contend that Colgate's filing of the Patent Applications breached the Agreements and thereby constituted a misappropriation of BYU's trade secrets.

**B.     In the Alternative, BYU's Claim for Misappropriation Should Be Dismissed as Duplicative of Its Breach of Contract Claim.**

In the event this Court were to deny Colgate's motion to dismiss BYU's claim for breach of contract, the Court should dismiss BYU's claim for misappropriation of trade secrets as duplicative of BYU's breach of contract claim.

As noted above, BYU's misappropriation of trade secrets claim appears to be based on Colgate's alleged breach of the MTAs.  And, where a claim for misappropriation is based on the same conduct allegedly proscribed by contract, New York courts dismiss those claims as duplicative.  *See, e.g., Doc. Sec. Sys., Inc. v. Coupons.com*, No. 11cv6528-CJS, 2013 WL 1945954, at **3-4 (W.D.N.Y. May 9, 2013) (unpublished) (dismissing misappropriation of trade secrets claim where agreement governed subject matter of dispute, claims arising from dispute

---

[14]   In alleging its claim for misappropriation, BYU alleges only that Colgate used BYU's trade secrets.  *See* BYU Compl. [D.E. 71] ¶ 37.  BYU does not state whether it contends Colgate used the trade secrets in breach of an agreement, confidence, or duty, or as a result of discovery by improper means.  *See id.*  BYU does, however, incorporate its preceding allegations into this claim for misappropriation.  *See id.* ¶ 32.  In those allegations, BYU contends that Colgate used BYU's trade secrets in breach of the MTAs.  *See, e.g., id.* ¶¶ 22-26.

were contractual, and no independent tort duty existed); *Cargill, Inc. v. Sears Petroleum & Transp. Corp.*, 388 F. Supp. 2d 37, 64 (N.D.N.Y. 2005) ("[B]reach of contract and misappropriation of trade secret claims that are truly identical causes of action, though asserted under two different labels, cannot co-exist."); *Medinol Ltd. v. Boston Scientific Corp.*, 346 F. Supp. 2d 575, 606 (S.D.N.Y. 2004) (finding misappropriation of trade secrets claim must be dismissed where "comprehensive coverage of the parties' Supply Agreement appears to be inconsistent with an independent tort theory of misappropriation of trade secrets").  To the extent BYU purports to base its misappropriation claim on an alleged breach of the MTAs, BYU's claim fails as duplicative of its breach of contract claim.

**III.    BYU's Claim for Declaratory Judgment Should Be Dismissed as Moot.**

BYU's Fifth Cause of Action is for a declaration of rights under 28 U.S.C. § 2201.  *See* BYU Compl. [D.E. 71] ¶¶ 45-48.  Specifically, BYU alleges that Colgate's actions have "raised an actual controversy" between Colgate and BYU about (1) ownership of rights relating to BYU's intellectual property; (2) Colgate's responsibility for costs BYU will incur to prosecute, maintain, and defend ceragenin patents; and (3) Colgate's responsibility for BYU's alleged damages.  *Id.* ¶ 46.  In light of that alleged controversy, BYU claims it is "entitled to a declaration of its rights against Colgate with respect to those subject matters."  *Id.* ¶ 47.

Contrary to BYU's claim, there is no existing controversy between BYU and Colgate regarding ownership of rights relating to the ceragenins or regarding Colgate's responsibility for damages allegedly incurred (or that allegedly will be incurred) by BYU.

First, there is no dispute between BYU and Colgate regarding ownership rights because Colgate has transferred and assigned to N8 its "entire right, title, and interest throughout the

world in, to, and under the Patent Applications and any and all Patents that may be granted thereon . . . ."  *See* N8 Am. Compl. [D.E. 66] ¶ 52; Assignment (02/06/14), Ex. F at p.1.  Thus, N8 is now the owner of the patent applications at issue in this litigation, and Colgate makes no claim to any patent or application that identifies ceragenins as a component.  Second, there is no dispute regarding Colgate's responsibility for costs and other damages BYU has incurred or allegedly will incur.  With the dismissal of BYU's substantive claims, BYU's claim for declaratory judgment regarding its alleged harm fails.

"What makes a declaratory judgment action 'a proper judicial resolution of a "case or controversy" rather than an advisory opinion is the settling of some dispute . . ..'"  *Cox v. Phelps Dodge Corp.*, 43 F.3d 1345, 1348 (10th Cir. 1994) (quoting *Hewitt v. Helms*, 482 U.S. 755, 761, 107 S. Ct. 2672, 96 L.Ed.2d 654 (1987)).  When the issue presented is "no longer live," the claim is moot.  *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S. Ct. 1379, 59 L.Ed.2d 642 (1979).  BYU's claim for declaratory relief is moot and should be dismissed.  *See MacArthur v. San Juan County*, 416 F. Supp. 2d 1098, 1175 (D. Utah 2005).

## IV.    BYU's Joinder in N8's Complaint Should Be Stricken.

In addition to asserting the five claims described above, BYU purports to "join[] the allegations and causes of action asserted in the Amended Complaint by N8 Medical against Colgate."  BYU Compl. [D.E. 71] at p.2  BYU's joinder, however, is incomplete.  BYU claims to join in N8's allegations and causes of action only "insofar as they relate to (1) BYU's intellectual property, licensing, and other rights and interests in the [ceragenins] and related technologies . . .; (2) BYU's rights and interests as a third-party beneficiary of the [First and

Second MTAs]; and (3) all damages that BYU has incurred as a result of the acts and/or omissions of Colgate as alleged in the Amended Complaint." *Id.*

Colgate cannot discern from BYU's indefinite joinder what claims of N8 it purports to join, nor can Colgate speculate on what basis BYU could possibly have standing to assert N8's tort claims. Given the ambiguity in BYU's joinder, Colgate moves the Court to strike it in its entirety. Colgate is entitled to be informed of the actual grounds for the claims asserted against it. *See Wills*, 2008 WL 4693581, at *3. Colgate should not be forced to guess.

In the alternative, Colgate moves for the dismissal of the Second, Third, Fifth, Sixth, Seventh, Ninth, and Tenth causes of action in N8's Amended Complaint to the extent the Court finds BYU has properly asserted these claims. The basis for the dismissal of these claims is set forth in Colgate's Partial Motion to Dismiss N8's First Amended Complaint, filed concurrently herewith. And, to the extent BYU purports to join in N8's remaining claims for breach of contract (first claim), unjust enrichment (fourth claim), and fraud by entering into a contract with intent not to perform (eighth claim), BYU's joinder should be rejected. After all, BYU has asserted its own theory of its claims for breach of contract and unjust enrichment, and those claims fail for the reasons stated above. BYU also fails to allege any basis to join in Colgate's fraud claim, which is based on alleged representations made to N8 -- not to BYU.

## CONCLUSION

For the reasons set forth above, Colgate respectfully requests that the Court dismiss BYU's Complaint in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

DATED:  June 4, 2014

STOEL RIVES LLP

/s/ *Kenneth B. Black*
Kenneth B. Black
Jill M. Pohlman
David L. Mortensen

Attorneys for Defendant
Colgate-Palmolive Company

**CERTIFICATE SERVICE**

I hereby certify that on the 4th day of June, 2014, I caused a true and correct copy of the foregoing **DEFENDANT COLGATE-PALMOLIVE COMPANY'S MOTION TO DISMISS PLAINTIFF-INTERVENOR BRIGHAM YOUNG UNIVERSITY'S JOINDER IN PLAINTIFF N8 MEDICAL INC.'S FIRST AMENDED COMPLAINT AND COMPLAINT ASSERTING INDEPENDENT CLAIMS** to be served via CM/ECF on the following:

Brent O. Hatch
bhatch@hjdlaw.com
Mark F. James
mjames@hjdlaw.com
HATCH, JAMES & DODGE, PC
10 West Broadway, Suite 400
Salt Lake City, UT  84101

Paul J. Dobrowski
pjd@doblaw.com
Frederick T. Johnson
fjohnson@doblaw.com
C.Gerard Harrison
gharrison@doblaw.com
Cody Stafford
cstafford@doblaw.com
Dobrowski, Larkin & Johnson L.L.P.
4601 Washington Avenue, Suite 300
Houston, Texas 77007

Robert S. Clark
rclark@parrbrown.com
Gregory M. Hess
ghess@parrbrown.com
Parr Brown Gee & Loveless
101 South 200 East, Suite 700
Salt Lake City, UT 84111

*/s/ Kenneth B. Black*