Kenneth B. Black (#5588)
    Email: *kbblack@stoel.com*
Jill M. Pohlman (#7602)
    Email: *jmpohlman@stoel.com*
David L. Mortensen (#8242)
    Email: *dlmortensen@stoel.com*
STOEL RIVES LLP
201 S Main Street, Suite 1100
Salt Lake City, UT  84111
Telephone:  (801) 328-3131
Facsimile: (801) 578-6999

Attorneys for Defendant
Colgate-Palmolive Company

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DISTRICT

| | |
|---|---|
| N8 MEDICAL, INC.,<br><br>            Plaintiff,<br><br>   and<br><br>BRIGHAM YOUNG UNIVERSITY,<br><br>            Plaintiff-Intervenor<br><br>   v.<br><br>COLGATE-PALMOLIVE COMPANY,<br><br>            Defendant. | **REPLY MEMORANDUM IN SUPPORT OF DEFENDANT COLGATE-PALMOLIVE COMPANY'S MOTION TO DISMISS PLAINTIFF-INTERVENOR BRIGHAM YOUNG UNIVERSITY'S JOINDER IN PLAINTIFF N8 MEDICAL INC.'S FIRST AMENDED COMPLAINT AND COMPLAINT ASSERTING INDEPENDENT CLAIMS**<br><br>2:13-cv-01017-BSJ<br><br>The Honorable Bruce S. Jenkins |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 1

I.      BYU's Breach of Contract Claim Should Be Dismissed ................................................. 1

II.     BYU's Claim for Breach of the Implied Duty of Good Faith and Fair Dealing
Fails ............................................................................................................................... 5

III.    BYU Has Not Stated a Claim for Unjust Enrichment ...................................................... 7

IV.    BYU Has Not Stated a Claim for Misappropriation of Trade Secrets ............................ 8

        A.      BYU's Trade Secrets Claim Fails for the Same Reason Its Breach of
Contract Claim Fails ........................................................................................ 8

        B.      Even If BYU Could State a Claim for Breach of Contract, BYU's Trade
Secrets Claim Must Be Dismissed as Duplicative ............................................. 8

V.      BYU's Claim for Declaratory Judgment Is Moot ........................................................... 10

VI.    BYU's Joinder in N8's Complaint Does Not State a Claim ............................................ 11

CONCLUSION .................................................................................................................... 13

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Agency Dev., Inc. v. MedAmerica Ins. Co. of New York*,
    327 F. Supp. 2d 199 (W.D.N.Y. 2004) ................................................................6, 8

*In re AMR Corp.*,
    485 B.R. 279 (S.D.N.Y. 2013) ...........................................................................2, 3

*Atlantis Info. Tech. v. CA, Inc.*,
    485 F. Supp. 2d 224 (E.D.N.Y. 2007) ................................................................10

*Clark-Fitzpatrick, Inc. v. Long Island R. Co.*,
    516 N.E.2d 190 (N.Y. 1987) ................................................................................7

*Funk v. Allstate Ins. Co.*,
    No. 13cv5933-JS, 2013 WL 6537031, at *4 (E.D.N.Y. Dec. 13, 2013) .................5

*Galli v. Metz*,
    973 F.2d 145 (2d Cir. 1992) .................................................................................3

*King's Choice Neckwear, Inc. v. Pitney Bowes, Inc.*, 09cv3980-DLC,
    2009 WL 5033960 (S.D.N.Y. Dec. 23, 2009) ........................................................7

*Lab v. Carey*,
    277 N.E.2d 641 (N.Y. 1971) ................................................................................3

*Muzak Corp. v. Hotel Taft Corp.*,
    133 N.E.2d 688 (N.Y. 1956) ................................................................................3

*Sofi Classic S.A. de C.V. v. Hurowitz*,
    444 F. Supp. 2d 231 (S.D.N.Y. 2006) ................................................................11

*Sommer v. Fed. Signal Corp.*,
    593 N.E.2d 1365 (N.Y. 1992) .............................................................................10

*Sterbenz v. Attina*,
    205 F. Supp. 2d 65 (E.D.N.Y. 2002) ...................................................................6

*Wolfe v. Charter Forest Behavioral Health Sys., Inc.*,
    185 F.R.D. 225 (W.D. La. 1999) ........................................................................12

**Other Authorities**

5 Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 1326, at 759 (2d
ed. 1990) .....................................................................................................................12

5 Margarent N. Kiffin, *Corbin on Contracts* § 24.23 (Rev. Ed. 1998)...........................................3

**INTRODUCTION**

BYU's complaint centers around Colgate's filing of patent applications.  Specifically,
BYU complains that Colgate's filings disclosed allegedly confidential information and harmed
BYU's intellectual property.  But BYU's complaint suffers from a fundamental problem:
Colgate's Agreements with N8 (assuming they even apply) allowed Colgate to file the
applications.  In fact, the N8 MTAs specifically provided for the filing of patent applications and
recognized that, in the process, confidential information may be disclosed.  BYU's claims for
breach of contract, breach of the implied covenant of good faith and fair dealing, and
misappropriation of trade secrets all fail for this reason.

In opposing Colgate's motion, BYU now seeks to expand its breach of contract claim to
include a claim for breach of the MTA's notice provision and for failure to identify BYU as a
joint owner of Colgate's invention.  Even if the Court were to determine that BYU had standing
to plead such claims (and could plead facts to demonstrate harm resulting from those alleged
breaches), BYU's remaining claims would still fail.  Under New York law, BYU's good
faith/fair dealing and trade secrets claims are subsumed in and/or duplicative of any claim for
breach of contract; BYU's unjust enrichment claim cannot survive in the face of an enforceable
agreement; and, there is no ongoing controversy between BYU and Colgate that necessitates a
declaration of rights by this Court.

**ARGUMENT**

**I.**     **BYU's Breach of Contract Claim Should Be Dismissed.**

BYU's claim for breach of contract is premised on its allegation that Colgate breached
the Agreements by filing the PCT and Foreign Applications, and by allowing those Applications

to be published.  *See* Compl. ¶ 24.  In defense of its claim, BYU argues that, "[o]n every level," the Agreements prevent Colgate from seeking patent protection for inventions using ceragenin technology.  Opp'n at 1.  BYU is mistaken.

As demonstrated in Colgate's opening memorandum, the MTAs give neither party the right to prevent the other's filing of a patent application.  In fact, while the MTAs allow N8 to jointly develop an invention, it affords neither N8 nor BYU the right to object to Colgate's seeking of patent protection.  *See* Mot. at 1-2.  And, while BYU can point to no language in the MTAs that prohibits a party from seeking patent protection, *see* Opp'n at 1-3, it argues that the provision allowing for the filing of patent protection is (1) trumped by confidentiality provisions in the MTAs and/or the Mutual Confidential Disclosure Agreement (the "MCDA"), and (2) is limited by the requirements that Colgate provide notice of its invention and that the parties cooperate.  *Id.* at 1-2.  Neither argument has merit.

*First*, the MTAs clearly contemplate the filing of a patent application.  After all, N8 provided ceragenins to Colgate under the MTAs for the purpose of developing technology for potential commercial use.  *See, e.g.,* First MTA, Mot. Ex. C at p. 1 & § 7.b.  Section 7.b.(5) of the MTAs even expressly allows for the filing of patent applications.  *See id.* § 7.b.(5).  To argue, as BYU does, that the general confidentiality requirements in the MTAs and/or the MCDA trump § 7.b.(5) is contrary to New York rules of contract construction and would render the provision without force or effect.

"[A] basic principle of contract interpretation under New York law is that specific terms in a contract will override the general."  *In re AMR Corp.*, 485 B.R. 279, 302 (S.D.N.Y. 2013). Indeed, "'[i]f the apparent inconsistency is between a clause that is general and broadly inclusive

in nature and one that is more limited and specific in its coverage, the more specific term should usually be held to prevail over the more general term.'" *Id.* (quoting 5 Margaret N. Kniffin, *Corbin on Contracts* § 24.23 (Rev. Ed. 1998)); *see also Muzak Corp. v. Hotel Taft Corp.*, 133 N.E.2d 688, 690 (N.Y. 1956) ("Even if there was an inconsistency between a specific provision and a general provision of a contract . . . the specific provision controls.").

Here, to the extent there is an inconsistency between the general confidentiality provisions in the MTAs and the specific provisions allowing for the patenting of any inventions, the more specific provision must govern.  By including § 7.b.(5) in the MTAs, the parties undoubtedly understood that the filing of a patent application describing an invention using ceragenins -- whether filed jointly or unilaterally -- would involve the disclosure of confidential information.  After all, patent applications, by their nature, may include novel technological information and are eventually published.[1]  To conclude that the parties did not intend to allow for the publication of confidential information in a patent application would elevate the general over the specific and render § 7.b.(5) entirely meaningless.  Such an interpretation would be contrary to New York law.  *See, e.g., Galli v. Metz*, 973 F.2d 145, 149 (2d Cir. 1992) ("Under New York law an interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless . . . is not preferred and will be avoided if possible."); *Lab v. Carey*, 277 N.E.2d 641, 645 (N.Y. 1971) (applying rule of construction "that a court should not adopt an interpretation which will operate to leave a provision of a contract without force and effect") ).

---

[1] BYU's argument suggests that the MTAs had a more limited purpose, permitting testing and research -- and nothing more.  Had that been the parties' intention, they would not have included portions of §§ 7.a.(4) & (5) in the MTAs.

*Second*, BYU is also wrong to contend that the MTAs' notice requirements prohibit Colgate from disclosing allegedly confidential information in a patent application.  While parties are to provide notice of joint inventions, the notice requirement cannot be read to prevent the filing of a patent application.  Indeed, upon receiving notice of a joint invention under the MTAs, N8 has the choice to jointly develop the invention, or to let Colgate proceed on its own.  N8, however, has no right to prohibit Colgate from seeking patent protection.

*Third*, the requirement in § 7.b.(5) that the parties "cooperate for the purpose of filing and prosecuting patent applications" cannot be read to prohibit Colgate from proceeding on its own -- a right expressly provided for in § 7.b.(4).  To the contrary, if the parties were proceeding jointly, it would be unnecessary to contractually require cooperation in the execution of any and all legal papers.  *See* First MTA, Mot. Ex. C at § 7.b.(5).  Presumably, the parties would cooperate in jointly seeking patent protection if that is what they wanted.  It only makes sense to contractually compel cooperation if the parties anticipated that a party might proceed on its own.

*Finally*, BYU also argues that in addition to making a claim for breach based on the filing of the patent applications, its claims are based on an alleged failure to (1) notify N8 and/or BYU of its invention; and (2) obtain N8's and BYU's agreement to assign their rights in the invention to Colgate.  *See* Opp'n at 3.  BYU does not identify where in its complaint it allegedly asserts these claims.  Nor does BYU identify the basis in the Agreements for its assertion that Colgate owed any duty to notify BYU or obtain its assignment.   And, of course, BYU nowhere alleges

facts to demonstrate how it was allegedly harmed by such alleged failures.  These theories do not save BYU's complaint from dismissal.[2]

## II.    <u>BYU's Claim for Breach of the Implied Duty of Good Faith and Fair Dealing Fails.</u>

BYU argues that its good faith/fair dealing claim should survive Colgate's motion to dismiss because (according to BYU) "[i]n the early stages of litigation, a party can maintain claims for both breach of contract and breach of the implied covenant of good faith and fair dealing."  Opp'n at 7.  BYU's argument misses the mark.  The point is not that BYU cannot allege breach of the implied covenant of good faith and fair dealing; rather, the point is that New York law does not recognize it as a separate claim.  To state the claim separately, BYU must demonstrate that its claim (1) is premised on a different set of facts from those underlying its breach of contract claim, and (2) seeks to recover monetary damages different from those that it seeks to recover for breach of contract.  See *Funk v. Allstate Ins. Co.*, No. 13cv5933-JS, 2013 WL 6537031, at \*4 (E.D.N.Y. Dec. 13, 2013) (breach of contract and breach of good faith/fair dealing claims must be premised on different set of facts).  BYU cannot satisfy either element.

*First*, BYU does not deny that its good faith/fair dealing claim is based on the very same facts that underlie BYU's breach of contract claim.  In fact, BYU makes no effort to distinguish the two.  See Compl. ¶¶ 27-31.

*Second*, BYU does not deny that it seeks to recover the very same damages for its breach of contract and good faith/fair dealing claims.  In its pleading, BYU claims to have suffered

---

[2] Referring to the fact that Colgate's invention was governed by the Ceragenix MTA, BYU argues that "Colgate cannot succeed on its motion by manufacturing disputes relating to BYU's allegations."  Opp'n at 4 n.4.  BYU's allegation is unfair.  Colgate made it clear that, for purposes of its motion, the Court may accept as true that the N8 MTAs govern.  Mot. at 1 n.10.

undefined "damages" for both its breach of contract and good faith/fair dealing claims, and nowhere does BYU allege that its alleged damages are distinct. See id. ¶¶ 27-31.

*Third*, in response to Colgate's motion, BYU suggests a new theory to support its good faith/fair dealing claim. But, even if that theory had been pled, it would still fail to set the claim apart because the theory depends on the same alleged facts and damages underlying BYU's contract claim. Specifically, both theories arise out of Colgate's filing of the patent applications, and both theories are used to seek recovery for the same purported harm. *See* Opp'n at 7-8.

*Fourth*, regardless of whether BYU's new theory could be pled separately, it fails on its face. Under New York law, "[i]t is well-settled that the implied covenant will not be expanded to a point of conflict with the express terms of the bargained-for exchange, and equitable considerations will not allow an extension of coverage beyond [the agreement's] fair intent and meaning in order to obviate objections which might have been foreseen and guarded against." *Agency Dev., Inc. v. MedAmerica Ins. Co. of New York*, 327 F. Supp. 2d 199, 204 (W.D.N.Y. 2004) (internal quotation omitted). "Accordingly, a party that has acted in compliance with the rights expressly provided in the governing contract cannot be held liable for breaching the implied covenant of good faith." *Sterbenz v. Attina*, 205 F. Supp. 2d 65, 70 (E.D.N.Y. 2002).

Here, the MTA provides for the filing of patent applications of inventions incorporating ceragenin technology. *See* MTA, Mot. Ex. C at § 7.a.(5). Moreover, the MTA allows Colgate to "develop and/or market" such inventions on its own. *See id.* § 7.a.(4). Any ruling that the MTA implicitly forbids Colgate from filing a patent application would ignore -- and ultimately vitiate -- those provisions.

**III.    BYU Has Not Stated a Claim for Unjust Enrichment.**

In New York, "recovery under the theory of unjust enrichment is available only in the absence of an enforceable agreement." *King's Choice Neckwear, Inc. v. Pitney Bowes, Inc.*, 09cv3980-DLC, 2009 WL 5033960, at *7 (S.D.N.Y. Dec. 23, 2009). Although BYU has never suggested that the MTA is unenforceable, it insists on retaining an unjust enrichment claim alongside its claim for breach of contract based on two faulty theories.

*First*, BYU argues that New York law allows BYU to plead both claims because N8 has alleged that the Second MTA was induced by fraud. While N8 makes that allegation, N8 does not ask the Court to void the agreement. Rather, N8 seeks damages for the alleged fraud. *See* Am. Compl. ¶¶ 104-13. Thus, neither N8 nor BYU seeks relief from this Court that would render the MTA unenforceable. *See Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 516 N.E.2d 190, 193 (N.Y. 1987) (where plaintiff chose not to rescind contract, but instead to sue for damages, plaintiff was not entitled to seek recovery based on quasi-contract theory).

*Second*, BYU argues that New York law allows it to plead both claims because there is a dispute whether a valid contract exists. While the parties dispute *which* MTA applies, *i.e.*, the Ceragenix MTA or the First or Second MTA, there is no dispute that Colgate's rights and obligations relative to ceragenins are defined by those agreements. There is no justification for BYU maintaining a claim in equity when Colgate's rights and obligations are so defined.

*Finally*, even if New York law did allow BYU's pleading of its unjust enrichment claim (and it does not), BYU's claim should be dismissed because it fails on its face. BYU seeks a remedy for conduct not expressly forbidden by the express terms of an agreement. As demonstrated above, the MTA does not prohibit Colgate from filing a patent application. *See*

*supra* at I.  Thus, this case does not present "a circumstance that requires an equitable remedy." *Agency Dev.,* 327 F. Supp. 2d at 207.  Where a party does not seek to protect itself by expressly prohibiting the conduct about which it later complains, the party is not entitled to invoke the equitable remedy of unjust enrichment to rewrite its agreement.  *See id.* at 207.

**IV.   BYU Has Not Stated a Claim for Misappropriation of Trade Secrets.**

   **A.   BYU's Trade Secrets Claim Fails for the Same Reason Its Breach of Contract Claim Fails.**

To state a claim for misappropriation of trade secrets, BYU must allege that:  (1) it possessed a trade secret, and (2) Colgate used that trade secret in breach of an agreement, confidence, or duty, or as a result of discovery by improper means.  *See* Opp'n at 8.  BYU argues that it has stated a trade secrets claim by alleging that Colgate breached the Agreements by filing the patent applications.  *See id.*  As shown above, BYU has not pled a claim for breach of the Agreements.  *See supra* at I.  Thus, BYU's claim for misappropriation of trade secrets -- which is based and dependent on a breach of those Agreements -- must also be dismissed.

   **B.   Even If BYU Could State a Claim for Breach of Contract, BYU's Trade Secrets Claim Must Be Dismissed as Duplicative.**

BYU does not deny that if its trade secret claim duplicates its breach of contract claim, its trade secrets claim must be dismissed as duplicative of its contract claim.  *See* Opp'n at 9-11.  In fact, BYU understands that to maintain both claims, it must establish that the two are "sufficiently distinct."  *Id.* at 9.  Despite that, BYU's pleading proves that its contract claim and trade secrets claim are anything but distinct.  BYU alleges that Colgate misappropriated its trade secrets by (1) "using them to prepare the Colgate PCT Application and Foreign Applications," and (2) "by allowing the publication of the Colgate PCT Application."  Compl. ¶ 37.  And, BYU

alleges that Colgate breached the Agreements by (1) "filing the PCT application" and Foreign Applications, and (2) "causing the Colgate PCT Application to be published." *Id.* ¶ 24.  BYU's trade secrets claim clearly duplicates BYU's claim for breach of contract and must be dismissed.

Despite what its pleading says, BYU contends that its claims are sufficiently distinct because its trade secrets claim "involves conduct that goes well beyond a breach of the Agreements."  Opp'n at 9.  Specifically, BYU argues that Colgate "continued and consummated the tort of misappropriation beyond its violation of contractual duties by actively and purposefully concealing the filing of the Patent Applications from N8 Medical and BYU."  *Id.* at 9-10.  BYU contends these alleged acts are "unconnected to any breach of the Agreements and constitute a separate, extra-contract duty owed by Colgate to BYU."  *Id.* at 10.  There are at least three problems with BYU's argument.

*First*, the allegations are not pled.  Nowhere in BYU's complaint is there an allegation that Colgate actively and purposefully concealed the filing of the Patent Applications from BYU.

*Second*, BYU contends that it was the MTAs that required Colgate to provide notice of the filing of the patent applications.  *See id.* at 1 (identifying failure to disclose filing of patent applications as basis for contract claim).  Thus, even if sufficient facts were pled to support this allegation, the alleged wrongdoing arises -- if at all -- out of the Agreements.  As such, it duplicates BYU's contract claim and must be dismissed.

*Third*, even if the Court were to find that the allegation goes beyond the Agreements, BYU has not identified (much less pled) "a separate, extra contract-duty owed by Colgate to BYU."  *Id.*  BYU argues that the wrongful "acts" it describes in its memorandum "constitute a separate, extra-contract duty."  *Id.*  But, a wrongful act does not "constitute" a duty.  Rather, "[a]

legal duty independent of contractual obligations may be imposed *by law* as an incident to the parties' relationship." *Sommer v. Fed. Signal Corp.*, 593 N.E.2d 1365, 1369 (N.Y. 1992) (emphasis added); *see also Atlantis Info. Tech. v. CA, Inc.*, 485 F. Supp. 2d 224, 232 (E.D.N.Y. 2007) (dismissing tort claim for lack of allegation of special relationship that would give rise to legal duty apart from parties' contractual relationship).  Without a duty, BYU's theory fails.

*Finally*, BYU contends that its trade secrets claim is properly pled because "Colgate disputes that the MTAs control this dispute."  Opp'n at 10.  BYU argues that if the Court finds the N8 MTAs inapplicable, BYU will contend that the MCDA prevented the filing of the patent applications.  *See id.* at 10-11.  BYU's theory would fail (even if it were pled) because it would either duplicate BYU's contract claim or depend on the existence of an extra-contractual duty running from Colgate to BYU -- a duty that has not been pled and does not exist.

## V.   BYU's Claim for Declaratory Judgment Is Moot.

BYU seeks an adjudication of its right to the "ownership of certain data and information relating to BYU's ceragenins and the intellectual property rights therein."  Compl. ¶ 46(a).  BYU also seeks a declaration regarding Colgate's "responsibility" for BYU's alleged costs and damages.  *Id.* ¶ 46(b)-(c).  There is no live controversy regarding these issues.

*First*, with regard to the ownership of intellectual property rights, BYU forgets that, through the February 2014 Assignment, Colgate assigned to N8 its "entire right, title, and interest throughout the world in, to, and under the ***Patent Applications*** and any and all Patents that may be granted thereon."  Assignment, Mot. Ex. F at 1 (emphasis added).  The term "Patent Applications" is defined to include the PCT Application and the three foreign applications referred to in N8's memorandum.  The term's definition also includes any "other patent

applications filed containing the same disclosure or claims as found," to the extent such applications exist.  *Id.*  Thus, there is no dispute between BYU and Colgate regarding ownership of the ceragenin intellectual property because all ownership interests have been assigned.

There is also no existing controversy for the Court to adjudicate between Colgate and BYU regarding the "ownership of certain data and information relating to BYU's ceragenins." BYU has never claimed to own such data and information and BYU has never demanded that Colgate relinquish such data and information to BYU.

*Second*, with regard to BYU's request for a declaration regarding its claim for costs and damages, BYU does not deny that its claim does not survive if its underlying causes of action are dismissed.  Thus, if this Court dismisses BYU's substantive claims, it must also dismiss this claim.  And, if any of BYU's substantive claims survive, the Court should still dismiss BYU's declaratory judgment claim as unnecessary.  A cause of action for a declaratory judgment is unnecessary and should be dismissed as duplicative where it "seeks no relief that is not implicitly sought in the other causes of action."  *Sofi Classic S.A. de C.V. v. Hurowitz*, 444 F. Supp. 2d 231, 249 (S.D.N.Y. 2006) (dismissing declaratory judgment claim as "duplicative in that it seeks no relief that is not implicitly sought in the other causes of action").

## VI.    BYU's Joinder in N8's Complaint Does Not State a Claim.

In its "Joinder," BYU purports to "join the allegations and causes of action asserted . . . by N8," but only "insofar as they relate to" (1) BYU's intellectual property, (2) BYU's rights and interests in the First and Second MTAs, and (3) BYU's damages.  Compl. at 2.  And now, to compound the confusion, BYU states in its opposition that "to the extent N8 Medical's claims are duplicative of BYU's claims, BYU . . . has not joined in those claims."  Opp'n at 13.  In

other words, BYU expects Colgate (and the Court) to discern which of the 118 numbered allegations asserted by N8 relate to BYU's IP, BYU's rights and interests in the MTAs, or BYU's damages; speculate about how BYU might contend it has standing to assert N8's claims; and, then, decide which of N8's causes of action are and are not duplicative of BYU's.  Contrary to BYU's claim, BYU's "Joinder" does not "clearly articulate[] its intended result."  *Id.*

Federal Rule of Civil Procedure 10(c) allows for the adoption of material from one pleading in another, but "such adoption must be done with a degree of specificity and clarity which would enable the responding party to easily determine the nature and extent of the incorporation."  *Wolfe v. Charter Forest Behavioral Health Sys., Inc.*, 185 F.R.D. 225, 228-29 (W.D. La. 1999).  "'Although there is no prescribed procedure for referring to incorporated matter, the references to prior allegations must be direct and explicit, in order to enable the responding party to ascertain the nature and extent of the incorporation.'"  *Id.* at 229 (quoting 5 Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 1326, at 759 (2d ed. 1990)).  To allow otherwise, would permit parties -- like BYU -- to assert vague "joinders" "which serve[] as nothing more than a boiler plate 'safety valve.'"  *Id.* at 230.

While BYU has demonstrated considerable difficulty articulating its own claims, it should not be allowed to rely on its "Joinder" to arbitrarily expand its claims at such time as it sees fit.  If BYU believed it had claims in addition to the five it pled, it could have, should have, and would have pled them.  To the extent BYU contends it has asserted other claims pursuant to the Joinder, those claims should be dismissed and the Joinder stricken.

## CONCLUSION

For these reasons, Colgate respectfully requests that the Court dismiss BYU's

Complaint in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

DATED:  July 25, 2014

STOEL RIVES LLP


/s/ *Kenneth B. Black*
Kenneth B. Black
Jill M. Pohlman
David L. Mortensen

Attorneys for Defendant
Colgate-Palmolive Company

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 25th day of July 2014, I caused a true and correct copy of the foregoing **REPLY MEMORANDUM IN SUPPORT OF DEFENDANT COLGATE-PALMOLIVE COMPANY'S MOTION TO DISMISS PLAINTIFF-INTERVENOR BRIGHAM YOUNG UNIVERSITY'S JOINDER IN PLAINTIFF N8 MEDICAL INC.'S FIRST AMENDED COMPLAINT AND COMPLAINT ASSERTING INDEPENDENT CLAIMS** to be served via CM/ECF on the following:

Brent O. Hatch
bhatch@hjdlaw.com
Mark F. James
mjames@hjdlaw.com
HATCH, JAMES & DODGE, PC
10 West Broadway, Suite 400
Salt Lake City, UT  84101

Paul J. Dobrowski
pjd@doblaw.com
Frederick T. Johnson
fjohnson@doblaw.com
C.Gerard Harrison
gharrison@doblaw.com
Cody Stafford
cstafford@doblaw.com
Dobrowski, Larkin & Johnson L.L.P.
4601 Washington Avenue, Suite 300
Houston, Texas 77007

Robert S. Clark
rclark@parrbrown.com
Gregory M. Hess
ghess@parrbrown.com
Parr Brown Gee & Loveless
101 South 200 East, Suite 700
Salt Lake City, UT 84111

/s/ Kenneth B. Black