Kenneth B. Black (#5588)
   Email: *kbblack@stoel.com*
Jill M. Pohlman (#7602)
   Email: *jmpohlman@stoel.com*
David L. Mortensen (#8242)
   Email: *dlmortensen@stoel.com*
STOEL RIVES LLP
201 S Main Street, Suite 1100
Salt Lake City, UT  84111
Telephone:  (801) 328-3131
Facsimile: (801) 578-6999

Attorneys for Defendant
Colgate-Palmolive Company

# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF UTAH, CENTRAL DISTRICT

| | |
|---|---|
| N8 MEDICAL, INC.,<br><br>                    Plaintiff,<br>        and<br><br>BRIGHAM YOUNG UNIVERSITY,<br><br>                    Plaintiff-Intervenor,<br><br>        v.<br><br>COLGATE-PALMOLIVE COMPANY,<br><br>                    Defendant. | **REPLY MEMORANDUM IN SUPPORT OF DEFENDANT COLGATE-PALMOLIVE COMPANY'S PARTIAL MOTION TO DISMISS N8 MEDICAL INC.'S FIRST AMENDED COMPLAINT**<br><br>2:13-cv-01017-BSJ<br><br>The Honorable Bruce S. Jenkins |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 1

I.   N8 Has Not Stated a Claim for Conversion.................................................................. 1

    A.     N8 Seeks the Same Damages for Breach of Contract and Conversion ................ 1

    B.     N8 Alleges No Wrong Independent of the Contract............................................. 2

II.  N8 Has Not Stated a Claim for Negligence or Gross Negligence ........................................ 3

    A.     N8 Seeks the Same Damages for Negligence and Breach of Contract.................. 3

    B.     Colgate Owes N8 No Legal Duties Separate from the Agreements...................... 4

III. N8 Has Not Stated a Claim for Fraud .................................................................... 5

    A.     Colgate Owed N8 No Legal Duty Separate from the Parties' Agreements........... 6

    B.     Colgate's Alleged Fraud Is Directly Related to the Agreements.......................... 8

    C.     N8 Seeks the Same Damages for Breach of Contract as It Does for Fraud......... 10

IV.  N8 Has Not Stated Trade Secrets or Unfair Competition Claims ........................................ 10

    A.     The MTAs Do Not Prohibit the Filing of the Patent Applications...................... 10

    B.     N8's Claims for Misappropriation and Unfair Competition Are
             Duplicative........................................................................................ 13

V.   N8's Good Faith and Fair Dealing Claim Is Redundant.............................................. 17

VI.  N8's Claim for Declaratory Judgment Is Moot ...................................................... 19

CONCLUSION................................................................................................................ 20

76798902.1 0081966-00001

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Agency Dev., Inc. v. MedAmerica Ins. Co. of New York*,
   327 F. Supp. 2d 199 (W.D.N.Y. 2004) ...............................................................6, 8

*In re AMR Corp.*,
   485 B.R. 279 (S.D.N.Y. 2013)........................................................................11, 12

*ARI & Co., Inc. v. Regent Int'l Corp.*,
   273 F. Supp. 2d 518 (S.D.N.Y. 2003).................................................................18

*Atlantis Info. Tech., GmbH v. CA, Inc.*,
   485 F. Supp. 2d 224 (E.D.N.Y. 2007) ...........................................................5, 6, 9

*Bausch & Lomb Inc. v. Alcon Laboratories, Inc.*,
   64 F. Supp. 2d 233 (W.D.N.Y. 1999) ...................................................................7

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*,
   98 F.3d 13 (2d Cir. 1996)..............................................................................6, 10

*Clark-Fitzpatrick v. Long Island R.R. Co.*,
   516 N.E.2d 190 (N.Y. 1987)..............................................................................13

*Creative Waste Mgmt., Inc. v. Capitol Envtl. Servs., Inc.*,
   429 F. Supp. 2d 582 (S.D.N.Y. 2006)..................................................................7

*Deutsche Bank Securities, Inc. v. Rhodes*,
   578 F. Supp. 2d 652 (S.D.N.Y. 2008)................................................................15

*EQT Infrastructure Ltd. v. Smith*,
   861 F. Supp. 2d 220 (S.D.N.Y. 2012)..................................................................9

*Galli v. Metz*,
   973 F.2d 145 (2d Cir. 1992)..............................................................................12

*Hassett-Belfer Senior Hous., LLC v. Town of N. Hempstead*,
   705 N.Y.S.2d 233 (N.Y. App. Div. 2000) ......................................................1, 18

*Hudson v. Greenwich I Assocs.*,
   640 N.Y.S.2d 46 (N.Y. App. Div. 1996) ..............................................................9

*Laba v. Carey*,
   277 N.E.2d 641 (N.Y. 1971)..............................................................................12

*LCO Destiny, LLC v. Michaels Stores, Inc.*,
    543 F. Supp. 2d 129 (N.D.N.Y. 2008) .................................................................9

*M.E.S., Inc. v. Safeco Ins. Co. v. Am.*, No. 10cv2798-PKC,
    2014 WL 2931398 (E.D.N.Y. June 27, 2014) ......................................................9

*Muzak Corp. v. Hotel Taft Corp.*,
    133 N.E.2d 688 (N.Y. 1956) ..............................................................................12

*New York Racing Ass'n v. Meganews, Inc.*, No. 97cv1091-SJ,
    2000 WL 307378 (E.D.N.Y. Mar. 21, 2000) ........................................................3

*New York Univ. v. Cont'l Ins. Co.*,
    662 N.E.2d 763 (N.Y. 1995) ................................................................................5

*North Atl. Inst., Inc. v. Haber*,
    188 F.3d 38 (2d Cir. 1999) .................................................................................17

*Orange County Choppers, Inc. v. Olaes Enterprises, Inc.*
    497 F. Supp. 2d 541 (S.D.N.Y. 2007) ................................................................15

*Sofi Classic S.A. de C.V. v. Hurowitz*,
    444 F. Supp. 2d 231 (S.D.N.Y. 2006) ................................................................10

*Sommer v. Federal Signal Corp.*,
    593 N.E.2d 1365 (N.Y. 1992) ..........................................................................4, 5

*Stagel v. Chen*,
    903 N.Y.S.2d 110 (N.Y. App. Div. 2010) ............................................................5

*Tobin v. Gluck*, No. 07cv1605,
    2014 WL 1310347 (E.D.N.Y. Mar. 28, 2014) ...................................................8, 9

*Verizon New York, Inc. v. Optical Commc'ns Group, Inc.*,
    91 A.D.3d 176 (N.Y. App. Div. 2011) ..................................................................5

*WSP USA Corp. v. Marinello*, 13cv4591-PKC,
    2013 WL 6704885 (S.D.N.Y. Dec. 19, 2013) ....................................................14

**Rules**

Rule 12(b)(6) of the Federal Rules of Civil Procedure ...............................................20

**Other Authorities**

*Corbin on Contracts* § 24.23 (Rev. Ed. 1998) ............................................................12

iii

**INTRODUCTION**

N8 strains mightily to manipulate what are ordinary breach of contract claims into purported claims for fraud, negligence, conversion, misappropriation, and unfair competition. Perhaps N8 seeks to justify its extraordinary $100 million damages demand. Whatever its motivation, N8 should not be allowed to complicate this litigation with a litany of baseless claims that are so clearly unsupported by both fact and law.

This case sounds in contract. Contracts gave rise to -- and formed the basis of -- the relationship between Colgate and N8. This case will ultimately be resolved when this Court determines the scope and meaning of obligations Colgate owed N8 under the parties' Agreements. There is no basis -- and no need -- to clutter this case with a raft of groundless, extraneous claims. All of N8's tort claims should be dismissed.

**ARGUMENT**

**I.    N8 Has Not Stated a Claim for Conversion.**

N8 does not deny that a claim for conversion cannot be predicated on a mere breach of contract. *See* Opp'n at 17-18. Indeed, under New York law, "[a] cause of action alleging conversion cannot be maintained where, as here, damages are being sought merely for breach of contract, and no wrong independent of the contract claim has been demonstrated." *Hassett-Belfer Senior Hous., LLC v. Town of N. Hempstead*, 705 N.Y.S.2d 233, 233 (N.Y. App. Div. 2000). N8 fails to satisfy either standard.

**A.    N8 Seeks the Same Damages for Breach of Contract and Conversion.**

N8 makes no argument that the damages it seeks for conversion are any different from the damages it seeks for breach of contract. *See* Opp'n at 17-18. As proven by its pleading, N8

seeks to recover -- *for both claims* -- for alleged harm to its patent portfolio, lost opportunities, experienced delay, used resources, and incurred direct costs.  *Compare* Am. Compl. ¶¶ 56-57, 62-63 (breach of contract) *with* ¶ 91 (conversion).  Thus, N8's conversion claim is redundant of its breach of contract claim under New York law, and should be dismissed.

### B.     N8 Alleges No Wrong Independent of the Contract.

While N8 defends its conversion claim by suggesting that it has alleged "wrongdoing that is distinct from and goes beyond breach of contract," its pleading proves otherwise.  Opp'n at 17.  Specifically, in support of its contract claim, N8 alleges that Colgate breached the Agreements by (1) filing the Patent Applications, (2) improperly using ceragenins and other confidential information, and (3) depriving N8 of its ownership rights.  Likewise, in support of its conversion claim, N8 alleges that Colgate converted N8's materials and information by (1) filing the Patent Applications, (2) improperly using the ceragenins and other confidential information, and (3) interfering with N8's ownership rights.  *Compare* Am. Compl. ¶ 62 *with id.* ¶¶ 86-88.  N8 has no good answer to this straightforward comparison.  N8 thus avoids its pleading altogether and argues that its conversion claim is supported by allegations that Colgate (1) "continued to assert ownership of N8's property *after* it cancelled the Second MTA," and (2) "fraudulently misrepresented material facts to obtain ceragenins and N8's intellectual property, which it then wrongfully appropriated."  Opp'n at 17-18.  Even if N8 had pled these allegations, they would not state a viable claim.

*First*, N8's assertion that Colgate wrongfully continued to assert ownership of N8's property is a contract claim.  Whatever property Colgate received from N8 was received pursuant to contract.  And whatever rights Colgate has or does not have to retain that property

2

are defined by contract.  Thus, the Agreements define the parties' rights relative to N8's property, and any claim based on Colgate's alleged failure to return that property is a claim for breach of contract.  *See New York Racing Ass'n v. Meganews, Inc.*, No. 97cv1091-SJ, 2000 WL 307378, at *5 (E.D.N.Y. Mar. 21, 2000) (conversion claim redundant of contract claim where "authority through which plaintiff's legal claims are viewed is the contract between the parties").

*Second*, N8's allegation that Colgate fraudulently obtained ceragenins and N8's intellectual property is equally ineffective.  While N8 now claims that Colgate fraudulently misrepresented material facts to obtain ceragenins and N8's intellectual property, N8 alleges no facts to connect the dots.  After all, N8's allegations of fraud are based on conduct that allegedly occurred *after* Colgate received ceragenins and N8's intellectual property pursuant to the First MTA.  *See* Am. Compl. ¶¶ 104-13.  Given that, N8's conversion claim simply cannot stand.

## II.    N8 Has Not Stated a Claim for Negligence or Gross Negligence.

N8 concedes that, to state a claim for negligence and gross negligence, it must satisfy two related but separate requirements:  (1) a claim for damages that are different from the damages N8 seeks for breach of contract; and (2) the existence of a legal duty separate from Colgate's contractual obligations.  *See* Opp'n at 18-20.  Once again, N8 satisfies neither requirement.

### A.    N8 Seeks the Same Damages for Negligence and Breach of Contract.

While it is not pled in N8's amended complaint, N8 now contends that, for Colgate's alleged negligence, it seeks damages for a supposed diminution in the value of N8's technology.  *See id.* at 19.  N8 claims these damages "are distinct from its breach of contract claim."  *Id.*  N8's amended complaint proves otherwise.  In Paragraph 63, in which N8 purports to set forth its damages for breach of contract, N8 seeks to recover the very same "monetary damages for any

3

and all harm caused to N8 Medical's patent portfolio and intellectual property."  Am. Compl. ¶ 63.  For this reason alone, N8's negligence claims should be dismissed.

### B.      Colgate Owes N8 No Legal Duties Separate from the Agreements.

N8 alleges that Colgate "owed N8 a duty of reasonable care to protect the confidential information and materials entrusted to it," and not to "take actions that harmed" N8's intellectual property rights.  *Id.* ¶ 99.  N8 does not deny that, to the extent these obligations exist, they are "contractual obligations."  Opp'n at 18.  Despite that critical admission, N8 contends that Colgate's alleged breach of those obligations gave rise to a separate tort claim because "the very nature of [Colgate's] contractual obligation, and the public's interest . . . give[s] rise to a duty to perform its contractual obligations with reasonable care."  *Id.*  N8 misunderstands the law.

N8 cites *Sommer v. Federal Signal Corp.*, 593 N.E.2d 1365 (N.Y. 1992), to support its claim that Colgate owed duties to N8 separate and apart from the Agreements.  *See* Opp'n at 18-19.  *Sommer*, however, does not apply.  In *Sommer*, the New York Court of Appeals imposed a duty of care upon a fire alarm company that contracted with a building owner to relay to the fire department fire alarms sounding in the building.  The *Sommer* court began by reaffirming the principle that a party's failure to perform a contract with due care does not transform a contract claim into a claim for negligence.  593 N.E.2d at 1369.  The court then recognized that "[a] legal duty independent of contractual obligations *may* be imposed *by law* as an incident to the parties' relationship.  Professionals, common carriers and bailees, for example, may be subject to tort liability for failure to exercise reasonable care. . . . In these instances, *it is the policy*, not the parties' contract, that gives rise to a duty of due care."  *Id.* (emphasis added).  With those principles in mind, the *Sommer* court held that the fire alarm company's duty to act with

4

reasonable care stemmed from both the character of its contract *and* the nature of its services in which there was significant public interest.  *Id.* at 1370.

Here, N8 contends that Colgate assumed a duty to exercise reasonable care in the filing of the Patent Applications, but N8 offers no support for its assertion.  *See* Opp'n at 19.  There certainly is no significant public interest remotely comparable to that identified in *Sommer*.[1] Whatever duties Colgate owed to N8 are defined solely by the parties' Agreements, and N8 offers no legal or factual basis upon which a fact finder could conclude that Colgate owed N8 a duty of care separate and apart from the parties' Agreements.  *See id.* at 18-20.  For these reasons, N8's negligence and gross negligence claims should be dismissed.

## III.   N8 Has Not Stated a Claim for Fraud.

"A fraud cause of action must be dismissed where the only fraud alleged relates to the cause of action to recover damages for breach of contract."  *Atlantis Info. Tech., GmbH v. CA, Inc.*, 485 F. Supp. 2d 224, 232 (E.D.N.Y. 2007) (internal quotation omitted); *see also Stagel v. Chen*, 903 N.Y.S.2d 110, 112 (N.Y. App. Div. 2010) (same).  In fact, for a fraud claim to co-exist with a claim for breach of contract, a plaintiff must (1) "demonstrate a legal duty separate from the duty to perform under the contract," (2) "demonstrate a fraudulent misrepresentation collateral to or extraneous to the contract," or (3) "seek special damages that are caused by

---

[1] The New York Court of Appeals has since further limited *Sommer's* application to cases where "catastrophic consequences" would flow from a party's failure to perform its obligations with due care.  *See New York Univ. v. Cont'l Ins. Co.*, 662 N.E.2d 763, 768 (N.Y. 1995).  In other words, even where the harm alleged may have affected the public, courts will not find a separate duty where the harm did "not rise to the level required to transform it from contractual to tortious in nature."  *See Verizon New York, Inc. v. Optical Commc'ns Group, Inc.*, 91 A.D.3d 176, 181-82 (N.Y. App. Div. 2011) (affirming dismissal of fraud claim where obligations were contractual and harm was not catastrophic).  Here, there are no claims of catastrophic harm.

5

misrepresentation and unrecoverable as contract damages." *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996). N8 does not disagree. N8 acknowledges that "to maintain fraud claims separate from its contract claims," it must plead facts to satisfy one of the foregoing exceptions. Opp'n at 10-11. N8 has not met its burden.

A.      **Colgate Owed N8 No Legal Duty Separate from the Parties' Agreements.**

N8 contends that, when the parties executed the Second MTA, "Colgate had a duty to disclose the material fact of its continuing breaches of the Agreements with N8." Am. Compl. ¶ 110. N8 contends this alleged "duty to disclose was an independent legal duty, arising from the formal confidential relationship created by the First MTA and the NDA." Opp'n at 11; *see also* Am. Compl. ¶ 110 ("This duty arises from [Colgate's] contractual duties of confidentiality and trust under the terms of the First MTA."). N8's position is contrary to New York law.

In *Atlantis Information Technology*, the court dismissed the plaintiff's fraud claim for, among other things, failure to demonstrate that it was based on a legal duty separate and apart from the defendant's contractual obligations. 485 F. Supp. 2d at 232-33. Just like N8, the plaintiff in *Atlantis* alleged that it and the defendant "had a special relationship of trust and confidence." *Id.* at 233. The court rejected the plaintiff's contention, finding that where it did not "allege any sort of special relationship among the parties or other situation that would give rise to a legal duty apart from the parties' contractual relationships," no separate duty would be found. *Id.* (internal quotations omitted); *see also Agency Dev., Inc. v. MedAmerica Ins. Co. of New York*, 327 F. Supp. 2d 199, 206 (W.D.N.Y. 2004) (while special relationship may exist where one party reposes confidence in another and reasonably relies on the other's superior expertise, an arms-length business relationship does not give rise to a fiduciary obligation).

6

Here, there are no facts pled to suggest that Colgate's and N8's arms-length business relationship transmuted into something akin to a special relationship out of which separate legal obligations arose.  While N8 contends that "[t]he existence of an express agreement of confidentiality is evidence that the relationship is confidential in nature," N8 cites no New York law that found that the existence of a confidentiality agreement alone creates a legal duty separate and apart from that very agreement.  Opp'n at 11-12.  Moreover, to accept N8's contention would be to expand the reach of tort liability so that every party who enters into an agreement with a confidentiality provision could be held liable in contract *and* in tort for breach of that agreement.[2]  Clearly, that is not the law.

Recognizing as much, N8 invokes "the special facts doctrine," a doctrine applied as an exception to the rule that, "[w]here parties are involved in an arm's length commercial transaction, there is no fiduciary duty to disclose information." *Creative Waste Mgmt., Inc. v. Capitol Envtl. Servs., Inc.*, 429 F. Supp. 2d 582, 607 (S.D.N.Y. 2006); *see* Opp'n at 12.  Even if N8 had pled facts to support application of the doctrine here, it is clear that N8's fraud claim would still fail.  N8's fraudulent concealment claim is based on its contention that Colgate's nondisclosure of its breach of the First MTA at the time the parties entered into the Second MTA "led directly to the publication of the PCT Application and to the disclosure of N8's . . . valuable

---

[2] In *Bausch & Lomb Inc. v. Alcon Laboratories, Inc.*, 64 F. Supp. 2d 233, 253 (W.D.N.Y. 1999),* cited by N8 in support of its position, the district court was asked to decide whether a confidential or fiduciary relationship existed between an employee and employer with a written confidentiality agreement.  In finding that a confidential relationship *might* exist in that case, the court recognized that employee/employer relationships are unique, and distinguished them from arms-length relationships like the one here where confidential information was exchanged between "parties [who] had simply contracted to do certain business with each other."  *Id.*

confidential information." Am. Compl. ¶ 111.  And yet N8 pleads no facts to prove causation.

Given that the PCT Application was filed nearly one year before the Second MTA was executed,

Colgate's alleged non-disclosure could not have led directly to the publication of the PCT

Application.  *Cf. Agency Dev.*, 327 F. Supp. 2d at 206 (rejecting fraud claim where plaintiff

could not show how damages were caused by fraud).

### B.    Colgate's Alleged Fraud Is Directly Related to the Agreements.

N8 does not argue that Colgate's alleged misrepresentation is collateral to the

Agreements.  Instead, N8 repeats its argument regarding the existence of an independent duty

and focuses on whether "[a] promise made with the preconceived and undisclosed intention of

not performing it constitutes an actionable misrepresentation."  Opp'n at 12.  While there are

cases suggesting some confusion among New York courts regarding this issue, the Second

Circuit Court of Appeals and recent New York decisions make clear that the general rule is that

"false statements indicating an intent to perform under a contract generally do not support an

independent claim for fraud under New York law."  *Tobin v. Gluck*, No. 07cv1605, 2014 WL

1310347, at *9 (E.D.N.Y. Mar. 28, 2014).  "The Second Circuit's rule . . . seems to be based on

the view that the [New York] Appellate Division cases state the general principle of law, and that

each of the individual Court of Appeals decisions to the contrary should be read as a fact-specific

exception to that principle."  *Id.*  In other words, "the tension 'has been reconciled through a rule,

widely adopted by the state and federal courts, pursuant to which a false promise can support a

claim of fraud only where that promise was 'collateral or extraneous' to the terms [of] an

enforceable agreement in place between the parties." *M.E.S., Inc. v. Safeco Ins. Co. v. Am.*, No. 10cv2798-PKC, 2014 WL 2931398, at \*7 (E.D.N.Y. June 27, 2014).[3]

      With these principles in mind, it is clear that any assertion by N8 that Colgate is guilty of fraud because it entered into the Second MTA with "a preconceived and undisclosed intention of not performing it" fails under New York law. *See, e.g., Tobin*, 2014 WL 1310347, at \*9-10 (dismissing fraud claim based on allegation that defendants did not intend to keep their promise); *Hudson v. Greenwich I Assocs.*, 640 N.Y.S.2d 46, 47 (N.Y. App. Div. 1996) (dismissing fraud claim where plaintiff alleged defendant "never intended to carry out its promises contained in contract"). And, to the extent N8 contends its fraud claims are based on some other misrepresentation (*i.e.*, that Colgate had breached the First MTA or filed the PCT Application), those alleged misrepresentations are no more collateral to the Agreements. After all, the same obligations of confidentiality that exist in the First MTA exist in the Second MTA. To the extent N8 contends Colgate breached its contractual obligations, its remedy sounds in contract -- not fraud. *See, e.g., LCO Destiny, LLC v. Michaels Stores, Inc.*, 543 F. Supp. 2d 129, 133 (N.D.N.Y. 2008) (finding no fraud where claim arises out of same facts that serve as basis for breach of contract claim); *Atlantis*, 485 F. Supp. 2d at 233 (rejecting fraud claim where misrepresentation was not extraneous to agreements, but was related and intrinsic to them).

---

[3] *See also EQT Infrastructure Ltd. v. Smith*, 861 F. Supp. 2d 220, 234 (S.D.N.Y. 2012) ("The holdings of *Sabo* and *Channel Master* were apparently tied to misrepresentations which were collateral or extraneous to the agreements entered into by the parties, . . . rather than the promises spelled out in the contracts.") (internal quotation omitted).

### C.     N8 Seeks the Same Damages for Breach of Contract as It Does for Fraud.

N8 argues that the economic loss rule does not apply to bar its claims for fraud.  *See*

Opp'n at 14-17.  While there are courts within the Southern District of New York that have

concluded the economic loss rule does not apply to fraud causes of action (like the *EED*

*Holdings* court, cited by N8), many others "have held that the economic loss rule may bar a fraud

claim where the damages sought are essentially contractual."  *Sofi Classic S.A. de C.V. v.*

*Hurowitz*, 444 F. Supp. 2d 231, 246 (S.D.N.Y. 2006) (citing cases).  And, "[w]hile the Second

Circuit has not explicitly addressed whether fraud claims are exempted from the economic loss

rule, the Circuit Court has emphasized the principle that a plaintiff cannot sustain a fraud claim

where no characteristically tort damages are alleged."  *Id.*  Thus, whether characterized as the

"economic loss doctrine" or a failure to plead "special damages," there can be no question that,

to assert a claim for fraud, a plaintiff "must plead damages apart from the damages arising from a

breach of the underlying contract."  *Id.* at 247; *see also* Bridgestone/Firestone, 98 F.3d at 20.

Once again, N8 does not distinguish between the damages it seeks for breach of contract

and fraud.  Instead, N8 seeks the very same damages for breach of contract it does for fraud.

*Compare* Am. Compl. ¶ 63 (seeking damages for breach of contract for alleged harm to

intellectual property) *with* ¶ 112 (seeking damages for fraud for harm to intellectual property).

For this reason alone, N8's fraud claims should be dismissed.

### IV.     N8 Has Not Stated Trade Secrets or Unfair Competition Claims.

### A.     The MTAs Do Not Prohibit the Filing of the Patent Applications.

N8's attempt to salvage its misappropriation of trade secrets claims based on an alleged

breach of the MTAs ignores both its pleading and the terms of the parties' Agreements.

In support of its trade secrets claim, N8 alleges that Colgate misappropriated N8's trade secrets "by disclosing, using and causing and allowing publication of them without express or implied consent." Am. Compl. ¶ 73.  In other words, N8's claim stems from one action taken by Colgate:  its filing of the patent applications.  And, whatever other claims N8 now contends its misappropriation claim "embraces," it is clear that N8's claims all arise, if at all, out of that act.

Thus, the question this Court will answer is whether the MTAs (assuming they apply) prohibit Colgate from filing the patent applications.  As demonstrated in Colgate's motion, the MTAs give neither party the right to prevent the other's filing of a patent application.  In fact, while the MTAs allow N8 to jointly develop an invention, they afford N8 no right to object to Colgate's seeking of patent protection.  *See* Mot. at 6-8.  And, while N8 can point to no language in the MTAs that prohibits a party from seeking patent protection, it argues that the provision allowing for the filing of patent protection is (1) trumped by the confidentiality provisions in the MTAs, and (2) is limited by the requirement that Colgate provide notice of its invention.  Opp'n at 2-5.  Neither argument wins the day.

*First*, the MTAs clearly contemplate the filing of a patent application.  After all, N8 provided ceragenins to Colgate under the MTAs for the purpose of developing technology for potential commercial use.  *See, e.g.,* First MTA, Mot. Ex. C at p. 1 & § 7.b.  Section 7.b.(5) of the MTAs even expressly allows for the filing of patent applications.  *See id.* § 7.b.(5).  To argue that the general confidentiality requirements in the MTAs trump § 7.b.(5) is contrary to New York rules of contract construction and would render the provision without force or effect.

"[A] basic principle of contract interpretation under New York law is that specific terms in a contract will override the general." *In re AMR Corp.*, 485 B.R. 279, 302 (S.D.N.Y. 2013).

Indeed, "'[i]f the apparent inconsistency is between a clause that is general and broadly inclusive in nature and one that is more limited and specific in its coverage, the more specific term should usually be held to prevail over the more general term.'"  *Id.* (quoting 5 Margaret N. Kniffin, *Corbin on Contracts* § 24.23 (Rev. Ed. 1998)); *see also Muzak Corp. v. Hotel Taft Corp.*, 133 N.E.2d 688, 690 (N.Y. 1956) ("Even if there was an inconsistency between a specific provision and a general provision of a contract . . . the specific provision controls.").

Here, to the extent there is an inconsistency between the general confidentiality provisions in the MTAs and the specific provisions allowing for the patenting of any inventions, the more specific provision must govern.  By including § 7.b.(5) in the MTAs, both parties undoubtedly understood that the filing of a patent application describing an invention using ceragenins -- whether filed jointly or unilaterally -- would require the disclosure of confidential information.  After all, patent applications, by their nature, may include novel technological information and are eventually published.  To conclude that the parties did not intend to allow for the publication of confidential information in a patent application would elevate the general over the specific and render § 7.b.(5) entirely meaningless.  Such an interpretation would be contrary to New York law.  *See, e.g., Galli v. Metz*, 973 F.2d 145, 149 (2d Cir. 1992) ("Under New York law an interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless . . . is not preferred and will be avoided if possible." (internal quotation omitted); *Laba v. Carey*, 277 N.E.2d 641, 645 (N.Y. 1971) (stating court should not adopt interpretation which will operate to leave provision of contract without force and effect).

*Second*, N8 is also mistaken when it contends that the MTAs' notice requirement prohibits Colgate from disclosing confidential information in a patent application.  While parties

12

are to provide notice of joint inventions under the MTAs, the notice requirement cannot be read

to prevent the filing of a patent application.  Indeed, upon receiving notice of a joint invention

under the MTAs, N8 has the choice to jointly develop the invention, or to let Colgate proceed on

its own.  N8, however, has no right to object to Colgate seeking patent protection.

> **B.      N8's Claims for Misappropriation and Unfair Competition Are Duplicative.**

N8 does not deny that its claims for misappropriation of trade secrets and unfair

competition are duplicative of its claim for breach of contract.  In fact, N8 makes no effort to

distinguish its breach of contract claim from the two torts.  Instead, N8 argues that its duplicative

tort claims should not be dismissed because, according to N8, the recent and relevant New York

law cited by Colgate in support of dismissal simply does not apply.  *See* Opp'n at 5-7.  The law

Colgate cites is not so easily disregarded.

It is well established under New York law that where, as here, parties have bargained for

their relationship to be governed by contract, they may not bring tort claims based on duties that

are the same as contractual obligations.  *See Clark-Fitzpatrick v. Long Island R.R. Co.*, 516

N.E.2d 190, 193-94 (N.Y. 1987).  This is true even when the tort claims are misappropriation of

trade secrets and unfair competition.  In fact, in *Cargill, Inc. v. Sears Petroleum & Transp.

Corp.*, the court could not have been clearer:  "Breach of contract and misappropriation of trade

secret claims that are truly identical causes of action, though asserted under two different labels,

cannot co-exist."  388 F. Supp. 2d 37, 64 (N.D.N.Y. 2005).

Contrary to N8's contention, these principles have been repeatedly applied by New York

courts to dismiss duplicative misappropriation and unfair competition claims like those asserted

by N8.  In *Document Security Systems, Inc. v. Coupons.com*, for example, the court dismissed

13

the plaintiff's trade secrets claim, finding the parties' agreement governed the subject matter of

the dispute, claims arising from the dispute were contractual, and no independent tort duty

existed.  No. 11cv6528-CJS, 2013 WL 1945954, at **3-4 (W.D.N.Y. May 9, 2013).

While not denying that *Document Security Systems* is directly on point, N8 invites the

Court to ignore it as "far from the mainstream of judicial holdings and irreconcilable with New

York trade secret law."  Opp'n at 7.  N8 is mistaken.  In *Document Security Systems*, the New

York court engages in a thorough analysis of New York law before it ultimately grants the

defendant's motion to dismiss the plaintiff's trade secret claim, and it is not alone.[4]  *See id.* *2-4.

In *Washington v. Kellwood Co.*, for example, the court dismissed plaintiff's unfair

competition claim as duplicative of its contract claim, rejecting the argument that "there is a

material difference between disclosure of confidential information and misappropriation of

confidential information," and so "the confidentiality clause barring disclosure does not preclude

a separate claim for unfair competition based on misappropriation."  No. 05cv11034-DAB, 2009

WL 855652, at *8 (S.D.N.Y. Mar. 24, 2009).  The court concluded that, because the parties'

---

[4] N8 contends that *Document Security Systems* "receives no deference" from courts in its own district.  Opp'n at 7.  N8, however, cites no evidence of that.  In the one case it cites (from the neighboring Southern District), the court was not asked to decide whether the trade secrets claim was duplicative of the contract claim.  *See WSP USA Corp. v. Marinello*, 13cv4591-PKC, 2013 WL 6704885, at *6 (S.D.N.Y. Dec. 19, 2013).  The same also can be said about all three other cases N8 cites in support of its argument: *North Atlantic Instruments, Medtech Products,* and *Brown & Brown*.  *See* Opp'n at 7.  The issue of whether the parties' trade secret claims duplicated their contract claims was not before those courts, and thus the considerations relevant to the issue were not discussed.  And, the fact alone that the two claims existed together is not at all illuminating.  After all, it is not Colgate's position that the two claims can *never* co-exist.  It is Colgate's position (and New York law) that in cases like this, where the contract and trade secrets claims are substantively identical, the trade secrets claim must be dismissed.

14

agreement included "an express bar on both the use and disclosure of confidential information," a tort claim based on the contractual obligation could not stand.  *See id.*

Similarly, in *Medinol Ltd. v. Boston Scientific Corp.*, the court held that the plaintiff's trade secrets claim was legally insufficient based on its finding that "[t]he comprehensive coverage of the parties' Supply Agreement appears to be inconsistent with an independent tort theory of misappropriation of trade secrets." 346 F. Supp. 2d 575, 606 (S.D.N.Y. 2004).  The court found that the plaintiff's "claim of misappropriation cannot pass [the] tests" that require tort claims (including a claim for misappropriation) be "sufficiently distinct from the breach of contract claim in order to be legally sufficient."[5]  *Id.* at 606-07; *see also Deutsche Bank Securities, Inc. v. Rhodes,* 578 F. Supp. 2d 652, 665 (S.D.N.Y. 2008) (holding breach of parties' confidentiality agreement "cannot support liability in tort for misappropriation unless an independent duty has been violated"); *Orange County Choppers, Inc. v. Olaes Enterprises, Inc.* 497 F. Supp. 2d 541, 558 (S.D.N.Y. 2007) (finding it well-settled that plaintiff cannot state claim for unfair competition where underlying allegations merely restate breach of contract action).

N8 contends that the *Cargill* case is contrary to *Document Security Systems,* and supports its assertion of duplicative tort claims.  *See* Opp'n at 5-6.  *Cargill* states that "[t]o prevail simultaneously on both tort and breach of contract theories, based on a common set of facts, a plaintiff must demonstrate that the two claims are sufficiently distinct."  *Cargill,* 388 F. Supp. 2d

---

[5] N8 attacks Colgate's reliance on *Medinol*, arguing that it "is a mischaracterization of pure dictum."  Opp'n at 6.  Specifically, N8 contends that the court did not dismiss the trade secrets claim because of its duplicative nature, but "because it found that there was no trade secret."  *Id.*  N8 is mistaken.  While the *Medinol* court found there was no protectable trade secret, *see* 346 F. Supp. 2d at 606-07, it also found the trade secrets claim was duplicative of the contract claim.  The court relied on *both* grounds.  *See id.* at 606-07.

at 64.  Despite that clear directive, N8 contends that, because the *Cargill* court allowed a trade

secrets claim and a contract claim to coexist, the court did not really mean what it said.  N8

misreads *Cargill*.  In *Cargill*, the court refused to set aside a jury verdict based on the plaintiff's

tort claims for misuse of confidential information.  *Id.* at 65.  The court reached its conclusion

because "[i]n this instance the two claims . . . are sufficiently separate and distinct as to allow

them to co-exist."  *Id.*  Specifically, the parties' confidentiality agreement "precluded

unauthorized disclosure" of the plaintiff's information, but the agreement did not restrict the *use*

of that information.  Thus, the court found that the "tort of misappropriation . . . served to protect

against Cargill's misappropriation of that information to its own commercial benefit."  *Id.*

In contrast here, N8's trade secrets and unfair competition claims are based on an alleged

unlawful disclosure and misuse of N8's confidential information.  *See* Am. Compl. ¶¶ 71, 73, 94.

Both of those claims (*i.e.*, disclosure and misuse) are based on obligations allegedly set forth in

the parties' Agreements.  In fact, N8 alleges that the parties' Agreements prohibit Colgate from

both disclosing *and* misusing Colgate's confidential information.  *See, e.g., id.*  Thus, the

Agreements govern the subject matter of both the trade secrets and unfair competition claims,

neither of which are "sufficiently distinct" from N8's contract claim to survive dismissal.

Finally, N8 argues its misappropriation and unfair competition claims should survive

because the Agreements "under which the parties share trade secrets impose[] a legal duty, the

breach of which supports a claim for trade secret misappropriation."  Opp'n at 1.  Once again,

N8 fails to identify a *separate* legal duty upon which tort liability can be based that arises

independent of the parties' Agreements.  While N8 argues that such a duty exists simply because

Colgate is a party to a confidentiality agreement with N8, the cases it cites do not support its

position.  *North Atlantic Instruments*, *Penrose Computer*, and *Norbrook Labs* are all cases

involving employment relationships -- relationships that impose separate legal duties under New

York law.  *See, e.g.*, *North Atl. Inst., Inc. v. Haber*, 188 F.3d 38, 48-49 (2d Cir. 1999) (finding

that in addition to violating duty imposed by employment agreement, former employee violated

separate duty imposed by New York law not to use former employer's trade secrets).[6]

## V.     N8's Good Faith and Fair Dealing Claim Is Redundant.

N8 concedes that, under New York law, a claim for breach of the implied duty of good

faith and fair dealing "generally is not a separate cause of action from a contract claim."  Opp'n

at 21.  Although not pled, N8 now argues that its good faith/fair dealing claim is based on its

allegation that "Colgate agreed, in the MTA, to negotiate a license agreement on commercially

reasonable terms with N8," and that Colgate "refused to negotiate in good faith by delaying,

manufacturing false excuses and terminating the relationship, while concealing its other

misconduct."  *Id.*  This theory (even if it had been pled) fails for several reasons.

*First*, *Iqbal* and *Twombly* require that a claim for relief be plausible on its face.  N8's

theory is not plausible.  The MTA grants Colgate the "right to develop and/or market the Joint

Invention on its own pursuant to a license agreement with N8 on commercially reasonable terms

to be mutually agreed on."  First MTA, Mot. Ex. C at § 7.b.(4).  There is no allegation in this

case (nor could there be) that Colgate has ever developed or marketed an invention using

ceragenins.  Thus, any obligation to negotiate a license agreement with N8 was never triggered.

---

[6] N8's reliance on *777388 Ontario Ltd. v. Lencore Acoustics Corp.*, is equally unavailing.
There, in addition to a contract, the court found that a fiduciary relationship between the parties
(and thus an independent legal duty) because defendants had acted as plaintiff's agent.  105 F.
Supp. 2d 56, 65 n.5 (E.D.N.Y. 2000).

*Second,* N8's good faith/fair dealing claim fails because it is no different from N8's contract claim.  In support of its contract claim, N8 alleges that the parties agreed to "negotiate a license agreement . . . for the development of the Joint Invention," and that Colgate breached the MTA by "failing to negotiate a commercial agreement with N8."[7]  *See* Am. Compl. ¶¶ 56, 62. Given that N8 purports to rely on the very same allegations to support its good faith/fair dealing claim, the claim fails as a separate cause of action under New York law.

Citing *L-7 Designs v. Old Navy, LLC,* N8 seeks to avoid this result by arguing that "the refusal of one party to negotiate in good faith to reach a mutually agreeable future agreement anticipated in a contract between the parties is actionable as a breach of the duty of good faith." Opp'n at 21.  That is not what the *L-7* court held.  In *L-7,* the Second Circuit observed that agreements to agree create an obligation to negotiate open issues in good faith.  647 F.3d 419, 430 (2d Cir. 2011).  Where L-7 alleged that Old Navy failed to negotiate in good faith, the court found that L-7 had stated a claim for *breach of contract.  Id.* at 431-34.  The court, however affirmed the dismissal of L-7's *good faith/fair dealing* claim, holding that because the good faith/fair dealing claim "is based on the same set of facts as its claim for breach of contract, it should have been dismissed as redundant." *Id.* at 434 n.17.

*Third*, a good faith/fair dealing claim must also be dismissed where it seeks to recover damages that are "intrinsically tied to the damages resulting from the breach of the contract." *ARI & Co., Inc. v. Regent Int'l Corp.,* 273 F. Supp. 2d 518, 523 (S.D.N.Y. 2003).  N8 makes no

---

[7]  In support of its contention that its good faith/fair dealing claim is factually distinct from its breach of contract claim, N8 cites to paragraph 56 of its Amended Complaint, *i.e.,* a paragraph alleged in support of its breach of contract claim.  *See* Opp'n at 21; Am. Compl. ¶ 56.

attempt to distinguish between the damages it seeks for breach of contract and the damages it seeks for breach of the implied covenant.  N8's good faith/fair dealing claim must be dismissed.

## VI.   N8's Claim for Declaratory Judgment Is Moot.

N8 claims that Colgate's motion to dismiss its declaratory judgment claim "is groundless," and that none of the issues raised by its claim is moot.  *Id.* at 20.  N8 is mistaken.

*First*, N8 claims that there is an ongoing controversy regarding ownership of patents and inventions relating to ceragenins.  Specifically, N8 argues that "Colgate has assigned the PCT Application as well as the three other foreign patent applications to N8, *but nothing more*."  *Id.* (emphasis added).  N8 states that "absent a declaration by this Court," it cannot "be certain . . . that all patent applications Colgate may have filed related to CSAs have been assigned to N8." *Id.*  N8, however, forgets the terms of the February 2014 Assignment.

In the Assignment, Colgate assigned to N8 its "entire right, title, and interest throughout the world in, to, and under the ***Patent Applications*** and any and all Patents that may be granted thereon."  Assignment, Mot. Ex. F at 1 (emphasis added).  The term "Patent Applications" is defined to include the PCT Application and the three foreign applications referred to in N8's memorandum.  *See id.*  The term's definition also includes any "other patent applications filed containing the same disclosure or claims as found," to the extent such applications exist.  *See id.* Thus, the Assignment makes it clear that all patent applications have been assigned to N8.

*Second*, there is also no existing controversy for the Court to adjudicate regarding ownership of "materials, including records of all testing and development relating to ceragenins." *Id.*  After all, N8 has no legal basis to assert ownership over such materials.  While Colgate has

19

willingly provided N8 with materials relating to its testing of the ceragenins, N8 has not identified a right to ownership of those materials.  Thus, there is no controversy to adjudicate.

## <u>CONCLUSION</u>

For these reasons, Colgate respectfully requests that the Court dismiss the Second, Third, Fifth, Sixth, Seventh, Eighth, Ninth, and Tenth causes of action in the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

DATED:  July 25th, 2014

STOEL RIVES LLP

/s/ *Kenneth B. Black*
Kenneth B. Black
Jill M. Pohlman
David L. Mortensen

Attorneys for Defendant
Colgate-Palmolive Company

20

**CERTIFICATE SERVICE**

I hereby certify that on the 25th day of July, 2014, I caused a true and correct copy of the

foregoing **REPLY MEMORANDUM IN SUPPORT OF DEFENDANT COLGATE-**

**PALMOLIVE COMPANY'S PARTIAL MOTION TO DISMISS N8 MEDICAL INC.'S**

**FIRST AMENDED COMPLAINT** to be served via CM/ECF on the following:

Brent O. Hatch
bhatch@hjdlaw.com
Mark F. James
mjames@hjdlaw.com
HATCH, JAMES & DODGE, PC
10 West Broadway, Suite 400
Salt Lake City, UT  84101

Paul J. Dobrowski
pjd@doblaw.com
Frederick T. Johnson
fjohnson@doblaw.com
C.Gerard Harrison
gharrison@doblaw.com
Cody Stafford
cstafford@doblaw.com
Dobrowski, Larkin & Johnson L.L.P.
4601 Washington Avenue, Suite 300
Houston, Texas 77007

Robert S. Clark
rclark@parrbrown.com
Gregory M. Hess
ghess@parrbrown.com
Parr Brown Gee & Loveless
101 South 200 East, Suite 700
Salt Lake City, UT 84111

*/s/ Kenneth B. Black*

21