Steven C. Smith, Bar No. 04508
Richard R. Thomas (Pro Hac Vice Pending)
Stephen C. Biggs (Pro Hac Vice Pending)
SMITH LC
4505 East Chandler Boulevard, Suite 290
Phoenix, Arizona 85048
T: 480-361-8575
F: 480-350-7309
E: ssmith@smith-lc.com
E: rthomas@smith-lc.com
E: sbiggs@smith-lc.com

Michael A. Schern (Pro Hac Vice Pending)
SCHERN RICHARDSON FINTER DECKER, PLC
1640 South Stapley Drive, Suite 132
Mesa, Arizona 85204
T: 480.630.3864
E: mike@srfdlaw.com

*Attorneys for Proposed Intervenor*
*N8 Pharmaceuticals, Inc.*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| N8 MEDICAL, INC.<br><br>                    Plaintiff,<br><br>and<br><br>BRIGHAM YOUNG UNIVERSITY,<br><br>                    Plaintiff-Intervenor.<br><br>v.<br><br>COLGATE-PALMOLIVE COMPANY,<br><br>                    Defendant. | Case No. 2:13-cv-01017-BSJ<br><br><br>**AMENDED MOTION TO INTERVENE BY N8 PHARMACEUTICALS, INC. AND SUPPORTING MEMORANDUM** |
| N8 PHARMACEUTICALS, INC.,<br><br>                    Proposed Intervenor. | |

## RELIEF SOUGHT AND GROUNDS FOR MOTION

Pursuant to *Fed. R. Civ. P.* 24(a)(2), N8 Pharmaceuticals, Inc. ("N8 Pharma") ("Intervenor"), hereby moves this Court for an order allowing N8 Pharma to intervene in this matter.  Intervenor has a substantial interest in the confidential trade secret information that is the subject of pending complaints by Plaintiff N8 Medical, Inc. ("N8 Medical") and Brigham Young University ("BYU").  Moreover, Intervenor is so situated that disposing of the action may as a practical matter impair or impede its respective ability to protect its interests.  Neither N8 Medical or BYU adequately represent the interests of Intervenor.  There is substantial overlap in questions of law and fact between Intervenor's proposed claims and the claims of N8 Medical and BYU.

Pursuant to *Fed. R. Civ. P.* 24(c), Intervenor has attached hereto as Exhibit "A," its amended proposed complaint in intervention stating the grounds for intervention and the claims for which intervention is sought.

## MEMORANDUM IN SUPPORT OF MOTION

### I.    FACTUAL BACKGROUND

On or about September 10, 2010, N8 Medical LLC, entered into an exclusive license ("original N8 Medical license") with Brigham Young University ("BYU") for certain intellectual property rights in cationic selective antimicrobials ("CSAs"). N8 Medical subsequently assigned its rights under that license to N8 Medical, Inc.  N8 Medical, LLC, and N8 Medical, Inc. shall be referred to collectively as N8 Medical.

After entering into the exclusive license with BYU, N8 Medical began negotiating with Colgate for the purpose of licensing certain aspects of CSA use to Colgate. At the time it began these negotiations and dealings with Colgate, and continuing through 2011 and into 2012, N8 Medical offered and involved its license rights for all oral human uses of CSAs, including

toothpaste, mouthwash, and mouth rinse.  In connection with these negotiations and dealings, N8 Medical entered into a Confidential Disclosure Agreement ("MCDA") and a material transfer agreement, with amendments ("the first MTA") with Colgate, for the purpose of furthering its negotiations with Colgate for the licensing of certain rights to the CSAs, including all oral uses, including toothpaste.

Relying upon the foregoing agreements, N8 Medical made a confidential and limited transfer of CSA-13 and CSA-44 to Colgate for limited testing and evaluation purposes, including CSA uses for which N8 Pharma would eventually receive the rights, including toothpaste. The MCDA and the first MTA referred to above protected the confidential information related to CSA uses for which N8 Pharma would eventually receive the rights, including toothpaste.

On June 4, 2012, CSA Biotechnologies, LLC ("CSA Biotech") acquired all of the outstanding stock of N8 Pharma.  Thereafter, on August 3, 2012, BYU amended the original N8 license.  BYU "split" the original N8 license by entering into an amended exclusive license agreement with N8 Medical ("the amended N8 Medical license") and a new exclusive license agreement with N8 Pharma ("the N8 Pharma license"). In the amended N8 Medical license, BYU limited N8 Medical's licensed rights to CSAs.  For example, the amended N8 Medical license granted to N8 Medical rights to CSAs for mouthwash and mouth rinse for 18 months. The amended N8 Medical license granted N8 Medical no rights in other oral care uses, in particular toothpaste.

In the N8 Pharma license, BYU granted to N8 Pharma broad rights to CSAs, including all oral uses except for mouthwash and mouth rinse.  However, the N8 Pharma license granted to N8 Pharma the rights to CSA mouthwash and mouth rinse use if, after 18 months, N8 Medical had not licensed that use to Colgate ("the 18 month option").

Thus, prior to the N8 Pharma license, N8 Medical had been negotiating and dealing with Colgate for rights that, on August 3, 2012, were taken from N8 Medical and granted to N8 Pharma in the N8 Pharma license.  After August 3, 2012, without the consent of at least N8 Pharma, N8 Medical had no right to negotiate with Colgate regarding any oral care use for CSAs other than mouthwash and mouth rinse.   Therefore, any and all negotiations and agreements relating to CSA oral uses other than mouth wash and mouth rinse uses that N8 Medical and Colgate engaged in or entered into prior to the N8 Pharma license inured to the benefit of N8 Pharma, including but not limited to the MCDA and the first MTA.

As a successor in interest to rights previously owned by N8 Medical under the original N8 Medical license, N8 Pharma is entitled to enforce any and all agreements relating to CSA oral uses other than mouth wash and mouth rinse uses entered into between N8 Medical and Colgate prior to the N8 Pharma license, including but not limited to the MCDA and the first MTA.  At the time of the amended N8 Medical license, N8 Medical lost the right to protect and enforce any and all agreements relating to CSA oral uses other than mouth wash and mouth rinse uses entered into between N8 Medical and Colgate prior to the N8 Pharma license, including but not limited to the MCDA and the first MTA.

On December 6, 2012, N8 Medical entered into a new material transfer agreement with Colgate ("the second MTA").  N8 Medical has refused to give N8 Pharma a copy of that 2012 MTA.  However, upon information and belief, N8 Pharma alleges that the second MTA purports to protect CSA information related to the CSA uses included in and covered by the N8 Pharma license.  Furthermore, N8 Medical entered into the second MTA with Colgate during a time when N8 Medical and N8 Pharma understood and intended that the two entities would pursue the sublicense to Colgate within a joint venture.  Thus, the second MTA was intended to benefit the

joint venture of N8 Pharma and N8 Medical and protect the rights of both N8 Medical and N8 Pharma.  N8 Pharma is entitled to enforce the second MTA.

N8 Medical and N8 Pharma promptly memorialized their intent to form and pursue a joint venture. On December 31, 2012, N8 Medical and N8 Pharma entered into a joint venture agreement for the express purpose of pursuing a sublicense with Colgate for CSA rights licensed separately to N8 Pharma and N8 Medical.

Following the formation of that joint venture and execution of the joint venture agreement, N8 Medical continued negotiations and dealings with Colgate for the express purpose of benefiting the joint venture with N8 Pharma.

## II.  INTERVENOR SATISFIES THE REQUIREMENTS FOR INTERVENTION AS OF RIGHT UNDER RULE 24(a).

The standard for intervention is a well-marked trail under *Fed. R. Civ. P.* 24(a)(2).  The Tenth Circuit employs a four part test for intervention under that Rule:

> Under Rule 24(a), an applicant may intervene as a matter of right if (1) the application is timely, (2) the applicant claims an interest relating to the property or transaction which is the subject of the action, (3) the applicant's interest may be impaired or impeded, and (4) the applicant's interest is not adequately represented by existing parties.

*See, Elliott Indus. Ltd. Partnership v. BP Am. Prod. Co.,* 407 F. 3d 1091, 1103 (10th Cir. 2005). N8 Pharma and CSA Biotech satisfy each requirement.

### A.  Intervenor's Motion is Timely.

Intervenor's motion is timely.[1] Although the court has entered a scheduling order, it has done so very recently.  There is still more than ample time for Intervenor to participate fully in discovery.  There is no prejudice to any other party.  Intervenor is willing to abide by the existing scheduling order. Moreover, Colgate has filed a motion to dismiss, which will undoubtedly slow the pace of the case somewhat until the motion is resolved.

---

[1] Counsel for N8 Pharma gave all counsel notice of N8 Pharma's intent to intervene prior to the scheduling conference on June 5, 2014.  Counsel for N8 Pharma attended that hearing.

**B.      Intervenor Has an Interest in the Confidential Trade Secret Information at Issue in This Case and That Interest Will Be Impaired.**

      **1.      N8 Pharma's Rights Are at the Core of This Case.**

N8 Pharm has as an interest in the rights that are the subject matter of this case. Indeed, N8 Pharma's rights go to the very core of this case and those rights will in fact be impaired or impeded as a result of this case. In the original portion of this case, N8 Medical seeks remedies against Colgate for improper use of confidential and trade secret information regarding CSAs. N8 Pharma seeks only to enforce the rights granted to it in the August 3, 2012 N8 Pharma license, rights that N8 Medical no longer owns and rights that were obviously involved in the transfer of confidential trade secret information about the CSAs by means of the Agreements. Indeed, in its current allegations and claims against Colgate, N8 Medical is in part pursuing remedies for the rights to CSAs that are now in the hands of N8 Pharma. (*See* First Amended Complaint of N8 Medical, Dkt # 66, at ¶¶ 7, 10, 13, 26, and 40b) N8 Pharma is not required to leave those rights, and the litigation filed to vindicate them, solely under the control of N8 Medical. Indeed, N8 Pharma has a duty to protect the confidentiality of the intellectual property BYU licensed to it or run the risk of losing those rights. N8 Pharma must be allowed to intervene and direct the litigation that directly involves those rights. To do otherwise is to dilute and possibly compromise those exclusive license rights. Under these circumstances, N8 Pharma is not only a necessary party, but also an indispensable party, under *Fed. R. Civ. P.* 19. *See, Kansas City Royalty Co., LLC v. Thoroughbred Associates, LLC,* 215 F.R.D. 628, 635 (D. Kan. 2003)(court could not grant plaintiff complete relief without impairing rights of absent owners of leases in property at issue).

      **2.      As N8 Medical's Joint Venture Partner, N8 Medical is a Necessary and Indispensable Party and Must Be Allowed to Intervene.**

N8 Pharma's interest in rights that are the subject of this litigation is a compelling reason to grant intervention. One additional factor makes N8 Pharma's intervention absolutely

undeniable. N8 Pharma is N8 Medical's joint venture partner and thus a necessary and indispensable party under *Fed. R. Civ. P.* 19.  It is clear from the December 31, 2012 agreement between N8 Medical and N8 Pharma that these entities formed a joint venture for the express purpose of pursuing a sublicense from Colgate.  N8 Medical acted under the flag of that joint venture in its efforts after December 31, 2012 to obtain a sublicense from Colgate.  Facts arising from that effort are embedded in N8 Medical's current allegations and claims. (*See* First Amended Complaint of N8 Medical, Dkt # 66, at ¶¶ 7, 10, 13, 26, and 40b) As N8 Medical's joint venture partner in that effort, N8 Pharma is a necessary and indispensable party to the case against Colgate. *See, Cross Timbers Oil Company v. Rosel Energy, Inc.,* 167 F.R.D. 457, 460 (D. Kan. 1996)(absent joint venturers in oil and gas wells were necessary and indispensable); *Ente Nazionale Idrocarburi v. Prudential Securities Group*, 744 F. Supp. 450 (S.D.N.Y. 1990).

### C.     <u>Intervenor's Interests Are Not Adequately Represented By Existing Parties</u>.

Lastly, no existing party can adequately represent and protect Intervenor's interests.  As to N8 Pharma's rights, N8 Medical is trying to litigate rights that it now longer owns, but that now belong to N8 Pharma.  That improper effort is in fact the impetus for N8 Pharma's proposed declaratory relief claim. No other party – or non-party, for that matter – would have standing to bring such a declaratory relief claim to have the respective rights of N8 Pharma and N8 Medical declared. N8 Medical cannot adequately represent and protect those rights. Moreover, BYU cannot adequately represent N8 Pharma's interests, because BYU is the licensor and not involved in any issue in this case that would necessarily require BYU to take one side or the other.  Moreover, N8 Pharma is a joint venture partner of N8 Medical, a status that, even as licensor, BYU simply cannot protect or represent in this case.  In reality, no existing party can do what need to be done in this case to protect and vindicate N8 Pharma's rights as a licensee and joint venture partner.

### III.   <u>CONCLUSION</u>

No existing party can enforce the rights of Intervenor in this case.   This Court should grant Intervenor's reasonable request to intervene and participate in this case as a party plaintiff.

DATED July 28, 2014

SMITH LC

*/s/ Steven C. Smith*　　　　　
Steven C. Smith
Richard R. Thomas (Pro Hac Vice Pending)
Stephen C. Biggs (Pro Hac Vice Pending)
4505 East Chandler Boulevard, Suite 290
Phoenix, Arizona 85048

Michael A. Schern (Pro Hac Vice Pending)
SCHERN RICHARDSON FINTER
DECKER, PLC
1640 South Stapley Drive, Suite 132
Mesa, Arizona 85204

*Attorneys for Proposed Intervenor*
*N8 Pharmaceuticals, Inc.*

# EXHIBIT A

Steven C. Smith, Bar No. 04508
Richard R. Thomas (Pro Hac Vice Pending)
Stephen C. Biggs (Pro Hac Vice Pending)
SMITH LC
4505 East Chandler Boulevard, Suite 290
Phoenix, Arizona 85048
T: 480-361-8575
F: 480-350-7309
E: ssmith@smith-lc.com
E: rthomas@smith-lc.com
E: sbiggs@smith-lc.com

Michael A. Schern (Pro Hac Vice Pending)
SCHERN RICHARDSON FINTER DECKER, PLC
1640 South Stapley Drive, Suite 132
Mesa, Arizona 85204
T: 480.630.3864
E: mike@srfdlaw.com

*Attorneys for Intervenor*
*N8 Pharmaceuticals, Inc.*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| N8 MEDICAL, INC.<br><br>Plaintiff,<br><br>and<br><br>BRIGHAM YOUNG UNIVERSITY,<br><br>Plaintiff-Intervenor,<br><br>and<br><br>N8 PHARMACEUTICALS, INC.,<br><br>Plaintiff-Intervenor,<br><br>v.<br><br>COLGATE-PALMOLIVE COMPANY,<br><br>Defendant. | Case No. 2:13-cv-01017-BSJ<br><br><br>**[PROPOSED] PLAINTIFF-INTERVENORS N8 PHARMACEUTICALS, INC.'S COMPLAINT AND CROSS-CLAIM IN INTERVENTION** |

1

and

N8 PHARMACEUTICALS, INC.,

Cross-Plaintiff/ Intervenor

v.

N8 MEDICAL, INC.,

Cross-Defendant in Intervention

Plaintiff-Intervenor, N8 Pharmaceuticals, Inc. ("N8 Pharma") hereby brings the following claims against Defendant Colgate-Palmolive Company ("Colgate"). In addition, N8 Pharma brings the following cross-claim against co-plaintiff, N8 Medical, Inc. ("N8 Medical").

## I.   <u>INTRODUCTION</u>

1.      Plaintiff N8 Pharma brings Count One and Two of this  complaint to enforce their separate, individual rights against Colgate.  A portion of the background for this complaint can be found in the complaints already filed by N8 Medical, Inc. and Brigham Young University. However, N8 Pharma's rights are unique.  Only N8 Pharma can pursue and effectively protect those rights, for the reasons set forth herein.

2.      N8 Pharma brings Count Three of this complaint against co-plaintiff N8 Medical to obtain declaratory relief to resolve the dispute regarding the respective CSA license rights of N8 Pharma and N8 Medical that are the subject of this action.

## II.   <u>THE PARTIES</u>

3.      Plaintiff N8 Pharma is a Nevada corporation with its principal place of business in the state of Utah.

4.      Cross-Defendant N8 Medical, Inc. is a Nevada corporation with its principal place of business in the state of Ohio.

5.      Defendant Colgate is a Delaware corporation with its principal place of business in the state of New York.

### III.      JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over the claims of N8 Pharma under 28 U.S.C. § 1332, because there is complete diversity and the amount in controversy exceeds $75,000. For purposes of Count Three, in the event N8 Medical, Inc. is deemed to be a citizen of Nevada, this Court has ancillary jurisdiction over Count Three.

7.      Colgate transacts, and has transacted, business within this state and has otherwise caused injury to occur in this state. This Court has personal jurisdiction over Colgate pursuant to Utah's long-arm statute, U.C.A. 1953, § 78B-3-205.

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) and (2).

### IV.      FACTUAL BACKGROUND

9.      On or about September 10, 2010, N8 Medical LLC, entered into an exclusive license ("original N8 Medical license") with Brigham Young University ("BYU") for certain intellectual property rights in cationic selective antimicrobials ("CSAs"). N8 Medical subsequently assigned its rights under that license to N8 Medical, Inc. N8 Medical, LLC, and N8 Medical, Inc. shall be referred to collectively as N8 Medical.

10.      After entering into the exclusive license with BYU, N8 Medical began negotiating with Colgate for the purpose of licensing certain aspects of CSA use to Colgate. At the time it began these negotiations and dealings with Colgate, and continuing through 2011 and into 2012, N8 Medical offered and involved its license rights for all oral human uses of CSAs, including toothpaste, mouthwash, and mouth rinse. In connection with these negotiations and dealings, N8 Medical entered into a Confidential Disclosure Agreement ("MCDA") and a material transfer agreement, with amendments ("the first MTA") with Colgate, for the purpose of furthering its

3

negotiations with Colgate for the licensing of certain rights to the CSAs, including all oral uses, including toothpaste.

11.     Relying upon the foregoing agreements, N8 Medical made a confidential and limited transfer of CSA-13 and CSA-44 to Colgate for limited testing and evaluation purposes, including CSA uses for which N8 Pharma would eventually receive the rights, including toothpaste.

12.     The MCDA and the first MTA referred to above protected the confidential information related to CSA uses for which N8 Pharma would eventually receive the rights, including toothpaste.

13.     On June 4, 2012, CSA Biotechnologies, LLC ("CSA Biotech") acquired all of the outstanding stock of N8 Pharma.

14.     Thereafter, on August 3, 2012, BYU amended the original N8 license.  BYU "split" the original N8 license by entering into an amended exclusive license agreement with N8 Medical ("the amended N8 Medical license") and a new exclusive license agreement with N8 Pharma ("the N8 Pharma license").

15.     In the amended N8 Medical license, BYU limited N8 Medical's licensed rights to CSAs.  For example, the amended N8 Medical license granted to N8 Medical rights to CSAs for mouthwash and mouth rinse for 18 months.  The amended N8 Medical license granted N8 Medical no rights in other oral care uses, in particular toothpaste.

16.     In the N8 Pharma license, BYU granted to N8 Pharma broad rights to CSAs, including all oral uses except for mouthwash and mouth rinse.  However, the N8 Pharma license granted to N8 Pharma the rights to CSA mouthwash and mouth rinse use if, after 18 months, N8 Medical had not licensed that use to Colgate ("the 18 month option").

17.     Thus, prior to the N8 Pharma license, N8 Medical had been negotiating and dealing with Colgate for rights that, on August 3, 2012, were taken from N8 Medical and granted to N8 Pharma in the N8 Pharma license.  After August 3, 2012, without the consent of at least N8 Pharma, N8 Medical had no right to negotiate with Colgate regarding any oral care use for CSAs other than mouthwash and mouth rinse.

18.     Therefore, any and all negotiations and agreements relating to CSA oral uses other than mouth wash and mouth rinse uses that N8 Medical and Colgate engaged in or entered into prior to the N8 Pharma license inured to the benefit of N8 Pharma, including but not limited to the MCDA and the first MTA.

19.     As a successor in interest to rights previously owned by N8 Medical under the original N8 Medical license, N8 Pharma is entitled to enforce any and all agreements relating to CSA oral uses other than mouth wash and mouth rinse uses entered into between N8 Medical and Colgate prior to the N8 Pharma license, including but not limited to the MCDA and the first MTA.

20.     At the time of the amended N8 Medical license, N8 Medical lost the right to protect and enforce any and all agreements relating to CSA oral uses other than mouth wash and mouth rinse uses entered into between N8 Medical and Colgate prior to the N8 Pharma license, including but not limited to the MCDA and the first MTA.

21.     On December 6, 2012, N8 Medical entered into a new material transfer agreement with Colgate ("the second MTA").  N8 Medical has refused to give N8 Pharma a copy of that 2012 MTA.  However, upon information and belief, N8 Pharma alleges that the second MTA purports to protect CSA information related to the CSA uses included in and covered by the N8 Pharma license.  Furthermore, N8 Medical entered into the second MTA with Colgate during a time when N8 Medical and N8 Pharma understood and intended that the two entities would

5

pursue the sublicense to Colgate within a joint venture.  Thus, the second MTA was intended to benefit the joint venture of N8 Pharma and N8 Medical and protect the rights of both N8 Medical and N8 Pharma.  N8 Pharma is entitled to enforce the second MTA.

22.     N8 Medical and N8 Pharma promptly memorialized their intent to form and pursue a joint venture. On December 31, 2012, N8 Medical and N8 Pharma entered into a joint venture agreement for the express purpose of pursuing a sublicense with Colgate for CSA rights licensed separately to N8 Pharma and N8 Medical.

23.     Following the formation of that joint venture and execution of the joint venture agreement, N8 Medical continued negotiations and dealings with Colgate for the express purpose of benefiting the joint venture with N8 Pharma.

## V.      CLAIMS FOR RELIEF

### CLAIMS AGAINST COLGATE

### COUNT ONE

**(Breach of Contract)**

24.     Plaintiff incorporates herein all foregoing paragraphs of this Complaint.

25.      Before August 3, 2012, N8 Medical and Colgate entered into agreements intended to protect the confidential, trade secret information related to the original N8 Medical license, namely the MCDA, the first MTA, and the second MTA ("the Agreements").

26.     As alleged herein, N8 Pharma is entitled to enforce the Agreements.

27.     Each of the Agreements contains an implied covenant of good faith and fair dealing.

28.      Starting in December 2011, Colgate secretly filed four patent applications regarding CSAs, intending to misappropriate confidential, trade secret information regarding CSAs that had been the subject of the Agreements.

6

29.     On December 21, 2011, Colgate secretly filed an International Patent Application (PCT/US2011/066482)("PCT Application").  On July 25, 2013, Colgate caused and allowed the PCT Application to be published, knowing that the publication would expose confidential and trade secret information of N8 Medical regarding CSAs to the public and thereby jeopardize the confidential nature of that information.

30.     By filing and publishing the PCT Application, Colgate breached the Agreements, including the implied covenant of good faith and fair dealing in each of the Agreements.

31.     On December 12, 2012, Colgate filed a Taiwan patent application (TW201332581) regarding CSAs.

32.     By filing the Taiwan patent application, Colgate breached the Agreements.

33.     On December 20, 2012, Colgate filed an Argentina patent (P12 01 04872) and a Venezuela patent application (1637-12) regarding CSAs.

34.     By filing the Argentina and Venezuela patent applications, Colgate breached the Agreements.

35.     As a direct and proximate result of Colgate's breaches of contract, as alleged herein, N8 Pharma has been damaged in an amount not less than $30,000,000.

WHEREFORE, N8 Pharma prays for judgment against Colgate as follows:

A.     For all direct and consequential damages, in an amount to be established at trial, but in no event less than $30,000,000;

B.     For Plaintiffs' costs and reasonable attorney's fees;

C.     For all appropriate injunctive required and/or allowed under the Agreements for Colgate's misconduct; and

D.     All other relief justified under the circumstances of this case.

## COUNT TWO

(Trade Secret Misappropriation)

36.     Plaintiff incorporates herein all foregoing paragraphs of this Complaint.

37.     As alleged herein, by means of the Agreements, Colgate acquired trade secret information regarding CSAs that BYU has licensed to N8 Pharma through the N8 Pharma license ("N8 Pharma trade secrets").

38.     The N8 Pharma trade secrets derived and derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

39.     The N8 Pharma trade secrets were and have been continually the subject of reasonable efforts to maintain their secrecy, including but not limited to the Agreements.

40.     As alleged herein, through improper means, Colgate misappropriated the N8 Pharma trade secrets without express or implied consent.

41.     As alleged herein, Colgate's misconduct constitutes intentional trade secret misappropriation under Utah Code Ann. §13-24-2, et seq.

42.     As a direct and proximate result of Colgate's misappropriation, N8 Pharma has been damaged. In particular, but not by way of limitation, Colgate's improper patent applications, as set forth above, expose and contain trade secret information of N8 Pharma, rendering that trade secret information susceptible to being "prior art." Colgate's improper applications thus jeopardize the ability of N8 Pharma to protect and develop its respective license rights in the manner envisioned by its  license and as allowed by law.  In this manner, and in other ways, Colgate has impaired the present value of the CSA license and patent portfolio rights of N8 Pharma.

43.     In misappropriating the N8 Pharma trade secrets, Colgate acted willfully and maliciously, justifying the imposition of exemplary damages under Utah Code Ann. §13-24-4.

WHEREFORE, N8 Pharma prays for judgment against Colgate as follows:

A.      For all direct and consequential damages allowed by law, including but not limited to Utah Code Ann. §13-24-4, including a reasonable royalty, in an amount to be established at trial, but in no event less than $30,000,000;

B.      For Plaintiff's costs and reasonable attorney's fees under Utah Code Ann. §13-24-5;

C.      For exemplary damages under Utah Code Ann. §13-24-4 in an amount not to exceed twice the amount of the award in A above;

D.      For all appropriate injunctive relief required and/or allowed under the Agreements or under Utah Code Ann. §13-24-3 for Colgate's misconduct; and

E.      For all other relief justified under the circumstances of this case.

## CLAIM AGAINST N8 MEDICAL

## COUNT THREE

(Declaratory Judgment)

44.     Plaintiff incorporates herein all foregoing paragraphs of this Complaint.

45.     An actual controversy exists between N8 Pharma and N8 Medical regarding the nature and scope of their respective CSA license rights.  N8 Pharma contends that N8 Medical's current claims against Colgate include claims and remedies for which N8 Pharma has exclusive standing to assert by virtue of the N8 Pharma license.  N8 Medical contends that N8 Pharma has no such rights and has no interest in N8 Medical's claims against Colgate.

46.     An actual controversy exists between and among N8 Pharma and  N8 Medical regarding the nature, ownership, and future disposition of the confidential trade secret information that is the subject matter of this case, as alleged herein.

47.     Therefore, under 28 U.S.C. § 2201, this Court may declare the rights and legal relations for, among, and between N8 Pharma and N8 Medical.

WHEREFORE, N8 Pharma prays for an order from this Court as follows:

A.      Declaring that N8 Pharma has standing to assert claims under the Agreements;

B.      Declaring the nature of the claims asserted by N8 Medical in this case for which N8 Pharma has standing to assert;

C.      Declaring that N8 Pharma has standing to assert claims against Colgate for misuse of trade secret information;

F.      Declaring the nature of the trade secret information at issue in this case, including N8 Pharma's ownership of trade secret information transferred to Colgate under the Agreements that relates to uses covered by the N8 Pharma license;

G.      Declaring the respective rights of N8 Pharma and N8 Medical under their joint venture agreement;

H.      For Plaintiffs' costs and reasonable attorney's fees; and

I.      For all other relief justified under the circumstances of this case

DATED July 28, 2014.

SMITH LC


 */s/ Steven C. Smith*
Steven C. Smith
Richard R. Thomas (Pro Hac Vice Pending)
Stephen C. Biggs (Pro Hac Vice Pending)
4505 East Chandler Boulevard, Suite 290
Phoenix, Arizona 85048

Michael A. Schern (Pro Hac Vice Pending)
SCHERN RICHARDSON FINTER
DECKER, PLC
1640 South Stapley Drive, Suite 132
Mesa, Arizona 85204

*Attorneys for Intervenor*
*N8 Pharmaceuticals, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing **AMENDED MOTION TO INTERVENE BY N8 PHARMACEUTICALS, INC. AND SUPPORTING MEMORANDUM** was filed with the Court on July 28, 2014and served via ECF on all parties who have requested notice:

Brent O. Hatch, Esq.
Mark F. James, Esq.
HATCH. JAMES & DODGE PC
10 West Broadway, Suite 400
Salt Lake City, UT 84101
*Attorneys for Plaintiff N8 Medical, Inc.*

Paul J. Dobrowski, Esq.
Frederick T. Johnson, Esq.
C. Gerard Harrison, Esq.
Cody Stafford, Esq.
DOBROWSKI, LARKIN & JOHNSON L.L.P
4601 Washington Avenue, Suite 300
Houston, TX 77007
*Attorneys for Plaintiff N8 Medical, Inc.*

David L. Mortensen, Esq.
Jill M. Pohlman, Esq.
Kenneth B. Black, Esq.
STOEL RIVES
201 South Main Street, Suite 1100
Salt Lake City, UT 84111
*Attorneys for Defendant Colgate-Palmolive Company*

Robert S. Clark, Esq.
Gregory M. Hess, Esq.
Sara M. Nielsen, Esq.
PARR BROWN GEE & LOVELESS
185 South State Street, Suite 800
Salt Lake City, UT 84111
*Attorneys for Intervenor Brigham Young University*

/s/ Kaylene Canaan

9