Brent O. Hatch (5715)
   bhatch@hjdlaw.com
Mark F. James (5295)
   mjames@hjdlaw.com
**HATCH, JAMES & DODGE, P.C.**
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone:  (801) 363-6363

Paul J. Dobrowski (*Pro Hac Vice*)
   pjd@doblaw.com
Frederick T. Johnson (*Pro Hac Vice*)
   fjohnson@doblaw.com
C. Gerard Harrison (*Pro Hac Vice*)
   gharrison@doblaw.com
Cody Stafford (*Pro Hac Vice*)
   cstafford@doblaw.com
**DOBROWSKI, LARKIN & JOHNSON L.L.P.**
4601 Washington Avenue, Suite 300
Houston, Texas 77007
Telephone:  (713) 659-2900

*Attorneys for Plaintiff N8 Medical, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **N8 MEDICAL, INC.,** | |
| **Plaintiff,** | **PLAINTIFF N8 MEDICAL INC.'S SECOND AMENDED COMPLAINT** (Jury Trial Demanded) |
| **and** | |
| **BRIGHAM YOUNG UNIVERSITY,** | **Case No. 2:13-cv-01017** |
| **Plaintiff-Intervenor,** **v.** | **Judge Bruce S. Jenkins** |
| **COLGATE-PALMOLIVE COMPANY,** | |
| **Defendant.** | |

This is an action brought by N8 Medical, Inc. ("N8 Medical") for itself, and as assignee of N8 Medical LLC against Colgate-Palmolive Company ("Colgate") for breach of certain Material Transfer Agreements covering proprietary materials and intellectual property rights in a novel class of compounds invented at Brigham Young University ("BYU") and licensed by BYU to N8 Medical for commercial development.  This amended complaint is filed on behalf of Plaintiff N8 Medical and alleges its claims for breach of contract, violation of Utah's Uniform Trade Secret Act, unjust enrichment, conversion, unfair competition, negligence, gross negligence, fraud, and declaratory judgment arising out of Colgate's tortious conduct and its willful and substantial breaches of the Material Transfer Agreements.  N8 Medical is entitled to preliminary and permanent injunctive relief, as well as monetary damages, against Colgate as a result of Colgate's actions.

## THE PARTIES

1.      Plaintiff N8 Medical, Inc. is a corporation organized and existing under the laws of the State of Nevada with its headquarters and principal place of business in Columbus, Ohio.

2.      N8 Medical is a biopharmaceutical company focused on research and commercial development of a novel class of compounds known as either ceragenins, cationic steroid antibiotics, or CSAs (referred to herein as "ceragenins"), which have broad spectrum antimicrobial activity, as well as numerous other therapeutic activities and attributes of value in healthcare and other applications.

3.      N8 Medical holds a license from BYU for the commercial development of ceragenins in certain specified fields of use, including those relevant to this case (the "BYU License," a true and correct copy of which is attached hereto as Exhibit "A" and incorporated

herein by reference).  The BYU License replaced a prior license between BYU and N8 Medical, L.L.C. (the "N8LLC License" a true and correct copy of which is attached hereto as Exhibit "B" and incorporated by reference).[1]

4.      Defendant Colgate is a corporation organized and existing under the laws of the State of Delaware with its headquarters and principal place of business located in New York City, New York.  Colgate is one of the leading global companies in oral health.  Colgate has appeared and answered in this case.

5.      Plaintiff-Intervenor BYU is Utah non-profit corporation and institution of higher education.  Its principal campus and place of business is located in Provo, Utah, 84602.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship between Colgate, on the one hand, and N8 Medical, on the other hand, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

7.      The Court has personal jurisdiction over Colgate because Colgate is a foreign corporation authorized to do business in the State of Utah that derives millions of dollars annually from the sale of its toothpaste, mouthwash, and others products in the State of Utah.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), as Colgate "resides" in this District within the meaning of 28 U.S.C. § 1391(c)(2).  Further, a substantial part of the events giving rise to this action occurred within this District as the relevant

---

[1] N8 Medical LLC, which is not a party to this suit, is a subsidiary of Plaintiff N8 Medical.  It is a limited liability company organized under the laws of Nevada with its principal place of business in Columbus, Ohio.  Its sole member is N8 Medical.

ceragenins were discovered, invented, and developed within this District and the compounds were shipped from this District to Colgate for its testing and evaluation.  Further, N8 Medical and its licensor BYU conduct substantial activity in this District regarding the licenses, property, and agreements at issue.

**RELEVANT BACKGROUND**

9.     N8 Medical entered into an Exclusive License Agreement with BYU in September 2010 ("BYU License").  Under the BYU License, BYU licensed to N8 Medical LLC all rights to ceragenins developed at BYU, including rights under four U.S. patents for the fields of use specified in the BYU License.  Exhibit "A" at 7, 26.  The BYU License was amended in August 2012, naming Plaintiff N8 Medical Inc., as licensee.

10.     In August 2010, Colgate approached BYU about a potential business relationship related to the incorporation of ceragenins into Colgate mouthwashes, mouth rinses, toothpastes, and other uses.  BYU referred Colgate to N8 Medical to discuss Colgate's interest in the technology.

11.     Colgate expressed its interest in reviewing the ceragenins licensed to N8 Medical and pursuing a possible business relationship.  Thereafter, N8 Medical LLC and Colgate entered into a Confidential Disclosure Agreement ("MCDA") on October 11, 2010 intended to facilitate an exchange of technical information between N8 Medical LLC and Colgate, while protecting each party's, and their affiliates', confidential and trade secret information (A true and correct copy of the Confidential Disclosure Agreement is attached hereto as Exhibit "C" and expressly incorporated hereunder by reference.).

12.     Shortly thereafter, N8 Medical LLC and Colgate negotiated, and eventually entered into, a Material Transfer Agreement (the "MTA") dated December 7, 2010.  N8 Medical LLC and Colgate amended the MTA on May 23, 2011 and again on December 7, 2011 (The MTA, as amended, is referred to as the "First MTA").  Among other things, the first amendment to the MTA authorized assignment of N8 Medical LLC's interest in the First MTA to its parent, N8 Medical (A true and correct copy of the First MTA, including its amendments, is attached hereto as Exhibit "D" and expressly incorporated hereunder by reference.).[2]

13.     N8 Medical LLC and Colgate entered into the First MTA and the Second MTA, as defined below, (collectively the "MTAs"), in order to allow N8 Medical LLC (and its assignee, Plaintiff N8 Medical)[3] to make a confidential and limited transfer of ceragenins (CSA-13 and CSA-44) to Colgate for limited testing purposes, as well as to provide Colgate access to N8 Medical's information and confidential information regarding all ceragenins, while at the same time protecting and safeguarding N8 Medical's extremely valuable proprietary information and ceragenin compounds.  Colgate desired access to the ceragenin compounds and to N8 Medical's information for the purpose of researching and evaluating the potential use and benefit of using the ceragenins as a key ingredient in oral care mouthwash formulations and potentially other oral care formulations and products, such as toothpaste.  At all times material to this Complaint, Colgate was aware that the use of ceragenin compounds for oral healthcare applications was just one of many potential applications of the ceragenin technology and that N8

---

[2] In addition, N8 Medical LLC assigned all contracts and claims related to agreements between N8 Medical LLC and Colgate to Plaintiff N8 Medical, to the extent not previously so assigned.  A true and correct copy of the Assignment of Contracts and Claims is attached hereto as Exhibit "E" and incorporated herein by reference.

[3] Except where specificity is necessary to understand a sequence of events, "N8 Medical" refers to N8 Medical LLC and N8 Medical, collectively.

Medical was actively pursuing use of these compounds for other high value healthcare applications.

14.     In addition to its obligations under the MTAs, Colgate also agreed to protect the confidentiality of N8 Medical's Confidential Information, and by extension BYU's confidential information, under the MCDA (Exhibit "C" hereto), and incorporated by reference in the MTAs at Paragraph 8 (The MCDA, First MTA, and Second MTA are collectively referred to as the "Agreements").

15.     The terms of the MTAs are materially identical insofar as they relate to this lawsuit.  Specifically, the Second MTA, like the First MTA, provided that the parties were voluntarily entering into that agreement "for the express benefit of third-party BYU."  Second MTA ¶ 27.

16.     The ceragenins and materials provided to Colgate were invented and developed by BYU in Utah, and certain CSA-13 and CSA-44 ceragenin compounds were shipped on behalf of N8 Medical from contractor and licensor BYU in Utah to Colgate for testing and evaluating pursuant to the Agreements.

17.     Under the terms of the First MTA, N8 Medical LLC initially shipped to Colgate ceragenins CSA-13 and CSA-44 around approximately the year end of 2010 and Colgate began to test and examine them.  N8 Medical shipped several additional shipments of CSA-13 and CSA-44 over the term of the MTAs.

18.     The First MTA also provided that the parties were voluntarily entering into that agreement "for the express benefit of third-party BYU."  First MTA ¶ 27.

19.     On several occasions, Colgate reported to N8 Medical that the results of its studies and experiments were positive and Colgate wanted to proceed towards a business relationship between the companies.

20.     Although unknown to N8 Medical at the time, on or about December 21, 2011, Colgate secretly pursued its interest in the ceragenins licensed to N8 Medical by filing an International Patent Application (PCT/US2011/066482) (the "PCT Application").   The PCT Application is in contravention of Colgate's contractual obligations to N8 Medical, and to the detriment of N8 Medical, as discussed below in this Complaint.

21.     The PCT Application also violated intellectual property rights owned by BYU, which is the owner of the intellectual property rights of the technologies licensed to N8 Medical. Pursuant to paragraph 7.b(4) of the First MTA, Colgate was obligated to provide written notice of the PCT Application before filing and at a minimum, obtain a license agreement on commercially reasonable terms from N8 Medical.  Colgate failed to do so.

22.     While secretly pursuing patents based on the ceragenins licensed to N8 Medical, Colgate entered into a second Material Transfer Agreement with N8 Medical, Inc. (the "Second MTA"), effective December 6, 2012 (A true and correct copy of the Second MTA is attached hereto as Exhibit "F" and expressly incorporated hereunder by reference.).

23.     Colgate and N8 Medical met in person on December 11, 2012, in the personal conference room of Ian Cook, Colgate's CEO, in New York City.  Colgate's technical team, Colgate's Chief Technology Officer, the heads of Colgate's Oral Health Technology Division, Consumer Products Technology Division, Licensing, Regulatory, and other Colgate business people attended.  At that meeting, Colgate presented data to N8 Medical showing that Colgate's

testing of ceragenins had produced very impressive results, with CSA-13 showing superior performance to all other Colgate tested antimicrobials and formulations in the three primary areas of importance for a mouthwash: antimicrobial efficacy, anti-inflammatory activity, and antimalodor (bad breath).  Colgate indicated that it had never obtained such promising results in a compound that appeared to be safe, and the ceragenin compounds showed fast time-kill, longevity of kill, and efficacy in mouthwash formulations that they tested that were over a year old. Colgate was also positive about the initial human testing that they completed in Thailand. The Colgate CTO stated that Colgate was ready to go "all in" on the ceragenin technology, and that they were prepared to finalize the terms of a license agreement by the end of January 2013.

24.     Consistent with Colgate's representations that the evaluation of the ceragenins was positive, Colgate provided N8 Medical with a template license term sheet for the license of ceragenins with terms of a royalty agreement with N8 Medical for up to 5% on sales of Colgate's mouthwash consumer products and 10% on sales of Colgate's professional mouthwash products alone.  A true and correct copy of the license term sheet is attached hereto as Exhibit "G" and expressly incorporated hereunder by reference.  The parties agreed that they would work to memorialize the terms of the license agreement in January 2013.

25.     Colgate indicated a willingness to pay significantly more than its current antimicrobials for the ceragenin technology, stability of aged ceragenin material, and discussed a strategy for entering territories outside the United States quickly where the ceragenin compounds would be regulated as a cosmetic ingredient and allow a more expedited path to market.

26.     Based on the licensing term sheet Colgate provided to N8 Medical, the proposed range of royalty it was prepared to pay N8 Medical, Colgate's representations to N8 Medical,

publicly disclosed information showing that Colgate's mouthwash products occupy in excess of a 22% market share of worldwide (ex-US) sales, and that ceragenins would be incorporated into these products.  Publicly available records and information indicate that Colgate has annual revenues in excess of $17 billion of which over $8 billion is from sales of its oral healthcare products including toothpaste and mouthwash.  Based on the foregoing and the licensing terms provided to N8 Medical, the proposed range of royalty Colgate was prepared to pay N8 Medical, Colgate's representations to N8 Medical and that ceragenins would be incorporated into these products, N8 Medical could reasonably expect initial royalties in the range of $30 million per year and increasing thereafter as sales of Colgate products increased.  Moreover, those royalties likely would have increased dramatically as Colgate incorporated the ceragenins licensed to N8 Medical into other oral care products, including toothpaste.

27.     Colgate's reports and communications to N8 Medical concerning the efficacy, characteristics and stability of ceragenins to be used in Colgate product applications were positive.  Colgate informed N8 Medical that it would aggressively pursue the launch of a ceragenin—containing mouthwash and gave an initial estimate of ceragenin material required for initial launch, primarily outside the United States.  N8 Medical indicated that it would begin making preparations to meet Colgate's desired volume.

28.     On December 12, 2012, unbeknownst to N8 Medical, Colgate filed its Taiwan patent application (TW201332581).  On December 20, 2012, Colgate filed its Argentina (P12 01 04872) and Venezuela (1637-12) patent applications (The PCT Application, Taiwan patent application, Venezuela patent application and Argentina patent application are collective referred to as the "Illicit Patent Applications").  Prior to the filing of the Illicit Patent Applications,

Colgate was required under paragraphs 7.b(4) and/or 7.b(5) to provide written notice of the applications and, at a minimum, obtain a license agreement on commercially reasonable terms from N8 Medical.  Colgate failed to do so.

29.     In 2013, Colgate performed additional testing on CSA-13 and CSA-44.   N8 Medical contacted Colgate on several occasions to inquire as to the status of the ceragenins project and to further pursue the royalty bearing licensing agreement that the parties were contemplating.

30.     Pursuant to paragraph 4 of the MTAs, Colgate was required to provide N8 Medical with "prompt written periodic reports" of its testing.  However, when N8 Medical pressed Colgate during the period of the Agreements for reasonable access to copies of the studies, protocols, methods and data, Colgate was unwilling, or unable, to produce such studies, protocols, methods and data.  Instead, Colgate indicated that it had already provided all summary information that they were willing to provide, and frequently evaded or did not respond to requests for reasonable access to the relevant data.

31.     Rather than negotiate in good faith concerning a licensing agreement or other acceptable business relationship, Colgate ultimately told N8 Medical that its ceragenins were not efficacious, were too expensive, too timely and costly to pursue regulatory approval, and inherently shelf life unstable.   Those representations were the opposite of prior Colgate communications, statements and representations, and inconsistent with all of the Colgate information that had been shared with N8 Medical previously.

32.     N8 Medical has requested the materials tested by Colgate, and the protocol and method of testing, so that N8 Medical might retest the materials to determine if Colgate's tests

were accurate or flawed.  Colgate has refused to cooperate in providing reasonable access to the protocol and testing method for confirmatory testing.

33. On information and belief, Colgate misrepresented the intent, nature, and precise methods and results of its testing, or skewed or directed the design or nature of the relevant testing, in order to discourage N8 Medical from pursuing its rights under the Agreements and to disparage the perceived value of ceragenins.

34. On information and belief, Colgate hid, misrepresented or skewed the methods or results of its testing, and the fact that it had secretly filed for patents based on the ceragenins licensed to N8 Medical in order to avoid having to pay N8 Medical any compensation (or pay materially less compensation), including a reasonable royalty or share of the profits for use of the ceragenins licensed to N8 Medical and other confidential and trade secret information.

35. On July 25, 2013, without N8 Medical or BYU's knowledge or consent, Colgate permitted the PCT Application to be published (the "PCT Publication").

36. At no time during the negotiations of the Second MTA, or at any time prior to the publication of the PCT Publication on July 25, 2013, did Colgate inform N8 Medical or BYU that it had breached the First MTA and Second MTA by filing the Illicit Patent Applications based on the ceragenins licensed to N8 Medical.

37. Therefore, in addition to the other damages to N8 Medical as a result of the Colgate's breach of the Agreements breach, patent filings and its improper publication of N8 Medical's confidential and trade secret information, lost royalties alone that N8 Medical would have been paid under a commercial arrangement with Colgate likely exceed $100 million.

38.     Colgate was also aware that N8 Medical, under any scenario, would be the supplier of ceragenins to Colgate.  N8 Medical has been damaged by the loss of ceragenin sales.

39.     Because Colgate's actions have been intentional and malicious, N8 Medical is entitled to exemplary damages on certain of its claims.

### TERMS OF THE RELEVANT AGREEMENTS

40.     The MTAs provide (among other things) that:

a.     Materials are defined as Ceragenin (cationic steroid antibiotic) compounds, including any available composition of matter containing or based on derived compounds, and any available formulations or chemical modifications thereof. Materials being provided include, but are not necessarily limited to the following:  CSA-13 and CSA-44 (First WHEREAS clause and Exhibit "A" attached to MTAs).

b.     Colgate was to conduct specific "research" and testing "to evaluate efficacies of the [ceragenins]" related to "antimicrobial and anti-inflammatory activities" for eventual use in mouthwash and mouth rise, and potentially toothpaste, and other consumer products, for the purpose of evaluating a commercial agreement (Second and Third WHEREAS clause and Exhibit "B" attached to the MTAs).

c.     The ceragenins were being supplied to Colgate solely "for the purpose of permitting Colgate to evaluate the [ceragenins] and to determine Colgate's interest in entering into a commercial agreement" with N8 Medical (Third WHEREAS clause).

d.     Colgate "shall not" sell, transfer disclose or otherwise provided access to the Materials or any materials derived therefrom, to any person without the prior express written consent of N8. …" (¶ 1).

e.      Confidential Information means proprietary, tangible materials, such as compounds or product samples and proprietary commercial, scientific, technical, and business information relating to either party's materials' data, know-how, processes, formulations, product and procedures.  (¶ 8).

f.      Neither the Materials nor Confidential Information may be used by Colgate for commercial purposes.  (¶ 1).

g.      Colgate was not granted the rights to use or test ceragenins for any purpose beyond those specifically and expressly set forth in the Agreements, and Colgate was expressly prohibited from using the ceragenins and related confidential information for any commercial purpose or other purpose beyond those allowed by the Agreements.  (¶ 1).

h.      Colgate was required to inform N8 Medical at least quarterly regarding the status of its research and testing of the ceragenins provided by N8 Medical, and to provide reasonable access to its information and data to N8 Medical.  (¶ 4).

41.     Further, pursuant to paragraph 4, Colgate was required to (a) "provide N8 Medical with prompt written periodic reports attesting to Colgate's […] [r]esearch and its use of the [ceragenins]," (b) promptly and accurately inform N8 Medical of any and all final results or conclusions of its research testing, and (c) provide N8 Medical with "reasonable access" to all data generated by Colgate.  Despite the clear, express provisions of the MTAs, Colgate, in violation of the MTAs, has on several occasions refused to cooperate with N8 Medical and has repeatedly refused to provide N8 Medical with reasonable access to the data, studies and findings as required by the MTAs.

42.     Section 7 of the MTAs provides that Colgate "shall acquire no rights of any kind whatsoever with respect to any patents, copyrights, trademarks, trade secrets or other proprietary rights of N8 [Medical] or BYU as a result of [Colgate's] performance under [the Agreements] or otherwise, and that N8 [Medical] and BYU are, and shall remain at all times, the sole owners of the [ceragenins] and related know-how provided to [Colgate] by N8 [Medical]."

43.     Section 7 of the MTAs also provides that any inventions, processes, knowhow, trade secrets, improvements, other intellectual properties and other assets developed by Colgate (whether developed before or after Colgate received any ceragenins under the Agreements) that incorporate or include the ceragenins are treated as "Joint Inventions" of Colgate and N8 Medical as defined in the MTAs.  *See* ¶ 7.b(1), (3) and (4); provided, however, if any of the foregoing result from unauthorized use or actions of Colgate, the inventions are the sole property of N8 Medical and BYU pursuant to the MTAs. ¶ 7.b(7).  Further:

        a.      "Inventions" are any ideas, inventions, techniques, methods and other technology, whether or not patentable, developed as a result of or using or incorporating ceragenins. (¶ 7.b(1)).

        b.      If any Invention by Colgate incorporates, uses, was derived from the use or testing of, or includes ceragenins in any fashion, such Invention is a "Joint Invention", unless it was unauthorized.  ¶ 7.b(3), (4) and (7).  That is, even if Colgate develops an invention regarding or including ceragenins without any assistance or input from N8 Medical, such invention is still a Joint Invention of Colgate and N8 Medical.  However, the invention is the sole property of N8 Medical if such invention resulted from unauthorized activities of Colgate.

c.      The parties must cooperate for the purpose of filing and prosecuting all patent applications.  *Id*.

d.      With respect to any Joint Invention developed by Colgate, Colgate is required to "promptly report in writing to [N8 Medical] [the] Inventions it has developed."  *Id*.

e.      After Colgate "reports in writing to N8 Medical any Joint Invention, N8 Medical has ninety (90) days from receipt of the written notice of the invention to provide Colgate with either (1) written notice of its intent to jointly develop and/or market the Joint Invention with Colgate or (2) decline to jointly develop the Joint Invention and enter into a license agreement with Colgate on commercially reasonable terms.  *Id*.

44.     Pursuant to Section 7.b(5) of the MTAs Colgate is required "to refrain from any and all acts that may jeopardize the patentability of any Joint Inventions" or that would disclose or jeopardize confidential information or trade secrets.  Pursuant to multiple provisions of the MTAs, N8 Medical is expressly entitled to compensation in the event that Colgate asserts sole title of ownership to any patent filing, or solely pursues a patent with respect to any Invention involving ceragenins.

45.     The MTAs prohibit Colgate from using the ceragenins for any purpose outside the express terms of the Agreements.  Colgate agreed to refrain from any unauthorized use of the ceragenins, Material Confidential Information and information regarding ceragenins.  Paragraph 7.b(7) of the MTAs relates to inventions that were done through the unauthorized activities of Colgate and provides:

a.      With respect to any unauthorized use, Colgate agreed to "promptly notify N8 [Medical] in writing of any" inventions, discoveries or innovations, whether patentable or

not, arising out of any unauthorized use of ceragenins and that such items will be "assigned to N8."

      b.    If any invention, discovery, or innovation by Colgate arises out of an unauthorized use, then the invention, discovery, or innovation shall be solely owned by N8 Medical.

      c.    The MTAs expressly state that Colgate is liable to N8 Medical for any claims, damages or liability of any kind due Colgate's unauthorized use of the ceragenins, Materials, related information and Confidential Information.

46.    Colgate improperly and unlawfully and in direct violation of the Agreements and of the rights and interests of N8 Medical and BYU, filed the Illicit Patent Applications claiming certain mouthwash formulations and other claims containing and/or related to ceragenins.

47.    The PCT Application, which Colgate allowed to be published on July 23, 2013, and the other three Illicit Patent Applications have jeopardized and had an adverse impact on N8 Medical's and BYU's pending and planned patent filings that are of significant commercial value. Despite the clear requirements of the Agreements, and in violation of them, Colgate never informed N8 Medical of Colgate's filing or publication of the Illicit Patent Applications or the PCT publication. Rather, Colgate had over the course of the Agreements taken systematic and continuous efforts to conceal from N8 Medical and BYU the fact that Colgate had filed the Illicit Patent Applications and caused the PCT Application to be published.

48.    Colgate's use of the ceragenins, Materials and Confidential Information in violation of the Agreements, including its unauthorized filing of the Illicit Patent Applications, constitutes an unauthorized use of the ceragenins licensed to N8 Medical, Materials and

Confidential Information in breach of the Agreements, and in violation of its intellectual property rights.

49.     Upon discovering that Colgate's had misappropriated and misused N8 Medical's intellectual property by illegitimately claiming sole ownership of inventions belonging entirely or in part to N8 Medical, and by wrongfully disclosing its trade secret and confidential information, N8 Medical filed this lawsuit, seeking damages and temporary and permanent injunctive relief.

50.     Thereafter, Colgate agreed to several areas of relief. Specifically, Colgate agreed to assign the PCT Patent Application to N8 Medical, and to desist from any other actions with respect to the PCT Application without N8 Medical's written consent.  The parties mutually agreed to protect each other's confidential information from disclosure and to preserve and protect all information and data in their custody or control regarding testing and evaluation of ceragenins.

51.     Shortly thereafter, N8 Medical discovered the previously hidden Taiwanese patent application.  When confronted with this discovery, and with a demand that Colgate completely disclose any and all such patent applications, Colgate finally disclosed the applications it had filed in Venezuela and Argentina.

52.     On February 6, 2014, Colgate assigned the PCT Application, along with the Illicit Patent Applications Colgate filed in Taiwan, Venezuela, and Argentina to N8 Medical, as well as all other patent applications not specifically identified therein, that "contain the same disclosure or claims" as the four expressly assigned patent applications.

## FIRST CAUSE OF ACTION
(Breach of Contract)

53.     Plaintiffs repeat and allege the foregoing Paragraphs as if fully restated hereunder.

54.     The terms of the Agreements were made by mutual assent and supported by adequate consideration.

55.     N8 Medical performed all of its obligations under the Agreements and has not materially breached any of the terms of the Agreements.

56.     By entering into the Agreements, Colgate and N8 Medical agreed, among other things, that (a) Colgate would comply with all the terms of the Agreements, (b) Colgate would not improperly use ceragenins, information or Confidential Information containing ceragenins, (c) Colgate would keep N8 Medical promptly and accurately informed of its research, testing, innovations, discoveries or inventions related to or derived from ceragenins, (d) with respect to any Joint Invention, Colgate would not on its own file for any patent and would report any invention in writing to N8 Medical before any patent application was filed, (e) any patent application at a minimum would be filed in the joint name of Colgate and N8 Medical, (f) after Colgate reported the joint invention to N8 Medical under the terms of the Agreement, N8 Medical would have at least ninety (90) days to provide Colgate with written notice of its intent to jointly develop and/or market the Joint Invention with Colgate or to negotiate a license agreement with Colgate for the development of the Joint Invention, (g) that Colgate would compensate N8 Medical for any invention it wished to patent arising from or relating to of ceragenins and N8 Medical decided to assign to Colgate, and/or (h) that if N8 Medical elected not to file a Joint Invention patent, Colgate would enter a reasonable royalty agreement with N8 Medical.

57.    While the relevant provisions of the Agreements were in full force and effect, Colgate undertook a series of experiments using the Materials that N8 Medical provided to it under the Agreements, and Colgate accessed and reviewed N8 Medical Confidential Information relating to ceragenins.

58.    As a result of those experiments, Colgate observed attributes of ceragenins that caused them to be prime candidates for the use in mouthwash or mouth rinse products and other personal care products for the reduction of malodor, anti-microbial activity and anti-inflammatory responses.

59.    Rather than complying with the provisions of the Agreements discussed above, and without N8 Medical's or BYU's knowledge or consent, Colgate secretly proceeded to file four patent applications: (a) the PCT Application; (b) the Taiwan application; (c) Venezuela application; and (d) the Argentina application.  In addition, Colgate failed to compensate N8 Medical as required by the parties' Agreements and did not negotiate (or even attempt to negotiate) a commercially reasonable royalty agreement with N8 Medical.

60.    Colgate's patent filings were unknown to N8 Medical and BYU, and neither N8 Medical nor BYU learned about the PCT Application until after it was published in late July of 2013.

61.    Colgate's patent filings falsely claim that Colgate is the sole owner of certain inventions regarding ceragenins set forth in the Illicit Patent Applications, in direct breach of the parties' Agreements.

62.    Colgate breached the Agreements, including, without limitation, by: (a) not providing N8 Medical prompt written notice(s) of inventions claimed by the Illicit Patent

Applications, (b) depriving N8 Medical of its rights regarding the inventions claimed by the Illicit Patent Applications under Section 7 of the Agreements, (c) filing the Illicit Patent Applications, (d) not being forthcoming with N8 Medical regarding reasonable access to its protocols, procedures, testing and discoveries with respect to ceragenins, (e) failing to negotiate a commercial agreement with N8 Medical and/or paying N8 Medical compensation prior to of filing the Illicit Patent Applications, (f) improperly using the Materials, information and Confidential Information, (g) failing to pay reasonable consideration for the Illicit Patent Applications , and (h) causing and/or allowing the publication of the PCT Application.

63.     Colgate breached its agreements with N8 Medical by breaching its duty of good faith and fair dealing.  Implied in the Agreements is a covenant of good faith and fair dealing, which requires the parties to the Agreement to act in a manner consistent with the intentions of the parties to the Agreements and to not act in such a manner as to deprive the other of the benefits of the parties' Agreements.  Colgate's failure to perform in good faith, including its bad faith refusal to negotiate a license agreement, as required under the MTAs, breached that duty of good faith and is the direct and proximate cause of damages to N8 Medical.

64.     As a direct and proximate result of Colgate's actions and breach of contract, N8 Medical has suffered and continues to suffer damages and economic losses, including negative business consequences, which include monetary damages for the compensation and benefits N8 Medical would have earned had Colgate complied with its obligations under the Agreements, monetary damages for any and all harm caused to N8 Medical's patent portfolio and intellectual property as a result of Colgate's unauthorized disclosure of Confidential Information and filing of the Illicit Patent Applications and the resultant publication of the PCT Application, as well as

substantial time, direct cost, delay and opportunity cost as a result of the circumstances and issues caused by Colgate's breaches.

65.     As a direct and proximate result of Colgate's actions in breach of the Agreements, N8 Medical is entitled to recover from Colgate monetary damages in excess of $100 million.  In addition, Colgate should be ordered to assign and otherwise correct the ownership of any patent application not already assigned and any patent that may result therefrom, based on, derived from, or connected to Colgate's unauthorized use of ceragenins, Materials and Confidential Information and assign all Inventions, data and information regarding ceragenins to N8 Medical.

## SECOND CAUSE OF ACTION
(Violation of the Uniform Trade Secret Act, Utah Code Ann. § 13-24-2, *et seq*. or, Alternatively Misappropriation of Trade Secret New York Law)

66.     Plaintiffs repeat and allege the foregoing Paragraphs as if fully restated hereunder.

67.     N8 Medical, during the course of its dealings with Colgate has maintained "trade secrets" related to the ceragenin materials and other Confidential Information.

68.     Each "trade secret" held by N8 Medical derived independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who could obtain economic value from its disclosure or use, and by obtaining substantial value from patenting such trade secrets.

69.     Certain of the trade secrets owned by N8 Medical included and/or were, in part, derived from trade secret information developed and owned by BYU.  BYU licensed those trade secrets to N8 Medical.  Colgate's disclosure and misuse of the licensed trade secret information has resulted in a permanent diminution of the value of N8 Medical's intellectual property.

70.     N8 Medical took reasonable efforts to maintain the secrecy of the "trade secrets." In fact, N8 Medical and Colgate expressly agreed that Colgate would maintain the confidentiality of the materials and information N8 Medical provided to Colgate.

71.     Colgate willfully and maliciously and in bad faith misappropriated N8 Medical's "trade secrets" by disclosing, using and causing and allowing publication of them without express or implied consent despite the fact that Colgate acquired the "trade secrets" under circumstances giving rise to a duty to maintain their secrecy and limit their use, and disclosing them in a manner that limited and diminished material value in such trade secrets.

72.     N8 Medical should be awarded attorney fees, injunctive relief, damages comprising actual loss, unjust enrichment, and/or a reasonable royalty for Colgate's unauthorized use and disclosure of the "trade secrets."

73.     Additionally, due to the malicious and willful character of Colgate's misappropriation, N8 Medical should be awarded punitive/exemplary damages pursuant to Utah Code Ann. § 13-24-4.

74.     Alternatively, these facts support a claim for damages and injunctive relief for misappropriation of N8 Medical's trade secrets and confidential information under New York law.  Colgate has obtained N8 Medical's confidential and trade secret information under an agreement, confidence, or duty not to use it for improper and unauthorized purposes, and is in violation of those agreements and duties.  As a result of Colgate's use of N8 Medical's trade secrets in violation of its agreements with N8 Medical and in violation of its duties of confidence, N8 Medical has suffered direct and consequential damages and is entitled to

compensation for actual loss, unjust enrichment, and/or a reasonable royalty for Colgate's misappropriation and unauthorized use and disclosure of the "trade secrets."

75.     In addition, because Colgate's conduct was willful and malicious, N8 Medical is entitled to punitive damages under New York law for Colgate's misappropriation, misuse, and disclosure of N8 Medical's trade secrets.

## THIRD CAUSE OF ACTION
(Unjust Enrichment – Utah and New York Law)

76.     Plaintiff N8 Medical repeats and alleges the foregoing Paragraphs as if fully restated hereunder.

77.     N8 Medical is entitled to recover from Colgate under Utah or, alternatively, New York law for unjust enrichment.  N8 Medical conferred a great benefit upon Colgate by, among other things, providing Colgate with, knowledge, information, and actual ceragenins, which Colgate has used in obtaining substantial know how and confidential knowledge, and including in filing the Illicit Patent Applications it improperly filed and caused to publish.

78.     Colgate was fully aware of the benefit conferred upon it by N8 Medical.

79.     Colgate accepted and retained the benefit from N8 Medical and has reaped, and in the future is able to reap, substantial benefits from the foregoing.  As set forth previously in this Complaint, Colgate has been unjustly enriched by its acceptance of the benefit conferred upon it by N8 Medical.  Under the circumstances, it would be inequitable for Colgate to retain those benefits.

80.     N8 Medical is entitled to restitution in the amount of Colgate's gain, including the value it has derived from the use and knowledge of N8 Medical's Confidential Information and ceragenins.

## FOURTH CAUSE OF ACTION
(Conversion Utah and New York Law)

81.     Plaintiffs repeat and allege the foregoing Paragraphs as if fully restated hereunder.

82.     N8 Medical is entitled to recover under Utah or, alternatively New York law, for conversion.

83.     BYU is the underlying owner of the ceragenin information, materials and compounds, and proprietary rights thereto, which have been licensed to N8 Medical.

84.     BYU lawfully licensed the rights to ceragenins for particular fields of use to N8 Medical, who in turn, lawfully provided limited rights to test and evaluate ceragenins to Colgate for specific research related to oral care, as described in the Agreements.

85.     The ceragenins and related information N8 Medical provided to Colgate are tangible property having substantial intellectual property and trade secret rights associated with them, including patent applications and other proprietary rights, which are also a form of chattel protectable under applicable law.

86.     By filing the Illicit Patent Applications, and by virtue of the PCT Application being published, Colgate willfully interfered with and wrongfully converted Plaintiffs' patents, trade secrets and information rights related to oral care uses and certain unique use and applications of ceragenins to its own use while depriving N8 Medical of its rightful ownership rights.

87.     N8 Medical has demanded that Colgate return all of N8 Medical's confidential information, but Colgate has not fully complied.

88.     Colgate's conversion of Plaintiffs' property was without lawful justification.

89.     As a direct and proximate result of Colgate's wrongful conduct, Plaintiffs have and will continue to suffer significant financial harm, irreparable harm to their patent portfolio, loss of opportunities, delay, direct cost, and use of resources, and thus are entitled to the fair market value of the converted property as of the date of conversion in addition to consequential damages.

90.     In addition to recovering the amount of damages N8 Medical has sustained and will in the future sustain as a result of Colgate's wrongful conversion, N8 Medical also is entitled to recover from Colgate punitive damages based on the willful conduct of Colgate undertaken in knowing violation of the rights of N8 Medical.

### FIFTH CAUSE OF ACTION
(Unfair Competition – New York Law)

91.     Plaintiffs repeat and allege the foregoing Paragraphs as if fully restated hereunder.

92.     By misusing the trade secret, Confidential Information and Materials, N8 Medical provided to Colgate under the agreements between the parties, ignoring N8 Medical's rights, and by claiming sole ownership of inventions to which N8 Medical possessed joint title, Colgate misappropriated N8 Medical's (and through N8 Medical, BYU's) labor, creativity, skill, and investment.   This misappropriation deprived and continues to deprive N8 Medical of the commercial advantage created by the trade secrets, Confidential Information and Materials.

93.     Colgate's unfair competitive conduct has harmed N8 Medical economically, and N8 Medical is entitled to recover from Colgate the amount N8 Medical would have earned, including lost profits, but for Colgate's unfair competition.

94.     In addition, the threatened and actual loss of control over prosecution of patentable inventions now and in the future is irreparably harming N8 Medical's goodwill,

competitive position, and reputation as a business partner.  These injuries cannot be adequately compensated after the fact in monetary damages, alone.  N8 Medical is, therefore, entitled to permanent injunctive relief restoring to it the misappropriated property.

### SIXTH CAUSE OF ACTION
(Negligence and Gross Negligence – Utah and New York Law)

95.     Plaintiff N8 Medical repeats and alleges the foregoing Paragraphs as if fully restated hereunder.

96.     Alternatively, if Colgate's misuse and disclosures of N8 Medical's confidential and trade secret information was not intentional then it was negligent.

97.     Colgate owed N8 Medical a duty of reasonable care to protect the confidential information and materials entrusted to it.  It further owed N8 Medical a duty of reasonable care not to take actions that harmed N8 Medical's intellectual property rights, including United States and foreign patent rights.

98.     Colgate unilaterally undertook to disclose N8 Medical and BYU's confidential and trade secret information in patent applications.  Having taken this step, without either the contractual right or separate authority from N8, it became legally liable for any harm it caused to N8's property by this misuse, and assumed a duty to exercise the reasonable care necessary in the filing and prosecution of such patents such that those patent applications and the disclosures contained in them, did not damage N8's or BYU's  interests.

99.     Colgate failed to exercise the reasonable care to protect N8 Medical's and BYU's intellectual property when it filed the PCT Patent Application containing patent claims and disclosures that were inadequate to protect the full range of inventions anticipated by those claims and disclosures.  Colgate additionally breached its duty of care when it allowed the PCT

Patent Application to publish containing these inadequate patent claims. Colgate is a sophisticated biotechnology company with extensive patenting experience. It knew that allowing the PCT Patent Application to publish with inadequate claims could result in creating prior art that would reduce the scope of patent protection available to N8 Medical and BYU for ceragenin technology.

100. Further, Colgate knew that it had filed the patent applications, knew that N8 Medical was unaware of the filings, and knew, if the patent applications were published, that prior art and public disclosures would be created. Despite this awareness, Colgate permitted the patent applications to be published and failed—or refused—to inform N8. Indeed, Colgate did not inform N8 of the patent applications until after it cancelled the Second MTA.

101. Colgate's negligently drafting patent applications, and in allowing those patent applications to publish, directly and proximately caused harm to N8 by destroying the secrecy of N8 Medical's trade secrets and by diminishing N8's ability to obtain patent protection for its ceragenin technology.

102. In addition, Colgate failed to disclose and/or willfully concealed the PCT Application and the other Illicit Patent Applications for more than a year, during which time it continued to have contact with N8 Medical, including the negotiation and signing of the Second MTA. Throughout this time, N8 Medical might have prevented much of the irreparable harm to N8 Medical's and BYU's intellectual property, had Colgate been honest about its intention to claim sole ownership of the inventions disclosed in the Illicit Patent Applications or had Colgate exercised even the slight care required to notify N8 Medical and BYU of the existence of patent applications affecting their rights. Colgate's failure to observe even slight care and its reckless

disregard for the rights of N8 Medical and BYU evinces wanton disregard for N8 Medical's and BYU's rights, and smacks of intentional wrongdoing. Consequently, it amounts to gross negligence, for which N8 Medical is entitled to punitive damages in addition to direct and consequential damages.

**SEVENTH CAUSE OF ACTION**

(Fraud by Entering into a Contract with the Intent Not to Perform
– Utah and New York Law)

103.    Plaintiff N8 Medical repeats and alleges the foregoing Paragraphs as if fully restated hereunder.

104.    Colgate made false representations and omissions of material fact on which N8 Medical relied in entering into the Second MTA. Specifically, Colgate represented that it would perform the terms of the Second MTA, which carried forward existing obligations under the First MTA. At the time Colgate made these representations, it knew that it was in continuing breach of the First MTA. Those breaches, which Colgate failed to disclose to N8 Medical or, included, among other things, improper use and disclosure of N8 Medical's trade secret and confidential information and materials, misappropriation of N8 Medical's intellectual property rights, and failure to inform N8 Medical of the course and results of Colgate's testing are set out more fully in the preceding paragraphs.

105.    At the time it signed the Second MTA and the representations contained therein, Colgate never intended to perform its obligations under the Second MTA. Colgate failed to disclose its intent not to perform the Second MTA and its violations of obligations under the First MTA. Colgate's promises and omissions were done with a present intention not to perform, were designed to be relied upon by N8 Medical, and N8 Medical so relied. Further,

28

Colgate knew it was in breach of the First MTA at the time it signed the Second MTA.  It knew that the Second MTA carried forward the very terms it was violating and intended to immediately and materially breach the Second MTA.  Indeed, Colgate knew it was impossible for it to honor its promises under the Second MTA because it had already irrevocably violated the same promises under the First MTA.  Consequently, Colgate knew that it would be in breach of the Second MTA at the very moment it signed it and reaffirmed its prior commitments.

106.    But for Colgate's false promises, and omissions, N8 Medical would not otherwise have entered into the Second MTA.  As a result, N8 Medical suffered extensive damages.

107.    Colgate's fraudulent promise was knowing, willful, malicious, and evidenced wanton indifference to its civil obligations.   Consequently, N8 Medical is also entitled to punitive damages.

### EIGHTH CAUSE OF ACTION
**(Fraudulent Concealment – Utah and New York Law)**

108.    Colgate fraudulently concealed the material fact of its continuing breaches of the First MTA from N8 Medical when it induced N8 Medical to agree to the Second MTA.

109.    Colgate had a duty to disclose the material fact of its continuing breaches of the Agreements with N8 Medical.  This duty arises from its contractual duties of confidentiality and trust under the terms of the First MTA.  They also arise from out of Colgate's legal duties to not to misappropriate or misuse the confidential and trade secret information entrusted to by N8 Medical.   Furthermore, Colgate had a legal duty to disclose its intention to continue to misappropriate and misuse N8 Medical's intellectual property in breach of the Second MTA.

110.    Because Colgate concealed the material fact of its breaches of the Agreements and its intent to continue those breaches, N8 Medical entered into the Second MTA and

continued to entrust Colgate with its intellectual property and continued to pursue the Colgate relationship.  Furthermore, because Colgate fraudulently induced N8 Medical to enter into the Second MTA and to continue to entrust Colgate with its valuable intellectual property, the PCT Patent Application published and disclosed N8 Medical's and BYU's valuable confidential information.  Under the laws governing PCT applications, Colgate had the right to withdraw the application at any time within an 18 month period subsequent to filing.  The timely withdrawal of the PCT application would have prevented public disclosure of confidential information regarding the use of ceragenins for oral health applications, their potent anti-inflammatory effects as well as the synergistic effects with certain antimicrobials, which Colgate sought to patent and protect for its sole and exclusive use.  Colgate's deliberate, fraudulent concealment led directly to the publication of the PCT Patent Application and to the disclosure of N8 Medical's and BYU's valuable confidential information.

111.    As a result, N8 Medical and BYU suffered damage to their intellectual property rights.

112.    Colgate's fraudulent concealment was knowing, willful, malicious, and evidenced wanton indifference to its civil obligations.  Consequently, N8 Medical is also entitled to punitive damages.

## NINTH CAUSE OF ACTION – N8 AND BYU
### (Declaratory Judgment)

113.    Plaintiffs repeat and allege the foregoing Paragraphs as if fully restated hereunder.

114.    Plaintiffs seek a declaration of rights under Fed. R. Civ. P. 67 and 28 U.S.C. §§ 2201 and 2201.

115.   As a result of Colgate's misuse of confidential and trade secret information, including its filing of the PCT Patent Application, a controversy has arisen over the ownership of all patents, inventions, improvements, information, and materials, including records of all testing and development related to ceragenins.

116.   Plaintiffs seek a declaration that, pursuant to the terms of the Confidential Disclosure Agreement, the First MTA and the Second MTA, that they are the owners of all such patents, inventions, materials, information, and records.

117.   Plaintiffs also seek reasonable attorney's fees and costs of court.

**WHEREFORE**, Plaintiffs demand that judgment be entered in Plaintiffs' favor under each of the Causes of Actions herein pleaded and against Defendant as follows:

(i)     Monetary relief and damages in an amount exceeding the minimum jurisdictional amount of this Court;

(ii)    Punitive damages;

(iii)   Permanent Injunctive relief ordering that Defendant Colgate-Palmolive Company:

(1)   Assign to N8 Medical any patent applications relevant or related to the patent applications assigned to N8 Medical in the February 6, 2014 Assignment by Colgate not already disclosed and/or assigned to N8 Medical;

(2)   Do nothing that results in the impairment, diminution, rejection, or abandonment of any claims made in the PCT Application, the Taiwan Application, the Argentina Application or the Venezuela Application or any other patent applications based on or related to the materials and information subject to the MTAs or the Confidential Disclosure Agreement;

(3)     Take no other actions with respect to the above described patent applications without the express written consent of N8 Medical;

(4)     Promptly notify N8 Medical, no later than 5 business days and prior to any relevant deadline, of any activities or events that might affect the status of any of the above listed patent applications;

(5)     Preserve, protect, transfer and assign to N8 Medical all information and data in its possession, custody, or control, in whatever form such information may exist that reflects or relates to Colgate testing and evaluation of ceragenins, cationic steroid antimicrobials, cationic steroid antibiotics, or CSAs, and promptly provide N8 Medical copies and access to all such data and information;

(6)     Take no actions to further disclose N8 Medical's Confidential Information or Materials of N8 Medical or BYU, or to utilize Confidential Information or Materials, as defined in the agreements with N8 Medical; and

(7)     Provide, transfer and assign to N8 Medical all copies of laboratory notebooks, test protocols, test interpretation, data, information, internal invention disclosures, and internal documents relating to the drafting and filing of the Illicit Patent Applications and all ceragenin studies conducted.

(iv)    A declaration that, pursuant to the terms of the MCDA, the First MTA and the Second MTA, that N8 Medical and BYU are the owners of all patents, inventions, materials, information, data and records related thereto;

(v)     If appropriate, attorneys' fees and costs to prosecute this action;

(vi)    Pre- and post-judgment interest; and

(vii)   All other equitable and monetary relief this Court may deem just and proper.

Dated this 25th day of August, 2014.

Respectfully submitted,

By:     */s/ Paul J. Dobrowski*
        HATCH, JAMES & DODGE, PC
        Brent O. Hatch
        Mark F. James

        DOBROWSKI, LARKIN & JOHNSON L.L.P.
        Paul J. Dobrowski
        Frederick T. Johnson
        C. Gerard Harrison
        Cody Stafford

        *Attorneys for N8 Medical, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of August, 2014, I conventionally filed the foregoing with the Clerk of the Court and further certify that a copy has been sent by e-mail to the following:

Kenneth B. Black
    kbblack@stoel.com
Jill M. Pohlman
    jmpohlman@stoel.com
David L. Mortensen
    dlmortensen@stoel.com
**STOEL RIVES (UT)**
201 S. Main Street, Suite 1100
Salt Lake City, UT 84111-4904
Telephone:  (801) 328-3131

Robert S. Clark
    rclark@parrbrown.com
Gregory M. Hess
    ghess@parrbrown.com
**PARR BROWN GEE & LOVELESS**
185 South State Street, Suite 800
Salt Lake City, UT 84111
Telephone:  (801) 532-7840

*/s/ Paul J. Dobrowski*
Paul J. Dobrowski