Kenneth B. Black (#5588)
  Email: *kbblack@stoel.com*
Jill M. Pohlman (#7602)
  Email: *jmpohlman@stoel.com*
David L. Mortensen (#8242)
  Email: *dlmortensen@stoel.com*
STOEL RIVES LLP
201 S Main Street, Suite 1100
Salt Lake City, UT  84111
Telephone:  (801) 328-3131
Facsimile: (801) 578-6999

Attorneys for Defendant
Colgate-Palmolive Company

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF UTAH, CENTRAL DISTRICT**

| | |
|---|---|
| N8 MEDICAL, INC., <br><br>                Plaintiff, <br><br> BRIGHAM YOUNG UNIVERSITY, <br><br>                Plaintiff-Intervenor, <br><br>    and <br><br> N8 PHARMACEUTICALS, INC., <br><br>                Plaintiff-Intervenor <br><br>     v. <br><br> COLGATE-PALMOLIVE COMPANY, <br><br>                Defendant. | **DEFENDANT COLGATE-PALMOLIVE COMPANY'S MEMORANDUM IN OPPOSITION TO N8 MEDICAL, INC.'S AMENDED MOTION TO COMPEL AND OVERRULE PRIVILEGE ASSERTIONS** <br><br> 2:13-cv-01017-BSJ <br><br> The Honorable Bruce S. Jenkins |

Defendant Colgate-Palmolive Company ("Colgate") respectfully submits this memorandum in opposition to plaintiff N8 Medical, Inc.'s ("N8 Medical") Amended Motion to Compel and Overrule Colgate's Privilege Assertions (the "Motion to Compel").

## INTRODUCTION

The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law. *See Upjohn Co. v. U.S.*, 449 U.S. 383, 389, 101 S. Ct. 677, 582 (1981). The privilege applies to confidential communications between clients and their attorneys when the communication is made for the purpose of obtaining legal advice, and "such privileged communications are absolutely immune from discovery." *New York Times Newspaper Div. of New York Times Co v. Lehrer McGovern Bovis, Inc.*, 752 N.Y.S.2d 642, 645-46 (2002); *see also In re Grand Jury Proceedings*, 616 F.3d 1172, 1182 (10th Cir. 2010).

The purpose of the attorney-client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn*, 449 U.S. at 389. "The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." *Id.* Moreover, the privilege rests on the premise that the assistance of counsel "can only be safely and readily availed of when free from the consequences or the apprehension of disclosure." *Hunt v. Blackburn*, 128 U.S. 464, 470, 9 S. Ct. 125, 127 (1888).

N8 Medical seeks to invade Colgate's privilege by compelling the production of more than 300 documents in which legal advice or services from Colgate's in-house lawyers was provided or sought. Specifically, N8 Medical attempts to overrun Colgate's privilege by

contending that (1) certain charts and spreadsheets prepared by and at the request of Colgate's legal department and/or containing legal information provided by Colgate's legal department are not attorney-client communications, and (2) Colgate waived its privilege with regard to the issue of notice and thus N8 Medical is entitled to discover Colgate's privileged communications regarding its invention and patent applications.  Neither of N8 Medical's assertions has merit.  Colgate has properly asserted its privilege, and N8 Medical's motion to compel the production of Colgate's privileged communications should be denied.

## BACKGROUND

1. In December 2014, N8 Medical identified nearly 400 documents on Colgate's privilege log that N8 Medical claimed should be produced.

2. Colgate reviewed the documents identified by N8 Medical.  On January 5, 2015, Colgate sent counsel for N8 Medical two detailed lists describing which of those nearly 400 documents it would produce.  *See* Ltr. from D. Mortensen to P. Dobrowski (01/05/15), attached as Exhibit 1.  Colgate also provided N8 Medical with an amended privilege log along with additional explanation for the documents it continues to withhold on the basis of the attorney-client privilege.  *See id.*

3. Undeterred, N8 Medical filed its Motion to Compel.

## ARGUMENT

### I.   Colgate's Charts and Spreadsheets Are Privileged.

The first set of Colgate's privileged documents that N8 Medical seeks to compel are identified by N8 Medical as "spreadsheets or charts reflecting" Colgate's invention records and patent applications.  *See* Mot. [Dkt. 163] at 2.  N8 Medical contends that Colgate should be

compelled to produce these documents because (1) Colgate "offers no explanation for why (or how) they are privileged;" (2) "none of these documents involve [sic] a communication with an attorney;" and (3) none of the documents was made "for the purpose of obtaining or providing legal advice." *Id.* at 1-2.  N8 Medical is wrong on all three counts.

*First*, Colgate has explained to N8 Medical how and why these documents are privileged.  In its privilege log, Colgate identifies the documents as charts of invention records and patent status, charts of patent review, and/or charts of patent analysis containing legal information provided by and/or compiled or drafted by Colgate's legal/patent department.  *See, e.g.,* Colgate Privilege Log, attached as Exhibit 2 at (DUTHUMM00000401).  And, in response to N8 Medical's inquiries regarding these documents, Colgate further explained that these charts contain legal information provided by Colgate's legal counsel and/or were created by "Colgate's legal counsel and exchanged with Colgate's research departments providing legal opinions regarding patent opportunities and priorities." *See, e.g.,* Ex. 1, List A at 1.[1]

*Second*, Colgate's documents involve communications with an attorney.  As Colgate made clear from the descriptions contained in its privilege log and the additional spreadsheet prepared in response to N8 Medical's contention that these documents were not privileged, these charts and spreadsheets involved an attorney or legal information provided by Colgate's attorneys.  In fact, the legal information in these spreadsheets was created, edited and maintained

---

[1] *See also id.* List A at 1 (DUTHUMM00000401) ("This is a patent review spreadsheet, created by Colgate's legal department and shared with Colgate's other departments to communicate the legal department's thoughts and opinions regarding potential patent opportunities."); *see also id.* List A at 14 (TRAUT00000672) ("This is an invention record spreadsheet, created by Colgate's legal department and shared with Colgate's other departments to communicate the status of invention records and patent potential.").

by members of the Colgate Global Legal Organization Patent Department -- *i.e.*, Colgate's patent lawyers.  *See* Decl. of Ken Capece (01/29/15) ("Capece Decl.") at ¶¶ 3-5, attached as Exhibit 3.

*Third*, Colgate's documents were created and/or exchanged for the purpose of obtaining and providing legal advice.  *See id.* ¶¶ 4-6.  The spreadsheets and charts identify potential patent opportunities and priorities for Colgate.  *See id.* ¶ 3.  Colgate's patent lawyers and paralegals create the spreadsheets (and/or the legal information contained in them) and exchange the spreadsheets on an ongoing basis with their clients in Colgate's Research and Development group, including the Oral Care, Early Research group.  Colgate's lawyers communicate with their clients by recording on the spreadsheets their comments, thoughts, and opinions on legal issues relating to those opportunities.  *See id.* ¶¶ 5-6.

N8 Medical disputes Colgate's assertion that the spreadsheets and charts were created at the request of Colgate's patent department, arguing that Laurence Du-Thumm, a member of Colgate's Early Research group, testified that they were "created to keep Colgate's Chief Technology Officer, Ms. Pat Verduin, notified of her group's annual goals for filing patents."  Mot. at 2 (citing Du-Thumm Dep. at 33:22-37:13).  N8 Medical misstates Ms. Du-Thumm's testimony.

Ms. Du-Thumm testified about an email exchange she had with Steve Miller in her group regarding preparations for "an update with our CTO [*i.e.*, Pat Verduin] . . . when we review the list of invention records."  *See* Mot. Ex. I at 35:18-22.  Ms. Du-Thumm further testified that the role of one of Colgate's patent attorneys "was to collect the list of invention records to prepare for that update with Pat Verduin."  *Id.* at 36:17-19.  While Ms. Du-Thumm testified that her group reviews a list of invention records as part of its update with Colgate's Chief Technology

Officer, she did not testify that the spreadsheets at issue in N8 Medical's motion were created or used only for that purpose. To the contrary, the spreadsheets and charts at issue in N8 Medical's motion were created for the primary purpose of securing and communicating legal advice. *See* Capece Decl. ¶¶ 4-6. The fact that the spreadsheets (and the legal advice they contained) were part of the group's report to the Chief Technology Officer does not mean they are not privileged. Indeed, "the cases are uniform in the patent field that where the primary purpose [of a document] is securing legal advice, the privilege will be upheld." *Cuno, Inc. v. Pall Corp.*, 121 F.R.D. 198, 201 (E.D.N.Y. 1988).[2]

Finally, N8 Medical criticizes Colgate for producing certain emails between non-lawyers that attached the privileged spreadsheets. *See* Mot. at 2. N8 Medical contends that by producing the non-privileged email, Colgate has "implicitly acknowledge[d] that no privilege applies to the attachments." *Id.* Once again, N8 Medical is mistaken. The spreadsheets and legal information created by Colgate's patent attorneys were exchanged for the purpose of conveying legal advice to the Early Research group regarding potential inventions. The fact that members within the group attached the spreadsheets to their emails does not strip the spreadsheets of their privilege. And, the fact that Colgate properly produced the cover email (which contained no legal advice) does not suggest that the attachment is not privileged. "'[I]n instances where the client is a

---

[2] *See also Brigham Young Univ. v. Pfizer, Inc.*, No. 2:06cv890 TS, 2011 WL 2795892, at *3 (D. Utah July 14, 2011) ("'A party may successfully demonstrate applicability of the privilege to written communication between corporate management employees by establishing that the communication was made in confidence for the primary purpose of obtaining legal advice.'" (quoting *Williams v. Sprint/United Mgt. Co.*, 238 F.R.D. 633, 638 (D. Kan. 2006))); *SCO Group, Inc. v. Int'l Bus. Machs. Corp.*, No. 2:03cv0294 DAK, 2006 WL 2938820, at *2 (Sept. 1, 2006) (finding documents protected by attorney-client privilege where primary purpose was for legal advice).

corporation, documents subject to the privilege may be transmitted between non-attorneys to relay information requested by attorneys.'" *Brigham Young Univ.*, 2011 WL 2795892, at *2 (quoting *Santrade, Ltd. v. Gen. Elec. Co.*, 150 F.R.D. 539, 545 (E.D. N.C. 1993)). "'[D]ocuments subject to the privilege may be transmitted between non-attorneys (especially individuals in corporate decision-making) so that the corporation may be properly informed of legal advice and act appropriately.'" *Id.* (quoting *Santrade*, 150 F.R.D. at 545).

N8 Medical's motion to compel the production of Colgate's charts and spreadsheets should be denied.[3]

## II.     <u>N8 Medical Is Not Entitled to Colgate's Privileged Documents</u>.

N8 Medical seeks to invade Colgate's privilege even more broadly by contending that Colgate is invoking the attorney-client privilege in an unfair way. *See* Mot. at 3-6. More than once, N8 Medical accuses Colgate of using the privilege "as both a sword and a shield," contending that Colgate is improperly shielding documents that N8 Medical must have to test Colgate's contentions that it did not breach the parties' agreements or misappropriate N8 Medical's trade secrets. *See id.* at 5. N8 Medical's argument is fundamentally misguided. Colgate has not disclosed some privileged communications -- and withheld others -- for a self-serving purpose, nor are its assertions of privilege impeding N8 Medical from testing or

---

[3] N8 Medical states that the documents on Colgate's privilege log that it has "highlighted in yellow are spreadsheets/charts." Mot. at 2 n.9; *see also id.* Ex. N. N8 Medical, however, highlights approximately two dozen other documents in yellow that clearly are not spreadsheets/charts. *See, e.g.,* Ex. N at p.1 (CHEN00002247). It is unclear from N8 Medical's motion whether or not it challenges Colgate's assertion of privilege relative to these entries, and, if so, on what basis. Given that uncertainty, Colgate will briefly describe the basis for its privilege claim relative to each entry in the attached Appendix I. Colgate reserves the right to provide an additional response should N8 Medical argue on reply a basis for its challenge.

responding to Colgate's defenses. N8 Medical's motion to compel the production of Colgate's privileged communications should be denied.

> A. <u>**Colgate Has Not Waived Its Privilege on Communications with Its Lawyers**</u>.

The gravamen of N8 Medical's claim in this lawsuit is that Colgate breached the parties' Materials Transfer and Evaluation Agreements (the "MTAs") and misappropriated N8 Medical's trade secrets by filing a patent application for an invention Colgate developed using ceragenins. Colgate denies N8 Medical's contention. Colgate believes it was well within its right to file its patent application and that it misappropriated no trade secrets.

N8 Medical now contends that it is "imperative," "vital," and "essential" that it obtain privileged documents and communications "surrounding" Colgate's inventions and patent application so that it can "test" Colgate's defense. Mot. at iii, 5-6. N8 Medical even goes so far as to claim that, without Colgate's privileged documents, N8 Medical would be "forced to accept Colgate's defense at face value." *Id.* at 5. N8 Medical claims it "is entitled to test Colgate's defense by reviewing" Colgate's privileged documents "to determine whether, even under Colgate's interpretation of the agreements, Colgate breached the MTAs and stole trade secrets." *Id.*

The error in N8 Medical's logic is apparent from the face of its arguments. N8 Medical is not forced to accept Colgate's defense that it did not breach the MTAs or Colgate's contention that it did not misappropriate trade secrets. Presumably, N8 Medical will attempt to prove that Colgate breached the MTAs or misappropriated trade secrets by comparing Colgate's actions to the contracts and the applicable law. N8 Medical does not need to know (and is not entitled to know) what advice Colgate's lawyers discussed among themselves nor what advice they gave

their clients. Indeed, how Colgate's lawyers may have interpreted the parties' agreements and/or the law does not decide the issue.

Surely recognizing as much, N8 Medical tries to justify invading Colgate's privilege by arguing that Colgate waived its privilege as to all communications with counsel regarding its invention and its agreements by allowing Steven Miller (a Colgate employee) to testify regarding his discussions with Nikhil Heble (a Colgate lawyer) about whether or not Colgate was required to give N8 Medical notice of its invention. *See* Mot. at iv. It is this testimony that N8 Medical apparently contends Colgate is using as a sword while simultaneously shielding documents on the same subject under a claim of privilege. If that is N8 Medical's position, N8 Medical is mistaken.

Colgate has allowed witnesses to discuss communications with Mr. Heble regarding whether Colgate was required to give notice of its invention to N8 Medical. In doing so, Colgate has not restricted inquiry into that specific topic, nor has it withheld documents that discuss the issue of notice. In other words, Colgate is not using the attorney-client privilege as a sword and a shield. Rather, Colgate has waived the privilege relative to that topic and has disclosed evidence on that topic -- whether it helps Colgate's position or not.

N8 Medical now attempts to parlay Colgate's disclosure into something much broader. But the law will not allow it. In the cases cited by N8 Medical, the courts make clear that "rules which result in the waiver of [the attorney-client] privilege and thus possess the potential to weaken attorney-client trust should be formulated with caution." *In re County of Erie*, 546 F.3d 222, 228 (2d Cir. 2008). That is because the "attorney-client privilege is highly valued." *In re Keeper of Records*, 348 F.3d 16, 23 (1st Cir. 2003) (stating courts "should be cautious about

finding implied waivers"). Courts are therefore instructed to evaluate claims like N8's of implied waiver "in light of principles of logic and fairness" -- an "evaluation that demands a fastidious sifting of the facts and a careful weighing of the circumstances." *Id.* Moreover, courts are further cautioned that "[w]here the party attacking the privilege has not been prejudiced, and where are no other grounds for finding a waiver, there is no reason to find a waiver by implication." *U.S. v. Aronoff*, 466 F. Supp. 855, 862-63 (S.D.N.Y. 1979).

A weighing of the circumstances in this case demonstrates that N8 Medical has suffered no prejudice and does not require Colgate's privileged communications to prove its claims. Colgate's disclosure on the issue of notice to N8 Medical has been -- and will continue to be -- complete. Colgate has disclosed documents on this limited topic and has allowed -- and will continue to allow -- its witnesses to testify on the topic. That limited disclosure, however, does not require that Colgate waive privilege on all other subjects. *See, e.g., Am. Re-Insurance Co. v. U.S. Fid. & Guar. Co.*, 837 N.Y.S.2d (2007) (allowing party to seek testimony and documents regarding attorney advice based on implied waiver, but "only to the extent such discovery relates to the disclosures made during [witness's] testimony").

For example, N8 Medical contends that it is entitled to privileged documents discussing issues such as Colgate's creation of its invention and the filing of the patent application. *See* Mot. at 5-6. But Colgate has not waived privilege on these issues and there is no basis upon which to find an implied waiver. Indeed, this case is not analogous to cases where a defendant waives the privilege by invoking it as a defense to a claim of willful infringement. In those cases, the substance of the attorney's advice either supports or defeats the defendant's assertion of good faith. *See Beery v. Thomson Consumer Elecs., Inc.*, 218 F.R.D. 599, 605 (S.D. Ohio

2003).  Here, however, the substance of Colgate's attorneys' advice on the issue of the patent applications or the development of the invention neither proves nor defeats Colgate's defenses or N8 Medical's claims.  Thus, N8 Medical has no right to demand Colgate's privileged communications.

### B. Colgate Has Not Waived Privilege By Producing Patent Records.

Because Colgate concluded that it had no interest in ceragenins, before N8 Medical even filed its complaint in this litigation, Colgate offered to assign its patent application to N8 Medical.  Shortly after the litigation began, Colgate fully assigned its patent applications related to ceragenins to N8 Medical.  *See* Assignment, attached as Exhibit 4.  In connection with that assignment, Colgate produced copies of its invention records to enable N8 Medical to prosecute the patent applications.

N8 Medical now seeks to use Colgate's goodwill to create an additional argument that Colgate somehow waived privilege regarding all communications with its counsel relating to its invention and patent applications by giving N8 Medical the invention records relating to the patent applications as part of its voluntary assignment.  *See* Mot. at 6.  N8 Medical argues that, without these documents, it is prevented "from exercising all rights and defenses to its property."  *Id.*  N8 Medical offers no support -- legal or factual -- for its unusual claim.  N8 Medical cites no authority for its proposition that, as a current owner of these patent applications, it is legally entitled to all related privileged communications.  *See id.*  Nor does N8 Medical explain how having privileged communications relating to the creation of its patent applications would aid it

in the prosecution of those patents.  *See id.*[4]  N8 Medical's argument is entirely unfounded and should be rejected.

N8 Medical also asserts that Colgate waived its privilege when it gave N8 Medical the invention records as part of its assignment of the patent applications.  *See id.*  Once again, N8 Medical overreaches.  As demonstrated above, and as N8 Medical even admits, findings of implicit waiver are driven by fairness and prejudice.  *See, e.g.,* Mot. at 7 (acknowledging that in determining waiver, courts weigh circumstances of the disclosure, nature of advice sought, and prejudice to the parties).  Moreover, when it comes to extrajudicial disclosures (of the kind made by Colgate in this case), the courts are particularly reluctant to find an implied waiver of all confidential communications on the same subject matter unless used to gain an adversarial advantage in a judicial proceeding.  *See In Re Keeper of Records*, 348 F.3d at 24.

Here, N8 Medical can point to no prejudice arising out of Colgate's willingness to give it the invention records when it assigned the patents to N8 Medical.  Colgate is not using that disclosure to gain an adversarial advantage in this litigation, and there is no reason to find a broader waiver by implication.  *See Aronoff*, 466 F. Supp. at 862-63.  N8 Medical's motion to compel the production of Colgate's privileged documents on this basis should be denied.

---

[4] In the Assignment, Colgate agreed to cooperate in and provide relevant facts related to the patent applications.  *See* Assignment at 1.  Thus, to the extent N8 Medical legitimately believes it requires information relevant to the prosecution of the patent applications, Colgate invites N8 Medical to identify the information it needs and to explain why that information is necessary.  However, N8 Medical's suggestion that Colgate has waived related privileged communications by producing the invention records is incorrect and unsupported by any authority.

## CONCLUSION

For the foregoing reasons, Colgate respectfully requests that the Court deny N8 Medical's Motion to Compel.

DATED: January 29, 2015.

                                                                             STOEL RIVES LLP

                                                                             */s/ Kenneth B. Black*
                                                                             Kenneth B. Black
                                                                             Jill M. Pohlman
                                                                             David L. Mortensen

                                                                             Attorneys for Defendant
                                                                              Colgate-Palmolive Company

# APPENDIX I

*Documents highlighted in yellow by N8 Medical on Colgate's privilege log (N8 Medical Mot. Ex. N) that are not spreadsheets and/or charts.[5]*

1. As Colgate previously explained to N8 Medical (*see* Ex. 1), the following documents were inadvertently included on Colgate's privilege log. The documents are draft invention records for inventions that do not involve and are not related to ceragenins. Colgate will not produce these documents because they are not relevant:

> CHEN0000247
> HAO00000222
> MASTERS00000079
> MASTERS00000694
> MASTERS00003340
> MASTERS00003341
> MASTERS00003342

2. The following documents are privileged. They are agreement request forms submitted to Colgate's legal department seeking legal assistance.

> CHEN00002352
> CHEN00002374
> DUTHUMM00000858
> TRAUT00000362
> TRAUT00000528
> ZAIDEL00001088

3. The following documents are privileged. They are correspondence exchanged with Colgate's legal department about legal matters.

> DMS00000022
> DMS00000023
> DMS00000024-25
> DMS00000026
> DMS00000031-32

---

[5] Document MILLER00002460 was listed twice on Colgate's privilege log. It was once highlighted in yellow and once highlighted in blue. It is not a spreadsheet and/or chart and Colgate assumes N8 Medical intended to challenge it on the same basis it challenges the other documents highlighted in blue. Colgate's response in Section II, *supra,* applies to this document.

  4. The following documents are privileged.  Colgate produced other draft patent applications, but these are different.  They are draft patent applications that contains comments from Colgate's legal department.

    DUTHUMM00000829
    TRAUT00000480

  5. The following document is privileged.  It is an internal power point presentation setting forth Colgate's legal assessments.

    TRAUT00000636

  6. The following documents have been or will be produced to N8 Medical either in whole or in a redacted form:

    TRAUT00000331
    TRAUT00000666 (produced as COLPAL055276)
    COLPAL32411-29 (produced)

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of January, 2015, I caused a true and correct copy of the foregoing **DEFENDANT COLGATE-PALMOLIVE COMPANY'S MEMORANDUM IN OPPOSITION TO N8 MEDICAL, INC.'S AMENDED MOTION TO COMPEL MOTION TO COMPEL AND OVERRULE PRIVILEGE ASSERTIONS** to be served via CM/ECF on the following:

Brent O. Hatch
bhatch@hjdlaw.com
Mark F. James
mjames@hjdlaw.com
HATCH, JAMES & DODGE, PC
10 West Broadway, Suite 400
Salt Lake City, Utah  84101

Paul J. Dobrowski
pjd@doblaw.com
Frederick T. Johnson
fjohnson@doblaw.com
C.Gerard Harrison
gharrison@doblaw.com
Cody Stafford
cstafford@doblaw.com
Dobrowski, Larkin & Johnson L.L.P.
4601 Washington Avenue, Suite 300
Houston, Texas 77007

Robert S. Clark
rclark@parrbrown.com
Parr Brown Gee & Loveless
185 S State Street, Suite 800
Salt Lake City, Utah 84111

Stephen C. Smith
ssmith@smith-lc.com
Richard R. Thomas
rthomas@smith-lc.com
Stephen C. Biggs
sbiggs@smith-lc.com
SMITH LC
4505 East Chandler Boulevard, Suite 290
Phoenix, Arizona  85048

Michael A. Schern
mike@srfdlaw.com
SCHERN RICHARDSON FINTER DECKER, PLC
1640 South Stapley Drive, Suite 132
Mesa, Arizona  85204

　　　　　　　　　　　　　　　　  /s/ Kenneth B. Black