Brent O. Hatch (5715)
    bhatch@hjdlaw.com
Mark F. James (5295)
    mjames@hjdlaw.com
HATCH, JAMES & DODGE, P.C.
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363

Paul J. Dobrowski (*Pro Hac Vice*)
    pjd@doblaw.com
Frederick T. Johnson (*Pro Hac Vice*)
    fjohnson@doblaw.com
Cody W. Stafford (*Pro Hac Vice*)
    cstafford@doblaw.com
DOBROWSKI, LARKIN & JOHNSON L.L.P.
4601 Washington Avenue, Suite 300
Houston, Texas 77007
Telephone: (713) 659-2900

*Attorneys for Plaintiff N8 Medical, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| N8 MEDICAL, INC., <br>       Plaintiff, <br><br> and <br><br> BRIGHAM YOUNG UNIVERSITY, <br>       Plaintiff-Intervenor, <br><br> and <br><br> N8 PHARMACEUTICALS, INC., <br>       Plaintiff-Intervenor, <br><br> v. <br><br> COLGATE-PALMOLIVE COMPANY, <br>       Defendant. | **PLAINTIFF N8 MEDICAL, INC.'S REPLY IN SUPPORT OF AMENDED MOTION TO COMPEL AND OVERRULE DEFENDANT COLGATE-PALMOLIVE COMPANY'S PRIVILEGE ASSERTIONS** <br><br> **(Jury Trial Demanded)** <br><br> **Case No. 2:13-cv-01017** <br><br> **Judge Bruce S. Jenkins** |

## I.  Introduction

Colgate's Response fails to carry its burden to prove lack of waiver of the attorney-client privilege, improperly attempts to limit the bases for production set forth in N8's Motion to Compel, and wholly fails to respond to several of N8's arguments. Indeed, Colgate's Response establishes that Colgate has selectively waived, and will continue to waive, alleged attorney-client privileged communications with Colgate attorney Nikhil Heble. Nevertheless, Colgate insists that the Court shield communications with its counsel on the very same subject matter. That is fundamentally unfair and not in accordance with applicable law.

As the party asserting the privilege, it is Colgate's burden to prove lack of waiver. Colgate's Response does not address, much less meet, this test. Specifically, Colgate does not discuss Federal Rule of Evidence 502(a), which sets forth the test for subject matter waiver when there has been a partial disclosure of attorney-client information.

Also, Colgate fundamentally misunderstands N8's position. N8's Motion to Compel is not limited to documents discussing whether Colgate should have provided notice to N8 of Colgate's Illicit Patent filings. Instead, N8's Motion is also directed to Colgate's defense that it developed and filed the Illicit Patents exclusively based on information and ceragenin material received from Ceragenix. Further, Colgate has placed these communications at issue by asserting the affirmative defenses of "independent development", good faith and lack of willfulness, malice and intent. *See* Dkt. 120, Colgate's Answer, pp. 19 and 21. Nevertheless, Colgate wholly fails to address these critical issues.

While Colgate claims that its patent charts/spreadsheets contain "legal information", it is belied by the two charts Colgate produced to N8 that are attached as Exhibits O and P to N8's

Motion to Compel. A review of those exhibits proves that nothing contained therein qualifies as legal advice or information. They cannot meet the test for qualifying as an attorney-client communication.

Finally, Colgate's argument regarding the production of its Invention Records to N8 is bereft of relevant case law. Colgate intentionally disclosed those records to N8 both pre-discovery and during the discovery process. It is undisputed that N8 owns the patent applications and the information set forth therein. Colgate claims the Illicit Patent Applications are based on the Invention Records. Thus, as the owner of the inventions described in the Invention Records and the Illicit Patent Applications, N8 has a legal right to the communications demonstrating how the Illicit Patent Applications were drafted.

I. Legal Standard

Colgate bears the burden to prove that the documents it is withholding are protected by the privilege, and that it has not waived the privilege. *United States v. Int'l Bhd. Of Teamsters*, 119 F.3d 210, 214 (2d Cir. 1997); *Hallmark v. Cohen & Slamowitz*, 300 F.R.D. 110, 112 (W.D.N.Y. 2014). "Since the privilege is an obstacle to the investigation of the truth . . . the privilege is confined within its narrowest possible limits." *Cuno, Inc. v. Pall Corp.*, 121 F.R.D. 198, 200 (E.D.N.Y. 1988) (citing cases).

II. Arguments and Authorities

**A.  Colgate put its documents "at issue" and waived the privilege to all documents on the same subject matter.**

In this case, Colgate pled the affirmative defense of "independent development." Dkt. 120, p. 19 (Twelfth Affirmative Defense). Colgate also raises affirmative defenses that it acted in good faith and did not engage in willful, malicious, or intentionally fraudulent conduct. Dkt. 120, p. 21 (Twenty-Third and Twenty-Fourth Affirmative Defenses).

Courts often find that a party waives the privilege by asserting "good faith" or "advice-of-counsel" defenses. Indeed, the assertion of an "advice-of-counsel" defense has been properly described as a "quintessential example" of an implied waiver of the privilege. *See In re Kidder Peabody Secs. Litig.*, 168 F.R.D. 459, 470 (S.D.N.Y. 1996). Courts have also affirmed the broad principle that a party may forfeit the privilege where the privilege holder asserts a good faith belief in the lawfulness of its action, even without expressly invoking counsel's advice. *Favors v. Cuomo*, 285 F.R.D. 187, 199 (E.D.N.Y. 2012); *see also Tupi Cambios, S.A. v. Morgenthau*, 44 Misc.3d 800, 805, 989 N.Y.S.2d 572 (Sup. Ct. 2014) (citing cases). Even the cases cited by Colgate note that a "good faith" defense likely waives the privilege. *In re County of Erie*, 546

1

F.3d 222, 229 (2d Cir. 2008). While, the Second Circuit found no waiver of the privilege on the facts before it because the party asserting the privilege had not *relied* on privileged advice from counsel to make its claim or defense, the court concluded that if the holder of the privilege relied upon a good-faith defense—as Colgate does here—the court would permit the parties to reargue waiver. *Id*. at 230.

Under *Erie*, and its progeny, courts have held that the privilege holder waives the privilege if they claim the defense of good faith, and that claim can only be scrutinized by examining the disputed communications. *See, e.g.*, *Scott v. Chipotle Mexican Grill, Inc.*, --- F.Supp.3d --- (S.D.N.Y. 2014), 2014 WL 7236907 (Dec. 18, 2014). This waiver is "premised on the *unfairness* to the adversary of *having to defend* against the privilege holder's claim without access to pertinent privileged materials that might refute the claim." *John Doe Co. v. United States*, 350 F.3d 299, 304 (2d Cir. 2003). Subject matter waiver is justified "when a party uses an assertion of fact to influence the decision maker while denying its adversary access to privileged materials potentially capable of rebutting the assertion." *Erie*, 546 F.3d at 229 (internal quotation marks omitted); *see also Jakobleff v Cerrato, Sweeney & Cohn*, 97 AD2d 834, 835 (2d Dept 1983) (privilege waived by placing "the subject matter of the privileged communication in issue or where invasion of the privilege is required to determine the validity of the client's claim or defense and application of the privilege would deprive the adversary of vital information.").

In its Response, Colgate completely ignores its own affirmative defenses. Indeed, Colgate curiously argues that this case is nothing like a willful infringement case where good-faith is an issue to the defense, and claims that the substance of its in-house counsel's advice "neither proves nor defeats Colgate's defenses…." Resp. at pp. 10-11. Given that Colgate specifically

2

pleads good-faith and a lack of willful conduct as defenses, it is difficult to square Colgate's arguments with its own pleadings.

Colgate also contends that it "independently developed" the inventions contained in the Illicit Patent Applications with ceragenins that were provided by N8's predecessor, Ceragenix. Colgate's tactic is to create a fool-proof defense: it says it independently developed the inventions in the Illicit Patent Applications using materials only from Ceragenix (thus, it committed no wrongdoing), then selectively produces documents and permits its witnesses to testify that this is true based on their communications with in-house counsel (and, presumably, counsel's review of documents necessary to make that determination). But, after raising this defense, Colgate then selectively—and unfairly—shields documents that are relevant to that defense and could disprove it.

As a result, the documents highlighted in blue on Colgate's Privilege Log[1] should be produced because Section 7 in the Colgate/N8 MTAs provides for ownership of the inventions. Ex. A, at N8Medical054414 – N8Medical054417. Specifically, paragraph 7.b.(2) defines an "Invention" as any idea, invention, technique, method and other technology "whether or not patentable, **developed** under the Agreement." *Id*. at N8Medical054415 (emphasis added). Since Colgate claims the Inventions contained in the Illicit Patent Filings were entirely developed before the 1st MTA with N8, and with ceragenins received only from Ceragenix, the communications discussing the development of the Illicit Patent Filings before and after Colgate began its contractual relationship with N8 are critical.

---

[1] *See* Exhibit N to N8's Amended Motion to Compel and Overrule Defendant Colgate-Palmolive Company's Privilege Assertions (the "Motion to Compel").

Colgate's tactics are unfair and prejudicial. For instance, Colgate produced an email from Mr. Miller from October 2013. *See* Ex. 1, attached hereto. Based on that email, Mr. Miller testified that he was advised by Mr. Heble, Colgate's in-house patent counsel, that Colgate was not required to notify N8 of the inventions contained in the Illicit Patent Applications because the "synergy" tested by Colgate was not created by using ceragenins from N8. Ex. D[2], 307:8 – 310:18. But, after permitting its witness to disclose enough privileged information to buttress its defense, Colgate refuses to produce any other communications from Mr. Heble on the same topic, or permit N8 to review the other documents to determine the factual underpinnings of Mr. Heble's advice. Thus, Colgate is selectively using the privilege as a sword (for its defense) and a shield (to prevent N8 from testing the factual basis of its defense).

Under circumstances such as these that exist in this case, courts grant access to privileged materials. This is necessary in order to "avoid prejudice to the adversary party and 'distortion of the judicial process' that may result from selective disclosure." *Robbins & Myers, Inc. v. J.M. Huber Corp.*, 274 F.R.D. 63, 94-95 (W.D.N.Y. 2011) (quoting *In re von Bulow*, 828 F.2d 94, 101 (2d Cir. 1987)); *see also Orco Bank v Proteinas Del Pacifico*, 179 A.D.2d 390, 390 (1st Dept 1992) (privilege waived "by placing the subject matter of counsel's advice in issue and by making selective disclosure of such advice.").

In its Response, Colgate admits that it has permitted—and will continue to permit— witnesses to testify to advice received from Mr. Heble regarding whether notice was required. Resp. at p. 10. And, "[g]enerally, '[c]ourts have found waiver by implication when a client

---

[2] Unless otherwise noted, all references to exhibits are to the documents attached to N8's Amended Motion to Compel [Dkt. 163].

4

testifies concerning portions of the attorney-client communication, …when a client places the attorney-client relationship directly at issue, …and when a client asserts reliance on an attorney's advice as an element of a claim or defense . …'" *Erie*, 546 F.3d at 228 (quoting *Sedco Int'l S.A. v. Cory*, 683 F.2d 1201, 1206 (8th Cir. 1982)). Colgate's selective assertion of the privilege constitutes a waiver as to the subject matter of notice. *See, e.g., Genentech, Inc. v. U.S. Int'l Trade Comm'n*, 122 F.3d 1409, 1416 (Fed. Cir. 1997); *see also Orco Bank*, 179 A.D.2d at 390.

In an effort to avoid this result, Colgate claims that it has produced all documents related to whether notice was required. Yet, Colgate has not produced any communications from Mr. Heble on that topic. Nor has Colgate produced the underlying documents that Mr. Heble would have had to rely to make a determination of whether notice was required. Thus, Colgate refuses to produce the most essential documents related to Mr. Heble's advice, despite the fact Colgate admittedly waived the privilege to the issue of notice. Resp. at p. 9.

**B.      Federal Rule of Evidence 502 requires disclosure of Colgate's documents.**

Federal Rule of Evidence 502 addresses the issue of when partial disclosure of protected information result is a waiver of undisclosed information. Under F.R.E. 502(a), "waiver extends to undisclosed information if waiver is intentional, the disclosed and undisclosed information concern the same subject matter, and such information should in fairness be considered together." *Robbins & Myers, Inc. v. J.M. Huber Corp.*, 274 F.R.D. 63, 94 (W.D.N.Y. 2011). The Advisory Committee Notes to F.R.E. 502 make clear that the "rule governs only certain waivers by disclosure."[3]

---

[3] "Other common-law waiver doctrines may result in a finding of waiver when there is no disclosure of privileged information. *See, e.g., Nguyen v. Excel*, 197 F.3d 200 (5th Cir. 1999) (reliance on advice of counsel defense waives the privilege with respect to the attorney-client

5

In this case, the requirements of F.R.E. 502(a) are satisfied. First, the deposition testimony of Colgate witnesses intentionally disclosed privileged information when they testified regarding communications they had with attorney Nik Heble. *See, e.g., John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 17 F. Supp.3d 400, 405 (S.D.N.Y. 2014) (client's deposition testimony concerning certain privileged conversations with attorney waived the privilege with regard to those subjects); *Thomas v. F.F. Fin., Inc.*, 128 F.R.D. 192, 193-194 (S.D.N.Y. 1989) (same); *see also Bowne of N.Y.C., Inc. v. AmBase Corp.*, 150 F.R.D. 465, 485 (S.D.N.Y. 1993) ("[V]oluntary disclosure of privileged communications by deposition testimony in one case operates as an implied waiver as to all such communications concerning the particular matters addressed in the disclosed communications."). Also, Colgate disclosed Mr. Heble's alleged advice in Exhibit 1, attached hereto.

Second, N8 seeks production of documents and testimony concerning the same subject matter as the communications disclosed by Colgate's witnesses in their depositions. Specifically, N8 requests disclosure of documents and communications regarding: (1) Mr. Heble's advice; (2) development of the Illicit Patent Filings; (3) the decision not to provide notice of those filings to N8; and (4) the use of materials and information received from N8 and Ceragenix, Inc. in creating the Illicit Patent Filings.

Third, fairness dictates that N8 be allowed to review the documents and question Mr. Heble regarding them. As set forth above, Colgate's affirmative defenses place its intent, good faith and state of mind at issue. Therefore, under F.R.E. 502, the Court should compel Colgate to

---

communications pertinent to that defense)…The rule is not intended to displace or modify federal common-law concerning waiver of privilege or work product where no disclosure has been made." Advisory Note to Fed. R. Evid. 502.

produce the documents. *See John Wiley and Sons, Inc.*, 17 F. Supp.3d at 406. *See also United States v. Treacy*, 2009 WL 812033, *3 (S.D.N.Y. Mar. 24, 2009) [Rule 502(a) allows finding of subject-matter waiver of attorney-client privilege "in order to prevent a selective and misleading presentation of evidence of the disadvantage of the adversary" (quoting Advisory Note to FED. R. EVID. 502(a))].

C.   **Colgate's charts and spreadsheets are not privileged.[4]**

To be privileged, communications must be "relate[d] to legal advice or strategy sought by the client." *United States v. Johnston,* 146 F.3d 785, 794 (10th Cir.1998); *see also Matter of Bekins Record Storage Co., Inc.*, 62 N.Y.2d 324, 329, 465 N.E.2d 345, 348 (1984); *United States v. Int'l Broth. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 119 F.3d 210, 214 (2d Cir. 1997). Moreover, the attorney-client "privilege extends only to communications and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing." *Upjohn Co. v. United States,* 449 U.S. 383, 395 (1981).

In the corporate context, for the attorney-client privilege to apply, the communication must be *primarily* or *predominantly* of a legal—rather than business—character. *Spectrum Systems Intern. Corp. v. Chemical Bank*, 78 N.Y.2d 371, 378, 575 N.Y.S.2d 809, 581 N.E.2d 1055 (1991); *ABB Kent-Taylor, Inc. v. Stallings & Co., Inc.*, 172 F.R.D. 53, 55 (W.D.N.Y. 1996). The privilege does not extend to business communications, even when an attorney is

---

[4] Colgate claims that it is confused by the documents highlighted in yellow on N8's Exhibit N because several are not "spreadsheets/charts." Resp. at p. 7, n.3. To be clear, N8 challenges all of the documents highlighted in yellow, which are documents that do not contain an attorney as either the author or the recipient. The vast majority of those documents are charts or spreadsheets, though some are not; N8 merely tried to provide a general description of the numerous documents Colgate listed.

involved. *See, e.g.*, *Stenovich v. Wachtell, Lipton, Rosen & Katz*, 195 Misc.2d 99, 107-106, 756 N.Y.S.2d 367 (Sup. Ct. 2003). Although communications between non-attorney corporate employees for the purpose of obtaining legal advice will be protected, "the purpose of obtaining legal services must be present" from the face of the document. *Adams v. Gateway, Inc.*, No. 2:02–CV–106–TS, 2003 WL 23787856, at *11 (D. Utah December 30, 2003) (unpublished) (quoting *Cuno, Inc. v. Pall Corp.*, 121 F.R.D. 198, 203 (E.D.N.Y.1988)). Moreover, for a communication between non-attorney employees to be held privileged, it must be "apparent that the communication from one employee to another was for the purpose of the second employee transmitting the information to counsel for advice' or the document itself must 'reflect the requests and directions of counsel." *Cuno, Inc.*, 121 F.R.D. at 203.

   Colgate contends its spreadsheets and charts reflecting Colgate's Invention Records were created by counsel primarily for the purpose of securing and communicating legal advice, despite the fact that no attorney appears as an author or recipient. Resp. at p. 6. Indeed, a review of Colgate's spreadsheets and charts Colgate produced in this case reveals no requests or directions from counsel, nor does the face of those documents reveal a primary purpose to obtain legal services. For example, Exhibits O and P to N8's Motion to Compel are spreadsheets produced by Colgate. Those documents reveal nothing more than factual information, not legal advice. And though Colgate claims, via Mr. Capece's declaration, that attorneys within its patent department would "insert comments into [the spreadsheets] reflecting their thoughts and/or legal opinions …," no such legal analysis appears on either Exhibits O or P.

   Further, the cases cited in Colgate's Response state that for a communication containing technical data to be privileged, the communication must be made "for the purpose of securing

8

**primarily** (i) an opinion of law or (ii) legal services or (iii) assistance in some legal proceeding." *Cuno*, 121 F.R.D. at 201 (citing *United States v. United Shoe Machinery Corporation*, 89 F.Supp. 357, 358 (D.Mass. 1950) (emphasis added)). As Exhibits O and P reveal, Colgate's spreadsheets were not created *primarily* for the purpose of securing legal services. On their face, the spreadsheets are primarily business documents; thus, they are not privileged. *See, e.g.*, *Bowne of New York City, Inc.*, 150 F.R.D. at 471 ("If the communication concerns business matters, the privilege does not apply."); *Lifewise Master Funding v. Telebank*, 206 F.R.D. 298, 304 (D. Utah 2002) (noting privilege does not protect documents providing business advice). That fact is augmented by the testimony from Colgate witnesses. *See* Dkt. 163, N8's Am. Mot., at p. 2. Though Colgate claims attorneys in its patent department were involved with communications regarding the spreadsheets, the "mere fact that an attorney was involved in a communication does not automatically render the communication subject to the attorney-client privilege." *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550-1551 (10th Cir. 1995). Colgate fails to carry its burden to show that the spreadsheets are privileged.

**D.    Colgate waived the privilege by producing the Invention Records.**

Colgate voluntarily produced its Invention Records underlying the Illicit Patent Applications. Contrary to Colgate's argument, however, it did so only *after* N8 brought this lawsuit.[5] Colgate admits that it produced the Invention Records to "enable N8 Medical to

---

[5] Colgate claims its disclosure was "extrajudicial." Resp. at p. 12. Given that it did not assign the patent application to N8 until February 2014, three months *after* litigation began, and produced the Invention Records again in discovery, Colgate's argument is specious at best. Colgate's disclosure of the Invention Records is "a judicial disclosure, that is, a disclosure made in the course of a judicial proceeding." *In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 24 (1st Cir. 2003).

9

prosecute the patent applications." Resp. at p. 11. Thus, Colgate admits that N8 *needs* the Invention Records and the data within them to properly prosecute the patent applications. Colgate surely recognized that, as the rightful owner of the patent applications, N8 is entitled to the information that forms the basis of the patent applications. Otherwise, Colgate would have had no reason to produce the Invention Records in the first place.

Colgate does not dispute that Invention Records are typically privileged and Colgate's voluntary production of the Invention Records is a waiver of the privilege. *Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir.1981) (waiver extends beyond document initially produced out of concern for fairness); *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349 (Fed. Cir. 2005) (same). Instead, Colgate claims that N8 is not prejudiced by Colgate's selective waiver of the privilege. Not so. Indeed, as noted above, N8 is prejudiced because (1) Colgate has shared only certain, hand-picked information, and (2) the documents Colgate withheld have been put "at issue" in the litigation due to Colgate's defenses.

As the owner of the patent applications, N8 is prejudiced if it has incomplete information with which to understand and defend the patent applications. Because of Colgate's wrongful conduct, N8 was not permitted to participate in the drafting of the patent applications it now owns. Thus, N8 needs all of the information that supports or underlies the patent applications so that it can assert its full ownership rights. Colgate's conduct here is much like a car thief who later returns the car but refuses to hand over the keys. Without all of the information that supports the patent applications, N8 is being deprived of its full ownership rights.

Respectfully submitted,

**DOBROWSKI, LARKIN & JOHNSON L.L.P.**

By:  */s/ Paul J. Dobrowski*
     Paul J. Dobrowski
     Frederick T. Johnson
     Cody W. Stafford

**HATCH, JAMES & DODGE, PC**

     Brent O. Hatch
     Mark F. James

*Attorneys for N8 Medical, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of February, 2015, a true and correct copy of the foregoing document has been served upon the following counsel of record in accordance with the Federal Rules of Civil Procedure:

Kenneth B. Black
Jill M. Pohlman
David L. Mortensen
**STOEL RIVES (UT)**
201 S. Main Street, Suite 1100
Salt Lake City, UT 84111-4904

Steven C. Smith, Bar No. 04508
Richard R. Thomas (*Admitted Pro Hac Vice*)
Stephen C. Biggs (*Admitted Pro Hac Vice*)
**SMITH LC**
4505 East Chandler Boulevard, Suite 290
Phoenix, Arizona 85048

Stephen M. Craig
**Office of the General Counsel**
**BRIGHAM YOUNG UNIVERSITY**
A-350 ASB
Provo, Utah 84602

Robert S. Clark
Gregory M. Hess
**PARR BROWN GEE & LOVELESS**
185 South State Street, Suite 800
Salt Lake City, UT 84111

Michael A. Schern (*Admitted Pro Hac Vice*)
**SCHERN RICHARDSON FINTER**
    **DECKER, PLC**
1640 South Stapley Drive, Suite 132
Mesa, Arizona 85204

Derrick C. Hughes
Steven C. Smith
**SMITH LC**
1800 North Broadway, Suite 200
Santa Ana, California 92706

     */s/ Paul J. Dobrowski*
     Paul J. Dobrowski